## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CASSANDRA SOCHA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 cv 05681 |
| v. | ) | |
| | ) | Judge: Jorge L. Alonso |
| CITY OF JOLIET, an Illinois municipal | ) | |
| corporation, EDWARD GRIZZLE, and JOHN | ) | Magistrate: Mary M. Rowland |
| DOES 1-20, | ) | |
| | ) | Trial by Jury Demanded |
| Defendants. | ) | |

### DEFENDANT CITY OF JOLIET'S ANSWER TO PLAINTIFF'S INTERROGATORIES TO CITY OF JOLIET, a municipal corporation and EDWARD GRIZZLE,

NOW COMES Defendant, **CITY OF JOLIET**, by and through their attorneys, TRESSLER LLP, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby serves its Answers to Plaintiff's Interrogatories on Defendants, **CITY OF JOLIET, a municipal corporation and EDWARD GRIZZLE,** to be answered within thirty (30) days:

### I. General Objections

1.      The City of Joliet objects to Plaintiff's Interrogatories to the extent Plaintiff's Interrogatories seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, investigatory privilege or any other applicable privilege or doctrine. The City of Joliet objects to the extent Plaintiff seeks disclosure of information that relates to the impressions, conclusions, opinions, legal research, or theories of The City of Joliet or its attorneys, disclosure of information prepared in anticipation of litigation, or disclosure proprietary information. An inadvertent production of privileged or protected information, documents, or other materials shall not constitute a waiver of any privilege or protection.

Group Ex. A

2.     The City of Joliet objects to Plaintiff's Instruction/Definition "c" in that it is only responding on behalf of the City, and not on behalf of its employees or agents, including current or former police officers.

## II.  Interrogatories

1.     Identify each person who participated in the preparation of your response to these Interrogatories.

**ANSWER:     Sabrina Spano, Corporation Counsel, with the assistance of counsel.**

2.     Identify all persons who viewed any of the images on plaintiff's smart phone alleged in Plaintiff's First Amended Complaint and the law enforcement purpose, if any, for which they did so, and both the date(s) on which they did so and the place(s) at which they did so.

**ANSWER:     Objection. This Interrogatory requests information that is subject to investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General.**

3.     Identify all persons present while the persons identified in Answer to Interrogatory #4, above, viewed the images on plaintiff's smart phone

**ANSWER:     Objection. This interrogatory is vague and ambiguous, as it requests information related to persons identified in "Answer to Interrogatory #4, above," and the above is Interrogatory #2. Additionally, this Interrogatory requests information that is subject to investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General.**

4.     Identify every electronic device to which the images alleged in plaintiff's First Amended Complaint were transmitted, uploaded, downloaded or transferred, the owner of each such device at the time of each such transmission and the date/time of each such transmission, and the law enforcement purpose, if any, for each such transmission.

**ANSWER:     Objection.  This Interrogatory requests information that is subject to investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General.**

5.     Identify every electronic device from which the images alleged in plaintiff's First Amended Complaint were deleted ("scrubbed"), the owner of each such device, the date/time of each such deletion and the reason for each such deletion.

    **ANSWER:**    **Objection.  Vague and ambiguous as to the words "deleted" and "scrubbed." Additionally, this Interrogatory requests information that is subject to investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General.**

6.    Do you know of any statements made by any person relating to the subject matter complained of in plaintiff's Complaint?  If so, give the name and address of each such witness and the date of the statement, and state whether such statement was written and/or oral.

    **ANSWER:**    **Objection. This Interrogatory requests information that is subject to investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General. Subject to and without waiving same, the following individuals are believed to have provided statements relating to the subject matter complained of in the plaintiff's complaint:**

    **Jeffrey Germain – Upon information and belief, Jeffrey Germain provided a statement to Inspector General Chris Regis at an unknown date, time and location.**

    **Don McKinney – Upon information and belief, Don McKinney provided a statement to Inspector General Chris Regis at an unknown date, time and location.**

    **Alan Roechner – Upon information and belief, Alan Roechner provided a statement to Inspector General Chris Regis at an unknown date, time and location.**

    **Edward Grizzle – Upon information and belief, Edward Grizzle provided a statement to Inspector General Chris Regis on approximately September 25, 2018 at an unknow time and location.**

7.    List the names and addresses of all other persons (other than yourself and persons heretofore listed) who have knowledge of the facts of the occurrence and/or the injuries and damages claimed to have resulted therefrom.

    **ANSWER:**    **Objection.  Vague and ambiguous, and this Interrogatory requests information that is subject to investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General. Subject to and without waiving same, the following are individuals who may have knowledge of the facts of the occurrence and/or the injuries and damages claimed to have resulted therefrom:**

3

**Cassandra Socha**
**3727 Mustang Drive**
**Joliet, Illinois 60431**

**Tab Jensen**
**tjjpd@hotmail.com**
**(815) 405-1774**

**Darrel Gavin**
**dgavin@joliet.gov**
**(815) 791-2426**

**Phillip Bergner**
**(815) 302-5185**

**Marc Reid**
**Joliet Police Department**
**mreid@joliet.gov**
**(815) 405-1859**

**Jeremy Harrison**
**jharrison@joliet.gov**
**(331) 276-0593**

**Mike Batis**
**mbatis@joliet.gov**
**(815) 405-4235**

**Tim Powers**
**tpowers@joliet.gov**
**(815) 582-7502**

**Don McKinney**
**dmckinney@joliet.gov**
**(331) 229-0986**

**Chris Botzum**
**cbotzum@joliet.gov**
**(815) 724-3044**

**Jeffrey German**
**jgerman@joliet.gov**
**815-955-8471**

**Brian Benton**
**815-405-1770; (815) 482-5623**

**Robert Brown**
**rbrown@joliet.gov**
**(815) 791-6039**

**Dave Jackson**
**djackson@joliet.gov**
**(331) 302-0292**

**Alan Roechner**
**aroechner@joliet.gov**
**(815) 405-1863**

**Edward Grizzle**
**egrizzle@joliet.gov**

**Lisa Centano (Lusciatti)**
**(815) 715-8912**

**Kevin LaBolle**
**(815) 791-8142**

**Larry Kane**
**(815) 726-6080**

**Jeffrey Fornoff (evidence tech)**
**jfornoff@joliet.gov**
**(815) 724-3062**

**Officer Ryan Meyers (evidence tech)**
**rmyers@joliet.gov**
**(815) 724-3056**

**Officer Gloria Coyl**
**gcoyl@joliet.gov**
**(815) 724-3021**

**Sergeant Javier Esqueda**
**jesqueda@joliet.gov**

**Sergeant Scott Nicodemus**
**snicodemus@joliet.gov**

**Sergeant Arthur Vandrgrift**
**avandergrift@joliet.gov**

**Deputy Chief Gregory**
**Katgar5862@sbcglobal.net**

**Officer Gregory Kazak**
gkazak@joliet.gov

**Lt. Joseph Egizio**
jegizio@joliet.gov
**(815) 724-3292**

**Lt. Sherrie Blackburn**
sblackburn@joliet.gov

**Attorney Jeffery Tomczak (People v. Crowley)**

**Michael DeVito (FOP President)**

**Eugene Fimbianti (attorney for Cassandra Socha)**

**Lorinda Lamkin (special prosecutor)**

**Christopher Regis**
**Inspector General**
**Please contact via Counsel for City of Joliet**

**Nicholas Crowley**
**3727 Mustang Drive**
**Joliet, Illinois 60431**

**Patricia Socha**
**5614 S. 74th Ave**
**Summit, Illinois 60501**

**Bruce Gatlin**
**11470 Tea Tree Lane**
**Frankfort, Illinois 60423**

**Maria Gatlin**
**11470 Tea Tree Lane**
**Frankfort, Illinois 60423**

**Victoria Ackerman**
**7405 S. Cork Avenue**
**Justice, Illinois 60458**

**Betty Howard**
**3725 Mustang Drive**
**Joliet, Illinois 60431**

**Wayne Howard**

> **3725 Mustang Drive**
> **Joliet, Illinois 60431**
>
> **Mary Aguirre**
> **aguirre@joliet.gov**
> **(815) 724-4301**
>
> **Zelda Scott**
> **zscott@joliet.gov**

8.      Provide the name and address of each witness who will testify at trial and all other information required for each witness.

**ANSWER:      Objection. Unduly burdensome and premature at this stage of litigation. Trial witnesses have not been identified at this time.**

9.      Identify any statements, information and/or documents known to you and requested by any of the foregoing interrogatories which you claim to be work product or subject to any common law or statutory privilege, and with respect to each interrogatory, specify the legal basis for the claim.

**ANSWER:      None other than those documents produced by Defendant in production set CITY00001 through CITY00194 and associated Privilege Log.**

DATED: September 25, 2020                    /s/*James J. Hess*_____
                                             Attorney for Defendant, City of Joliet

John M. O'Driscoll (ARDC #6237793)
Stacey L. Wilkins (ARDC #6301187)
James J. Hess (ARDC #6306162)
TRESSLER LLP
Counsel for City of Joliet
550 E. Boughton Road, Suite 250
Bolingbrook, Illinois 60440
jodriscoll@tresslerllp.com
swilkins@tresslerllp.com
jhess@tresslerllp.com

## VERIFICATION OF INTERROGATORY ANSWERS

I, Sabrina Spano, am Corporate Counsel of The City of Joliet. As such, I am authorized to make this verification on behalf of the City of Joliet.

I believe, based on reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on September 25, 2020

_____
Sabrina Spano
Corporation Counsel

8

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CASSANDRA SOCHA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 cv 05681 |
| v. | ) | |
| | ) | Judge: Jorge L. Alonso |
| CITY OF JOLIET, an Illinois municipal | ) | |
| corporation, EDWARD GRIZZLE, and JOHN | ) | Magistrate: Mary M. Rowland |
| DOES 1-20, | ) | |
| | ) | Trial by Jury Demanded |
| Defendants. | ) | |

### CITY OF JOLIET'S RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENTS REQUESTS

Defendant City of Joliet (the "City"), by and through its attorneys, TRESSLER LLP, pursuant to Fed. R. Civ. P. 33, hereby serves its Responses to Plaintiffs First Set of Documents Requests.

### GENERAL OBJECTIONS

1.     The City of Joliet objects to Plaintiff's First Set of Document Requests to the extent Plaintiff's Requests seek documents protected from disclosure by the attorney-client privilege, the attorney work product doctrine, investigatory privilege or any other applicable privilege or doctrine.  The City of Joliet objects to the extent Plaintiff seeks disclosure of documents that relate to the impressions, conclusions, opinions, legal research, or theories of The City of Joliet or its attorneys, disclosure of information prepared in anticipation of litigation, or disclosure proprietary information.  An inadvertent production of privileged or protected information, documents, or other materials shall not constitute a waiver of any privilege or protection.

2.      The City of Joliet objects to Plaintiff's First Set of Document Requests to the extent that Plaintiff seeks documents that are not in possession or control of the City, including materials that are subject to ongoing investigations of the Joliet Police Department and The Inspector General, and such are subject to investigatory privilege.

3.      The City of Joliet objects to requests made to any individual or entity other than the City of Joliet, in that the responses are propounded on behalf of the City, and not on behalf of its employees or agents, including current or former police officers.

## DOCUMENT REQUESTS

1.      Any and all documents identified in or relied upon, reviewed or referenced in connection with preparing responses to the First Set of Interrogatories issued by Plaintiff Cassandra Socha.

**RESPONSE:** **Objection. This request seeks the production of documents protected from disclosure by the attorney-client privilege, the attorney work product protection and investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General. Subject to and without waiving said objection, see Defendant's production of documents Bates stamped CITY 00001-CITY 00194 and associated privilege log.**

2.      All documents that you contend relate to and/or support responses to the allegations contained in your Answer or that you relied upon, reviewed or referenced in preparing the Answer to the First Amended Complaint in this action.

**RESPONSE:** **Objection. This request seeks the production of documents protected from disclosure by the attorney-client privilege, the attorney work product protection and investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General. Subject to and without waiving said objection, see Defendant's production of documents Bates stamped CITY 00001-CITY**

**00194 and associated privilege log.**

3.      Any and all statements, records, or communications sent to or received by you, or your attorneys, agents or any other person who claims to have witnessed or have knowledge of facts related to the incident or your alleged injuries.

**RESPONSE: Objection. Objection. This request seeks the production of documents protected from disclosure by the attorney-client privilege, the attorney work product protection and investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General. Subject to and without waiving said objection, see Defendant's production of documents Bates stamped CITY 00001-CITY 00194 and associated privilege log.**

4.      All documents that in any way relate to EDWARD GRIZZLE'S employment with CITY OF JOLIET including, but not limited to time cards, attendance records, work schedules, payroll or compensation records, personnel records, employment applications, employment agreements, contracts, complaints or grievances, request for investigation, assignments given, training documents, licenses or licensing agreements, work rules, correspondence, e-mails, telephone text messages, handbooks, policy manuals, job descriptions, performance evaluations, and disciplinary notices.

**RESPONSE: Objection. This request is overly broad, unduly burdensome, harassing and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant evidence. Officer Grizzle's employment history is not relevant to any of Plaintiff's claims.**

5.      All documents that in any way relate to communications, either oral or written, between you and any person, including but not limited to any past or present employee, agent or official of CITY OF JOLIET concerning any of the claims in this case and/or any incidents, events, facts or occurrences that support or relate to such claims.

**RESPONSE: Objection. This request seeks the production of documents protected from**

**disclosure by the attorney-client privilege, the attorney work product protection and investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General. Subject to and without waiving said objection, see Defendant's production of documents Bates stamped CITY 00001-CITY 00194 and associated privilege log.**

6.     Any/all records of or relating to the events alleged in plaintiff's First Amended Complaint and/or defendant's Answer.

**RESPONSE:**  **Objection. This request seeks the production of documents protected from disclosure by the attorney-client privilege, the attorney work product protection and investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General. Subject to and without waiving said objection, see Defendant's production of documents Bates stamped CITY 00001-CITY 00194 and associated privilege log.**

7.     All documents relating to the chain of custody of Plaintiff's smart phone and/or the images on it.

**RESPONSE:**  **Objection. This request seeks the production of documents protected from disclosure by the attorney-client privilege, the attorney work product protection and investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General. Subject to and without waiving said objection, see Defendant's production of documents Bates stamped CITY 00001-CITY 00194 and associated privilege log.**

8.     All reports of investigation a) leading to the seizure of Plaintiff's smart phone, and/or b) relating to the allegations of improper publication of the images on that phone alleged in Plaintiff's First Amended Complaint.

**RESPONSE:**  **Objection. This request seeks the production of documents protected from disclosure by the attorney-client privilege, the attorney work product protection and investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General. Subject to and without waiving said objection, see Defendant's production of documents Bates stamped CITY 00001-CITY**

4

**00194 and associated privilege log.**

9.     All documents submitted to any judge of the Circuit Court of Will County in

support of an application for a warrant to seize/search plaintiff's smart phone.

**RESPONSE:** **Objection. This request seeks the production of documents protected from disclosure by the attorney-client privilege, the attorney work product protection and investigatory privilege for pending investigation no. J1-18-0007242-001, and investigatory privilege for the pending investigation of the Inspector General. Subject to and without waiving said objection, see Defendant's production of documents Bates stamped CITY 00001-CITY 00194 and associated privilege log.**

10.     It is further requested that you and/or your attorney, in compliance with the

request for production, furnish an Affidavit stating whether the production is complete in

accordance with this request and as provided in Federal Rules of Civil Procedure.

**RESPONSE:** **Objection. This request does not call for the production of an existing document, but rather calls for the creation of a document not required or authorized the any applicable Federal Rule of Civil Procedure. Subject to and without waving said objection, counsel's electronic signature below shall serve as a response to this request.**

DATED: September 25, 2020                         /s/*James J. Hess*_____
                                                                        Attorney for Defendant, City of Joliet

John M. O'Driscoll (ARDC #6237793)
Stacey L. Wilkins (ARDC #6301187)
James J. Hess (ARDC #6306162)
TRESSLER LLP
Counsel for City of Joliet
550 E. Boughton Road, Suite 250
Bolingbrook, Illinois 60440
jodriscoll@tresslerllp.com
swilkins@tresslerllp.com
jhess@tresslerllp.com

5

**City of Joliet's Privilege Log**

*Cassandra Socha v. City of Joliet, et al.*  Docket No. 18 cv 05681

| BATES RANGE | WITHHELD OR REDACTED | AUTHOR | RECIPIENT(S) | CC | DATE | IDENTIFICATION OF DOCUMENT | BASIS FOR WITHHOLDING |
|---|---|---|---|---|---|---|---|
| CITY00001-CITY00002 | Withheld | Sgt. Edward Grizzle | | | 5/17/2018 | Case Report | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |
| CITY00003 | Withheld | Christopher Regis | Lt. Marc Reid | | 11/13/2018 | Interoffice Memorandum re Litigation Hold | Attorney-Client Privilege / Work Product Doctrine |
| CITY00004 | Withheld | Lindsey Heavener | Lt. Marc Reid | | 11/21/2018 | Email re Litigation Hold | Attorney-Client Privilege / Work Product Doctrine |
| CITY00004 | Withheld | Lt. Marc Reid | Andrea Delap, Kimberly Steele, Edward Grizzle, Lindsey Heavener, Robert Hall, Phillip Stice | | 11/20/2018 | Email re Litigation Hold | Attorney-Client Privilege / Work Product Doctrine |
| CITY00005 | Withheld | Lisa Centano | Lt. Marc Reid | | 11/26/2018 | Email | Law Enforcement Investigatory Privilege for pending |

|  |  |  |  |  |  |  | investigation no. J1-18-0007242-001 |
|---|---|---|---|---|---|---|---|
| CITY00006-CITY00008 | Withheld |  |  |  | 5/18/2018 | Search Warrant | Law Enforcement Investigatory Privilege / Subject to Order to Seal Search Warrant Documents entered by Will County Circuit Court on May 18, 2018 |
| CITY00009-CITY00010 | Withheld |  |  |  |  | Incident Detailed Report | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |
| CITY00011 | Withheld | Jeffrey German |  |  | 5/17/2018 | Officer Supplement Report | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |
| CITY00012 | Withheld | Christopher Botzum |  |  | 5/17/2018 | Officer Supplement Report | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CITY00013 | Withheld | Jeffrey German | | | 5/17/2018 | Officer Supplement Report | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |
| CITY00051-CITY00052 | Withheld | Sgt. Edward Grizzle | | | 5/17/2018 | Case Report | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |
| CITY00053 | Withheld | Jeffrey German | | | 5/17/2018 | Officer Supplement Report | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |
| CITY00054 | Withheld | Christopher Botzum | | | 5/17/2018 | Officer Supplement Report | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |
| CITY00055 | Withheld | Jeffrey German | | | 5/17/2018 | Officer Supplement Report | Law Enforcement Investigatory Privilege for pending investigation no. |

| | | | | | | | J1-18-0007242-001 |
|---|---|---|---|---|---|---|---|
| CITY00056-CITY00076 | Withheld | | | | 5/18/2018 | Search Warrant and related documentation filed in Will County Circuit Court | Law Enforcement Investigatory Privilege / Subject to Order to Seal Search Warrant Documents entered by Will County Circuit Court on May 18, 2018 |
| CITY00077-CITY00078 | Withheld | Sgt. Edward Grizzle | AT&T Wireless | | 5/17/2018 | Request for Preservation of Records | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |
| CITY00079-CITY00080 | Withheld | Paul Kerley | Joliet Police Department | | 8/31/2018 | Report of Examination | Law Enforcement Investigatory Privilege / Subject to Order to Seal Search Warrant Documents entered by Will County Circuit Court on May 18, 2018 |
| CITY00081-CITY00085 | Withheld | Kyle Young | Joliet Police Department | | 9/17/2018 | Report of Examination | Law Enforcement Investigatory Privilege / Subject to Order to Seal Search Warrant |

| | | | | | | | Documents entered by Will County Circuit Court on May 18, 2018 |
|---|---|---|---|---|---|---|---|
| CITY00086-CITY00089 | Withheld | Michael Zupancic; Jordan Graves | Joliet Police Department | | | Report of Examination | Law Enforcement Investigatory Privilege / Subject to Order to Seal Search Warrant Documents entered by Will County Circuit Court on May 18, 2018 |
| CITY00090-CITY00110 | Withheld | | | | | Search Warrant and related documentation filed in Will County Circuit Court | Law Enforcement Investigatory Privilege / Subject to Order to Seal Search Warrant Documents entered by Will County Circuit Court on May 18, 2018 |
| CITY00111-CITY00114 | Withheld | Edward Grizzle | Chief Benton, Dep. Chief Roechner | | 5/18/18 | Interoffice Memorandum | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |

| CITY00115 | Withheld | Jeremy Harrison | Chief Brian Benton | | 8/2/18 | Interoffice Memorandum | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |
| CITY00116 | Withheld | Alan Roechner | Chief Brian Benton | | 8/3/18 | Interoffice Memorandum | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |
| CITY00117 | Withheld | Alan Roechner | David Hales | John O'Driscoll | 8/31/18 | Interoffice Memorandum | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001, Attorney-Client Privilege |
| CITY00118-CITY00119 | Withheld | Alan Roechner | Chris Botzum | | 11/7/18 | Interoffice Memorandum | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |

| CITY00120 | Withheld | Alan Roechner | Chris Botzum | | 11/9/18 | Interoffice Memorandum | Law Enforcement Investigatory Privilege for pending investigation no. J1-18-0007242-001 |
|---|---|---|---|---|---|---|---|
| CITY00155 | Withheld | John O'Driscoll | Chris Regis | Jim Hess | 9/11/2020 | Email Correspondence | Inspector General Investigatory Privilege |
| CITY00156-CITY00194 | Withheld | Chris Regis | | | | Inspector General Interview Notes | Inspector General Investigatory Privilege |

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT**
**WILL COUNTY, ILLINOIS**

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) | |
| | ) | |
| vs. | ) | **STATES ATTORNEYS OFFICE** |
| | ) | **SEARCH WARRANT NO.** |
| IN REGARDS TO A CERTAIN CRIMINAL | ) | |
| INVESTIGATION | ) | |
| -------------------------------------------------------- | | |
| CASSANDRA SOCHA, | ) | |
| | ) | **Case No. 18 CV 05681** |
| Plaintiff, | ) | |
| | ) | **Honorable Judge Jorge L. Alonso** |
| v. | ) | |
| | ) | **Honorable Magistrate M. David Weisman** |
| City of Joliet, a municipal corporation, | ) | |
| Edward Grizzle, John Does 1 – 20, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**CASSANDRA SOCHA'S MOTION TO UNSEAL COURT'S FILE RE SEARCH**</u>
<u>**WARRANT APPLICATION/AFFIDAVIT**</u>

Cassandra Socha ("Socha"), plaintiff in *Cassandra Socha v. City of Joliet, a municipal corporation, Edward Grizzle, John Does 1-20*, 18-cv-05681 ("District Court Action"), by her attorney, Law Offices of Hall Adams, LLC, and pursuant to 705 ILCS 105(16)(6) and 725 ILCS 5/108-4(d) states as follows for her Motion to Unseal Court's File RE Search Warrant Application/Affidavit:

*Factual/Procedural Background*

Exhibit 1 to this Motion is a true/accurate copy of Socha's pending First Amended Complaint ("FAC") in the District Court Action. Exhibit A to that FAC is a SEARCH WARRANT ("Warrant") issued by Circuit Court of the Twelfth Judicial Circuit, Will County, Hon. Sarah Jones, on or about 18 May 2018.

Socha's claims in the District Court Action relate directly to the conduct of the various defendants to that action in obtaining the Warrant, seizing and then searching her smart-phone purportedly pursuant to that Warrant and then "publishing" and/or duplicating images found on

1

Ex. B

Socha's smart-phone in violation of her rights. Likewise, defendants, in their Answers to Socha's FAC in the District Court Action, have asserted the validity of the Warrant as bases for their defenses. (Exs. B & C, respectively, are each of the defendants' Answers to Socha's FAC in the District Court Action. So, the contents of the verified Complaint/Application/Affidavit upon the basis of which the Judge Jones issued the Warrant are directly and specifically relevant to the claims alleged in the District Court Action.

While the District Court Action has been pending, counsel have made repeated inquiries to the Special Prosecutor, State's Attorneys Appellate Prosecutor have not resulted in definitive information regarding the charging decision of that office. As of 28 January 2020, Special Prosecutor Lorinda Lamken reported:

> *"The case was transferred to another attorney in my office due to the fact that I believe I would be a witness in the case is it were to be charged. I reached out to him and he stated that he will make a decision by the end of the week."*

(emails to/from Lamken to Sheahn, part of email exchange attached hereto as Group Ex. 2, on which handwritten annotations were made subsequently by the undersigned.)

Since the Special Prosecutor's office has not identified the new handling attorney or advised the Special Prosecutor's its charging decision, despite repeated subsequent inquiries of counsel in the District Court Action for this information, including several made at the request of the United States Magistrate Judge, Hon. M. David Weisman, presiding over discovery aspects of the District Court Action.

The Special Prosecutor's office has not responded to requests that it confirm whether the investigation that gave rise to issuance of the Warrant is still an active investigation or that any charging decision have been made. Socha's counsel has provided that office with notice of the filing and presentment of this motion in order to again invite that office to inform the courts – this Court and the District Court – and counsel whether investigation

that gave rise to issuance of the Warrant remains an active investigation.

On 31 August 2020, Socha's counsel, via Record Copy Services ("RCS"), caused a

subpoena to issue in the District Court Action upon Hon. Andrea Lynn Chasteen, Keeper of the

Records, Will County Clerk of the Circuit Court 12th Judicial district for:

- The complete contents, including exhibits and/or verifications, of any/all Application(s)/Affidavit(s) and/or Complaint(s) for Search Warrant pursuant to which the Search Warrant attached hereto was issued by Circuit Court of Twelfth Judicial Circuit, Will County, Hon. Sarah Jones on or about 18 May 2019;

- Any/all records relating to presentation of the Application(s)/Affidavit(s) and/or Complaint(s) for Search Warrant to judges other than Hon. Sarah Jones prior to her issuance of the Search Warrant; and

- The complete contents of the Return on the Search Warrant attached hereto. (Subpoena, Ex. D).

The subpoena was returnable on 14 September 2020.  (Ex. D)  On 9 October 2020, Socha's

counsel was notified by RCS that Clerk Chasteen had refused to produce documents pursuant to

the subpoena for the reason that Judge Jones had previously issued an Order sealing those

documents. (9 October 2020 RCS Service Report, Ex. E with Clerk Chasteen's refusal)

### *Applicable Law*

Although the first amendment presumption of access applies only to those documents that satisfy the experience and logic test, under the common law there is a presumption that allows the public to inspect and copy public records and documents, including all documents filed with the court. This common-law right of public access to court records is "essential to the proper functioning of a democracy [citation] in that citizens rely on information about our judicial system in order to form an educated and knowledgeable opinion of its functioning.

The availability of court files for public scrutiny is also essential to the public's right to "monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." "When courts are open, their work is observed and understood, and understanding leads to respect." The common-law right of access symbolizes the recognition "that the public interest is best served by increasing the public's knowledge about what is transpiring inside the judicial process."

In Illinois, the legislature has also codified this common-law right of access to judicial records in Section 16 of the Clerks of Courts Act, which provides, in pertinent part "All records, dockets and books required by law to be kept by [circuit court] clerks shall be deemed public records, and shall at all times be open to inspection without fee or reward, and all persons shall have free access for inspection and examination to such records, docket and books, and also to all papers on file in the different clerks' offices and shall have the right to take memoranda and abstracts thereto."

*People v. Zimmerman, 2018 IL 122261, paras. 40-42 (citations omitted)*

Historically, Illinois courts have recognized an exception to this general rule of public access applicable to materials generated and submitted to courts in the search warrant application process where disclosure would interfere with or hinder ongoing criminal investigations. *People v. Harris (In re Gee)* 2011 IL App (4th) 100275, paras. 32 -37. However, the exception is limited to those circumstances in which disclosure of warrant application materials might actually hinder or interfere with ongoing criminal investigations and/or prejudice the rights of a criminal defendant to a fair trial in such an investigation. See *In re Application and Affidavit for a Search Warrant*, 923 F.2d 324, 326 (4th Cir. 1991), which is cited and discussed with approval in *People v. Harris, supra.*

### <u>Argument</u>

Notably, virtually all of the relevant Illinois authority arises of cases in which media outlets sought access to sealed warrant application materials in cases thought to be of public interest. Our circumstance is different because the party seeking the sealed warrant application materials, Socha, was herself the purported target of whatever investigation lead to issuance of the Warrant and the warrant application materials sought are directly in issue and relevant to the pending District Court Action in which she is a party.

More, it has been over two years since the Warrant issued and Socha has not been charged with any offense. Judging from the "radio silence" of the Special Prosecutor's office and the unwillingness of that office to extend the District Court or counsel the professional courtesy of

4

responding to requests for clarification of its intentions, it should be presumed that the investigation, if there ever was such, is at best dormant and likely closed.

Further, even if such investigation is ongoing, the Special Prosecutor would be hard-pressed to show how it would be hindered in any way be release of the warrant application materials that are requested in Socha's subpoena, issued in the District Court Action. The warrant itself has been released and is now a part of the publically accessible court file in the District Court Action. It is Exhibit A to her filed FAC. Socha obviously knows about the investigation; so, any investigation is not impeded on the basis of her discovery of it. Even in the doubtful events that any investigation into her conduct remains ongoing that resulted in criminal charges against her, she would be entitled to discover the warrant application materials under *U.S. v. Brady*. Finally, Socha is unconcerned about any prejudice that disclosure of the warrant application materials might cause her in (unlikely) criminal proceedings against her; she is, after all, the one requesting the disclosure of the materials.

More, Det. Grizzle is himself a defendant in Socha's District Court Action. He and other Joliet Police Department Officers have given statements to the City's Inspector General and Grizzle has produced the recording of his statement in discovery in the District Court Action (Transcripts, Ex. F). Grizzle is hard-pressed to argue unfair prejudice from disclosure of the warrant application materials, and the privilege is not his to assert.

While Socha seeks an Order from this Court generally unsealing the warrant application materials sought by her subpoena, this Court has discretion to allow the unsealing of the warrant application materials pursuant to such protective order as the Court believes might be necessary to limit disclosure of the warrant application materials to persons and for purposes associated with the District Court Action. Subject, of course, to the discretion of the District Court, counsel could seek entry in the District Court Action of a parallel protective order that would serve to implement restrictions imposed by this Court.

Socha reiterates that she believes the warrant application materials are at issue should be unsealed generally and should not be limited in any way from public disclosure. It is her view that the abuses of the defendants in the District Court Action are matters of public interest inasmuch as they involve local police officers. Still, she acknowledges that this Court and the District Court have the discretion to limit such disclosure.

### *Conclusion*

Socha's rights as a litigant in the District Court Action and the preference under Constitutional (First Amendment), and Illinois common law and statutory enactments all favor unsealing the warrant application materials sought in her subpoena to the Clerk. No legitimate, ongoing investigation will be hindered in any meaningful way by unsealing those documents. Whether generally or pursuant to a suitably tailored protective order, this Court should order that those materials be unsealed and that the Clerk be directed to produce them forthwith in response to Socha's subpoena in the District Court Action.

WHEREFORE, Socha moves for entry of an Order a) unsealing the warrant application materials requested in her subpoena to the Clerk, and b) directing the Clerk to produce those materials to Socha, via Record Copy Service forthwith.

Respectfully submitted,

By: _____DRAFT_____
One of Plaintiff's Attorneys

Hall Adams
Law Offices of Hall Adams
33 North Dearborn Street, Suite 2350
Chicago, Illinois 60602
T: (312) 445-4900
F: (312) 445-4901
ARDC#: 6194886

6



# Audio Transcription -
# Interview of Detective Edward Grizzle

Royal Reporting Services, Inc.
Phone: 312.361.8851
Email: info@royalreportingservices.com
Website: royalreportingservices.com

Ex. C

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CASSANDRA SOCHA,                    )
                                    )
              Plaintiff,            )
          vs.                       ) No. 1:18-cv-05681
                                    )
CITY OF JOLIET, a municipal         )
corporation; EDWARD GRIZZLE;        )
and JOHN DOES 1-20,                 )
                                    )
              Defendants.           )


          AUDIO TRANSCRIPTION of the recorded

interview of DETECTIVE EDWARD GRIZZLE, transcribed by

Erin D. Mitoraj, Certified Shorthand Reporter.

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

Page 2

1    DETECTIVE GRIZZLE: All right. This is Detective
2  Sergeant Ed Grizzle on September 25th at approximately
3  10:56 a.m. And Inspector General Officer Christopher
4  Regis is present in the room as long [sic] as --
5    MR. ROCHE: John R. Roche, Jr.
6    MR. REGIS: Okay. So the ordinance -- City
7  ordinance requires City employees to cooperate with
8  the Inspector General in his investigations. You're
9  required to answer my questions truthfully. Nothing
10  you say in this interview can be used in any criminal
11  proceedings; however, it can be used in administrative
12  proceedings against you or somebody else. Your union
13  contract says you have a right to a union rep and/or
14  an attorney to be present with you while we talk.
15    MR. ROCHE: Yes. And it -- This is John Roche.
16  We recognize there is an ordinance that requires
17  participation in investigations. And so participating
18  in that investigation, we are not waiving any
19  collective bargaining rights that are under the
20  collective bargaining agreement or under state statute
21  or federal law. So we will answer your questions. It
22  is our understanding that we're required to do so.
23  But in so answering those questions, we are not
24  waiving any other rights that the officer may have.

Page 3

1  BY MR. REGIS:
2    Q.  Okay. So you're a sergeant in the
3  investigations division?
4    A.  Correct. Yes.
5    Q.  How long have you been in that capacity?
6    A.  About four years.
7    Q.  Earlier this year, around May or June, was
8  an investigation initiated which involved the contents
9  of Cassandra Socha's cell phone?
10    A.  Yes, there was.
11    Q.  How did that come about?
12    A.  Um --
13    Q.  Do you remember the date? I'm sorry.
14    A.  At this time, of course, I don't recall the
15  exact date offhand.
16    Q.  May or June?
17    A.  Yeah. It was during the time of -- It was
18  at the time of the Officer Crowley trial.
19    Q.  Okay. How did that come about?
20    A.  I was sitting at home. My phone goes off.
21  It's later at night. Surprisingly, I didn't hear it.
22  I waited a little bit. I see that Lorinda Lampkin
23  from the Appellate Prosecutor's Office called. I
24  called her back. This is probably around 9:00 p.m.,

Page 4

1  21:00 hours. She stated to me that she -- I was
2  trying to get ahold of you and Lieutenant Mark Reid.
3    I said, Why? What's going on?
4    She said, well, Maria Gatlin, who testified
5  in the trial, sent her a text message stating --
6  stating some things.
7    Lorinda said, I feel -- She tells me what
8  the content of the text message is. She says, I feel
9  this is harassment of a witness; it's a Class 2
10  felony; and I would like a search warrant done on
11  Officer Socha's phone.
12    I then asked her, you know, what it is --
13  you know, exactly what the law is so I can read it
14  myself. I read it, saw that it fit. I said, So where
15  do you want to proceed from here?
16    She said, I need to do a search warrant
17  for, you know, harassment -- or intimidation along
18  with the harassment of somebody who has testified in
19  court.
20    Q.  Okay. So at that time on the phone, did
21  she tell you -- did she have the text message?
22    A.  She had it, yes. She had the text message.
23    Q.  And your understanding is that was sent to
24  her by -- What was her name? Maria --

Page 5

1    A.  Maria Gatlin, yes.
2    Q.  Okay. And so she read it to you on the
3  phone?
4    A.  Yeah. I can't remember exactly how, you
5  know -- you know, it transpired.
6    Q.  Okay. What did you do next?
7    A.  I went to bed because it was later at
8  night. The next thing, when I woke up in the morning,
9  I let Lieutenant Batis know briefly what was going on,
10  because part of this case, I couldn't -- you know, I
11  was ordered not to tell certain people things. But
12  just let my lieutenant know, contacted by the
13  appellate prosecutor. I then let [sic] Deputy Chief
14  Roechner, along with Chief Benton.
15    Q.  Now, when you said earlier you were ordered
16  not to tell people about parts of the case, generally,
17  what did that involve --
18    A.  Yes,
19    Q.  Who gave you that order?
20    A.  Basically, during the Officer Crowley trial
21  it was -- I was told to only keep it between myself,
22  Deputy Chief Roechner, and Chief Benton. But this was
23  something new that popped up, wasn't directly
24  involving the Officer, you know, Crowley case. How

2 (Pages 2 to 5)

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

Page 6

1  that decision was made, I couldn't tell you. I was
2  only following orders.
3  　　Q.　So the original investigation as far as all
4  that stuff with Crowley --
5  　　A.　Yes.
6  　　Q.　-- you were told -- Was it by Brian and
7  Al --
8  　　A.　It was Definitely Chief Roechner, yeah.
9  And I was told per the chief.
10  　　Q.　So this is kind of an offshoot of that
11  case?
12  　　A.　Yes.
13  　　Q.　And you just let those guys know what you
14  were doing?
15  　　A.　Yeah.  I definitely let them know what was
16  transpiring, what was going.  And there was a
17  determination if the appellate prosecutor believes a
18  search warrant should be done, do your job.
19  　　Q.　All right.  So you told Al and Brian about
20  it?
21  　　A.　Yes.
22  　　Q.　And they pretty much just told you, Go
23  ahead and run with it?
24  　　A.　Yep.

Page 7

1  　　Q.　Okay  So you had a search warrant?
2  　　A.　Yes.  First I did it -- I drafted the
3  search warrant like all search warrants.  And you
4  being a prosecutor, you know.  I sent it to Lorinda
5  Lampkin, the appellate prosecutor.  She approved the
6  search warrant; said, yes, this is what -- you know,
7  what we were looking for and this is what she wanted
8  done.
9  　　Q.　Okay.  And what happened next with the
10  investigation?
11  　　A.　Of course we had to bring in the victim,
12  Maria Gatlin, to come into the police department to
13  look at her phone to make sure that, you know, what
14  she was claiming is true.  A cell breakdown load was
15  done on her phone.
16  　　Q.　What is that?
17  　　A.　Detective German.
18  　　Q.　Okay.
19  　　A.　And we were only able to -- She only had a
20  screenshot of what she had.  So when -- You know, I'm
21  really not technologically savvy as Detective German
22  or Sergeant Botsam (phonetic).  But we get that
23  download, and it was basically, you know, the
24  downloaded screenshotted message.

Page 8

1  　　Q.　Okay.  When you say, We got the download,
2  who did that?
3  　　A.　Detective German did that all on Marie
4  Gatlin's phone, you know.
5  　　Q.　Okay.  Was it -- Was it that night or the
6  next day or --
7  　　A.　It was the next day after Ms. Lampkin got
8  ahold of me.  I got ahold of Maria and --
9  　　Q.　Okay.
10  　　A.　Yeah.
11  　　Q.　When you say -- Okay.  Let's try to get a
12  little more specific about what was taken off the
13  phone.
14  　　A.　Yeah.
15  　　Q.　You said you found a screenshot of it.
16  　　A.　Yes.
17  　　Q.　Now, did you -- did you look at that on a
18  computer screen?  Was it given to you on some kind of
19  media device?
20  　　A.　Yeah, I did get a -- you know, a flash
21  drive from Detective German that had that, you know,
22  info on there.  But I did see it from, you know, her
23  phone as well.  She showed that she had a deleted
24  screenshot or whatever.

Page 9

1  　　Q.　Okay.  Did Botsam take part in this
2  investigation at all?
3  　　A.　Later on, yes.  When it was time -- When it
4  was determined the search warrant was going to -- was
5  signed, going to be executed, I reached out to
6  Sergeant Botsam because he is an RCFL:  Hey, I'm
7  coming in to serve a search warrant; can you please,
8  you know, do whatever you do with the cell phone?  And
9  he agreed to it.
10  　　Q.　All right.  How did you get possession of
11  Cassandra's cell phone?
12  　　A.　Okay.  So -- So, basically, with it, I made
13  the determination, just like if you had served a
14  subpoena on the officer, everything, we always do it
15  while they're at work.  And at that time, I went down
16  to the watch commander's office before Officer Socha
17  started her shift.
18  　　Q.　Was that at night?
19  　　A.　Yeah.  It was about 18:00 to 19:00, 6:00 or
20  7:00 p.m.
21  　　　　I asked Lieutenant Brown, this is what was
22  going to be going on; can you be present with me in
23  the captain's conference room?  We made a
24  determination that I would be in the room.  He would

3  (Pages 6 to 9)

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

Page 10

1    call her in after roll call.  And she would come in,
2    and I'd advise her of the search warrant.
3        Q.   Okay.  And did you do that?
4        A.   Yes, I did.
5        Q.   How did that go?
6        A.   Well, the first thing -- She was very
7    upset, rightfully so.  Tried to explain to her that --
8    the best, you know, we could, this is a valid search
9    warrant.  She did then look at Lieutenant Brown,
10   referring to me, saying, And this motherfucker is
11   going to look at my nude photos.
12            At that point, we advised her that we were
13   only doing what the scope of the search warrant was.
14   She stated she is not going to give us the phone and
15   started walking out of the office.  I then advised her
16   if she walked out, she would be obstructing, and she
17   would leave me no other choice to have her arrested;
18   this was a valid search warrant.
19            It took a little bit -- you know, a little
20   bit more talking.  Retrieved the cell phone.  I told
21   her we would go upstairs.  It was up to her.  We would
22   go upstairs, and we can get it -- I can have -- have
23   it done and give the phone back to her that night.  It
24   took probably an hour or two.  The cell phone was

Page 11

1    eventually extracted by Sergeant Botsam.  And then I
2    then returned the phone back to her.
3        Q.   Did she give the phone to you?
4        A.   Yes.
5        Q.   So the -- So Botsam, that night, did the
6    initial download --
7        A.   Yes.
8        Q.   -- what do you call it? -- whatever it's
9    called --
10       A.   Right.
11       Q.   -- phone as far as the technology?
12       A.   Right.
13       Q.   And the phone was returned to Socha?
14       A.   Yes.
15       Q.   And -- Okay.  What was done with that
16   download that night?
17       A.   That night, I took possession.  The first
18   one was off the Cellebrite.  So I'll explain a little
19   bit further.  So the Cellebrite computer was only able
20   to get partial, the message.  According to
21   Sergeant Botsam, the Lantern computer that is up there
22   does iPhones, should be able to do more; but it's
23   going to take a long time.
24            So I was able to get the -- I believe the

Page 12

1    first -- whatever he did to put it on the Cellebrite
2    computer into a file.  He said, I'm going to put it in
3    a file that if you need to get access to it, you
4    know -- because you know that I'm clueless about
5    technology -- you know, get ahold of him or to get
6    ahold of -- he can have Jeff German look at it.
7        Q.   When you say it was put in a file, is
8    that -- was it removed onto a flash drive or like --
9    you mean a file on the --
10       A.   I believe at point it was just a file on
11   the computer.  He said he was going to, you know, have
12   it quasi hidden in there so nobody would be able to
13   figure it out.
14       Q.   Okay.  Did you look at any of the data that
15   night with Botsam?
16       A.   Yes.  Just -- We only got a partial of the
17   message on there.  So it said partial of the -- you
18   know, the text message, however he found it.  He did
19   show me that, and that was the -- it would be better
20   to have -- the Lantern computer was going to probably
21   get whatever -- maybe get, you know, the whole
22   message.
23       Q.   Okay.  That night did you extract any data
24   on any kind of media, like a disk or --

Page 13

1        A.   If I remember, at that time, no.  It was
2    weighted to the Lantern, which took probably a whole
3    day.  Then everything was put together, if I remember
4    correctly.  He could have gave [sic] me a flash drive
5    or could have been some --
6        Q.   You're not a hundred percent on that?
7        A.   Yeah.  No.
8        Q.   Now, that night did you look at any other
9    information on her -- that was taken from her phone --
10       A.   No.
11       Q.   -- on the Cellebrite?
12       A.   No.
13       Q.   No pictures?
14       A.   No.
15       Q.   No videos?
16       A.   No.
17       Q.   Did that -- As far as that night is
18   concerned, was that the end of your activities
19   regarding this investigation?
20       A.   Yeah.  I just typed up my report and stuff
21   like that, and I went home.
22       Q.   So the next day, did you continue the
23   investigation?
24       A.   Yes.  Eventually, whatever was extracted on

4  (Pages 10 to 13)

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

Page 14

1  the Lantern computer was finally done. That's when I
2  was given a copy of everything from, I believe,
3  Detective German.
4      Q.  When you say a copy of everything --
5      A.  On a flash drive. Everything that was
6  extracted that night.
7      Q.  The entire contents of the cell phone?
8      A.  Yep. Whatever -- However they dump
9  whatever gets dumped in there, whatever they, you
10  know -- whatever gets dumped in the phone.
11     Q.  On a flash drive?
12     A.  Yes.
13     Q.  What did you do with this flash drive?
14     A.  That flash drive -- With all this case,
15  including with the beginning case with
16  Officer Crowley, everything was turned over and kept
17  in Department Chief Roechner's office.
18     Q.  So you gave that flash drive to --
19     A.  Yes. After I put it on my computer so I
20  can do my investigation.
21     Q.  So you copied the entire flash drive onto
22  your computer?
23     A.  Yes.
24     Q.  Did you -- Did you look at -- The data that

Page 15

1  was stored on your computer from the flash drive, did
2  you look at that data?
3      A.  Yes, I did.
4      Q.  What did you look at specifically?
5      A.  Well, kind of learning curve to see how
6  much -- So basically -- So I can give a rationale. So
7  when the text messages and everything are dumped, it
8  goes by phone number. So it doesn't give you, like,
9  somebody's name. So there was about 9,000 pages of
10  text messages, so I just kept scrolling until I found
11  Maria's phone number. I found Maria's, you know,
12  phone number, and that's when we found the entire text
13  message entirely that -- proving that Officer Socha
14  then sent that to Maria Gatlin, confirming what the
15  victim was claiming.
16     Q.  When you -- When you stick it on your
17  computer, how does it -- how do you know where it is?
18  Where is it stored --
19     A.  So everybody has a Z drive -- right? -- in
20  the City of Joliet. So it was on my Z drive with all
21  search warrants that I've ever done. It's in my
22  folder called "Search Warrants." You click on that,
23  and then you would see, you know, one that would say,
24  "Socha." You click on that, and that's where, you

Page 16

1  know, everything that was, you know, kind of --
2      Q.  So once you click on "Socha," what do you
3  see?
4      A.  It just shows, you know, any memos that I
5  did; you know, the search warrant. And then it shows
6  whatever for the -- I believe it's just numbers for
7  whatever the extraction data, you know, info is.
8      Q.  When you look at the extraction data, what
9  do you see?
10     A.  It's pretty -- You've got to click here,
11  click there, to kind of open it up. So you either got
12  stuff that are either screenshots or photos, and then
13  you have the text message. As far as anything else, I
14  didn't go any, like, further.
15     Q.  So you said earlier you did look through
16  the text messages?
17     A.  Yes, I did.
18     Q.  And when you click on that data --
19     A.  Yeah.
20     Q.  -- that says, "Socha," and then that folder
21  that says, you know, "Phone" or whatever --
22     A.  Yeah.
23     Q.  -- it's called, you're able to segregate
24  the videos, the pictures, the texts?

Page 17

1      A.  Yeah. However it's downloaded in there, I
2  just -- yeah, however it's clicked on, it's -- it
3  doesn't really tell you these are photos, this is text
4  message, you know. I just, Okay, here's what I'm
5  looking for, you know, what I'm looking for, so let me
6  click on this. Oh, that's text messages.
7      Q.  Okay. And while you were looking at the
8  images on the phone or the data on the phone --
9      A.  Yes.
10     Q.  -- did you ever see any pictures on the --
11     A.  Yeah, there's some pictures. So in the
12  very beginning, you know, with the case, as I said,
13  Maria Gatlin had a screenshot. So, oh, there's some
14  things. I didn't know if they were photos. I didn't
15  know if they were screenshots. I clicked on a couple
16  things that looked like they were -- maybe ten things,
17  some personal photos. I said, Well, you know, I'm
18  just going to concentrate on the 9,000 pages of text
19  messages to try to find it. If I can find it in
20  there, there's no need for me to try to find, you
21  know, screenshots.
22         As you know, in every investigation not
23  only do you -- with the claims of a victim, but you've
24  got to make sure those are real claims; they're not

5  (Pages 14 to 17)

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

Page 18

1    just, you know, lies.
2        Q.   Mm-hmm.
3        A.   So ...
4        Q.   Did you ever see any pictures of Cassandra
5    Socha without her clothes on or in a state of undress?
6        A.   No.  You know, when I clicked on the stuff
7    when I was going through, it was just kind of looking:
8    Okay.  That's not a screenshot; close.  You can just
9    kind of tell.  I didn't really get, you know, like, in
10   depth.  Really quick --
11       Q.   Were they, like, small images --
12       A.   Yeah.  Well, yeah.  It's like little icons.
13   And then when you click on it, it would show up like
14   you would do on -- you know, maybe on your phone.  So
15   click on it; nah; click; and you know ...
16       Q.   Okay
17       A.   I said I'd much be better off trying to
18   find, you know, 9,000 -- going through the 9,000 pages
19   than trying to find this, you know, screenshot.
20       Q.   Did you ever look at any videos on the
21   phone?
22       A.   To my knowledge, there is no video on --
23   I've never seen video.  I don't even know if video has
24   been -- was extracted on there.  So I've never even

Page 19

1    looked, never even saw.  The video sort of made no
2    purpose in my, you know, criminal investigation.  As I
3    said, to this day I still don't know if there is
4    anything -- any type of video on there.
5        Q.   Have you ever seen a video of Cassandra
6    Socha in any sexual situation?
7        A.   Negative.
8        Q.   Do you know of anyone who has seen
9    pictures, either printed or digital images, of
10   Cassandra Socha without her clothes on?
11       A.   No.  And if I did, there would have been a
12   written up internal complaint by myself against that
13   person.
14       Q.   Do you know of anyone who has seen videos
15   of Cassandra Socha in any sexual situations?
16       A.   No.
17       Q.   So after you got the text messages through
18   the phone --
19       A.   Yes.
20       Q.   -- and you found what you were looking
21   for --
22       A.   Yes.
23       Q.   -- what -- how did the investigation
24   progress from there?

Page 20

1        A.   Just like all.  I notified the appellate
2    prosecutor I was able to find all the information.  At
3    that point, the appellate prosecutor wanted to set up
4    a grand jury date.
5        Q.   Let's focus back on the -- on the cell
6    phone.
7        A.   Yes.
8        Q.   So that data was on your computer?
9        A.   Yes.  Yep.
10       Q.   And was it -- You know, on your computer,
11   you've got all the icons --
12       A.   Yeah.
13       Q.   -- like, for the internet and your e-mail
14   and all that stuff.
15            Was it its own icon that said, "Socha,"
16   or --
17       A.   It's in the Z drive under -- that says,
18   "Search warrants."  And, you know, in there I either
19   keep two things:  either my search warrants or my
20   investigation file, you know, either file.  But it's
21   all in the Z drive.  Yeah.  I keep nothing, you know
22   what I mean --
23       Q.   Yeah.
24       A.   -- you know, that would be that type out of

Page 21

1    an icon on my computer.
2        Q.   Is your computer password-protected?
3        A.   Yes.
4        Q.   Is it one of those deals where, like, if
5    you leave for ten minutes, it locks itself out?
6        A.   No, it doesn't automatically lock itself
7    out.
8        Q.   Okay.  So in theory, you could leave the
9    room, and someone could jump onto your machine?
10       A.   In theory, yes.  Abs-- Yeah.
11       Q.   Are you aware of anyone who did that?
12       A.   No.  Like I said, if somebody did, there
13   would be -- I'm obligated to write them up.
14       Q.   After that date that you initially got the
15   text message and everything off of it, did you ever go
16   back into your Z drive and look at the data?
17       A.   I never went back and looked in the data,
18   but -- you know, to look at the data again.  I
19   clicked -- you know, I clicked to see, okay, it's
20   still there; but I never opened anything back up.
21   There was no point to, you know, opening it back up.
22       Q.   Did you --
23       A.   But I did have to make a download copy to
24   Lieutenant Reid.  That's why I opened it back up.  And

6  (Pages 18 to 21)

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

Page 22

1  I gave the copies to Lieutenant Reid, you know, after
2  that. Sorry. And I don't remember how many days
3  after because I was told there could be a pending
4  internal investigation.
5      Q.   Was that a -- What did you put that
6  download on?
7      A.   On a flash drive.
8      Q.   Was that a download of just the text or the
9  entire data?
10     A.   You can only do the entire data when you do
11 it.
12     Q.   Okay.
13     A.   Yeah. I don't know how to specifically --
14 you know, if there's a way to or not. My
15 understanding is it's just the whole -- you know, the
16 whole dump.
17     Q.   So as far as you're concerned, Reid has a
18 copy of all the data that you had on your --
19     A.   Yes.
20     Q.   All right. Is that the only time that you
21 accessed the data or tinkered with it or whatever you
22 did?
23     A.   Yes. Yeah. Yep. As far as my knowledge,
24 I haven't, you know, gone back. I clicked on the

Page 23

1  folder to go through the to, froms, and memos I had to
2  send out, absolutely. But never on the data itself.
3      Q.   Did you make a copy for anyone else?
4      A.   No. The only copy should be -- like I
5  said, is the original that was given to me, given to
6  Deputy Chief Roechner, and to Lieutenant Reid for the
7  internal investigation.
8      Q.   So Roechner had a flash drive?
9      A.   Yeah. Everything in the case is locked in
10 his office.
11     Q.   And Reid has one that you gave him?
12     A.   Yes.
13     Q.   And at one time, the original was on your
14 computer?
15     A.   It's, yeah, there. Yeah, it's still, you
16 know -- yeah, the original.
17     Q.   Okay. The -- Is that data still on your
18 computer?
19     A.   Yes, it is. First instance after a
20 litigation hold came out, obviously I didn't remove
21 anything from my computer.
22     Q.   Is that data still on the Cellebrite and/or
23 the Lantern machine?
24     A.   As far as my knowledge, I was told no.

Page 24

1      Q.   Did you participate in removing that data
2  from the Cellebrite or the Lantern --
3      A.   No. I was in Florida.
4      Q.   Where in Florida were you?
5      A.   On the Gulf side. I have in-laws that live
6  in a town called North Port. So all over Fort Myers,
7  whatever.
8      Q.   All right. That's cool.
9      A.   Yeah.
10     Q.   Did -- Between the dates of August 21st and
11 August 24th -- The complaint was filed for the lawsuit
12 on August 21st.
13     A.   Yeah.
14     Q.   The FBI came on the --
15     A.   Yes.
16     Q.   -- 24th.
17         Between those dates, did you order anyone
18 in investigations to delete or alter that on any
19 computer?
20     A.   Negative. No. Didn't even know it was
21 happening.
22     Q.   Were you at work on August 24th when the
23 FBI came for a visit?
24     A.   Yes. I came in later that day, and they

Page 25

1  were already up there.
2      Q.   And it's your understanding that they
3  copied the contents of your computer?
4      A.   As far as I know, whatever the RCFL did,
5  yeah.
6      Q.   And assuming that they do have a copy of
7  the contents of your computer, the contents of
8  Cassandra Socha's cell phone will be in that computer?
9      A.   Yes.
10     Q.   And do you have a work phone?
11     A.   Yes.
12     Q.   Did you provide that work phone --
13     A.   Absolutely.
14     Q.   And on your work phone, are there any
15 copies or images of the data which might have been
16 taken from the cell phone?
17     A.   No. It's a flip phone.
18     Q.   All right. So your work phone doesn't even
19 have the capacity for that?
20     A.   Yeah. Correct.
21     Q.   Why do you have a flip phone?
22     A.   There's no need to -- It's a flip phone.
23 I'm going back to a flip phone one day. I hate
24 technology. I wish they'd go back to VHS players.

7 (Pages 22 to 25)

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

Page 26

1   **Q.** Okay. So now, on my desk in front of me
2   there is what --
3   **A.** Yeah.
4   **Q.** -- we call a smartphone.
5   **A.** Yes.
6   **Q.** Is that your personal phone?
7   **A.** Correct.
8   **Q.** And on your personal phone, are there any
9   images of Cassandra Socha at all?
10  **A.** Negative. No. Would not risk my entire
11  reputation or career.
12  **Q.** Are you willing to show me the contents of
13  your phone?
14  **A.** I can show you the contents of my phone.
15  MR. ROCHE: The Union actually has an objection
16  to the wholesale request to see personal cell phones.
17  So we object to that.
18  BY MR. REGIS:
19  **Q.** Okay. Are you willing to show me the
20  contents of your cell phone?
21  **A.** I'm going to go by the advice of the
22  counsel right now.
23  **Q.** Are you willing to show me the photographs
24  that are on your cell phone?

Page 27

1   **A.** Yeah, I can --
2   MR. ROCHE: We make the same objection. This is
3   a private phone. You don't have any basis to have
4   access to it. We object to that.
5   MR. REGIS: Okay.
6   BY MR. REGIS:
7   **Q.** Okay. So now we're --
8         (Simultaneous conversation.)
9   **A.** -- go through the photos --
10  **Q.** -- that are on your personal phone?
11  **A.** Mm-hmm. Not very exciting.
12  **Q.** No, it's a really boring phone.
13  **A.** Yeah. Got a lot of my dog and fishing.
14  And the reason I agreed to it, even though with
15  counsel, that as I told you the day when you came up
16  in investigations and talked with the RCFL, I actually
17  thanked that that was being done because this is the
18  only way for my name to be cleared.
19  **Q.** Are you aware of any attempts by any police
20  department personnel to delete or alter data between
21  the dates of August 21st and August 24th?
22  **A.** No. And like I keep saying, if I was, I
23  would have to be obligated under the law and obligated
24  under the Joliet Police to make proper notification on

Page 28

1   that.
2   **Q.** And I know we talked about it a minute ago,
3   but just to be clear, when the FBI was present, you
4   did cooperate --
5   **A.** Oh, absolutely.
6   **Q.** -- in that investigation?
7   **A.** Yes.
8   **Q.** And you are unaware of anyone on the police
9   department who has got any copies of anything from
10  Cassandra Socha's cell phone outside of what you told
11  me here?
12  **A.** Correct.
13  **Q.** Did you ever make a copy of the data for
14  Darrell Gavin?
15  **A.** No, I did not.
16  **Q.** Did you make one for Tab Jensen?
17  **A.** No, I did not.
18  **Q.** Did you make one for Brian Benton?
19  **A.** No, I did not.
20  **Q.** Have you gone back onto the Cellebrite
21  computer to verify that the data was deleted?
22  **A.** Negative. No.
23  **Q.** Do you know -- Would you know how to do
24  that if you wanted to?

Page 29

1   **A.** No, I would not.
2   **Q.** If we go over to your computer right now --
3   **A.** Mm-hmm.
4   **Q.** -- everything you described to me as far as
5   how you open the file --
6   **A.** Yes.
7   **Q.** -- and looked at the data, can you recreate
8   that for me?
9   **A.** Yeah. Shouldn't be a problem at all.
10  **Q.** Okay. Before we go over there --
11  **A.** Yeah.
12  **Q.** -- and because we, you know -- Do you have
13  anything else to add about this?
14  **A.** No. I don't have anything else.
15  **Q.** Okay. Let's go over and look at your --
16  DETECTIVE GRIZZLE: Okay. This will be, as of
17  right now, the end of the recording at 11:26 a.m. on
18  September 25th.
19        (End of audio recording.)
20
21
22
23
24

8 (Pages 26 to 29)

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

Page 30

1    STATE OF ILLINOIS  )
                       )  SS.
2    COUNTY OF COOK    )

3

4            Erin D. Mitoraj, being first duly sworn, on

     oath says that she is a Certified Shorthand Reporter,
5

     doing business in the City of Chicago, County of Cook,
6

     and the State of Illinois;
7

8            That she reported in shorthand the

     proceedings had via an audio recording;
9

10           And that the foregoing is a true and correct

     transcript of the proceedings had on said audio
11

     recording.
12

13

14

                                _____
15                              ERIN D. MITORAJ, CSR
                                161 North Clark Street
16                              Suite 3050
                                Chicago, Illinois 60601
17                              Phone:  312.361.8851

18   CSR No. 084-003582

19

20

21

22

23

24

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

Page 31

**A**

**a.m** 2:3 29:17
**able** 7:19 11:19
  11:22,24 12:12
  16:23 20:2
**Abs-** 21:10
**absolutely** 23:2
  25:13 28:5
**access** 12:3 27:4
**accessed** 22:21
**activities** 13:18
**add** 29:13
**administrative**
  2:11
**advice** 26:21
**advise** 10:2
**advised** 10:12
  10:15
**ago** 28:2
**agreed** 9:9 27:14
**agreement** 2:20
**ahead** 6:23
**ahold** 4:2 8:8,8
  12:5,6
**AI** 6:7,19
**alter** 24:18
  27:20
**and/or** 2:13
  23:22
**answer** 2:9,21
**answering** 2:23
**appellate** 3:23
  5:13 6:17 7:5
  20:1,3
**approved** 7:5
**approximately**
  2:2
**arrested** 10:17
**asked** 4:12 9:21
**assuming** 25:6
**attempts** 27:19
**attorney** 2:14
**audio** 1:10 29:19
  30:8,10

**August** 24:10,11
  24:12,22 27:21
  27:21
**automatically**
  21:6
**aware** 21:11
  27:19

**B**

**back** 3:24 10:23
  11:2 20:5
  21:16,17,20,21
  21:24 22:24
  25:23,24 28:20
**bargaining** 2:19
  2:20
**basically** 5:20
  7:23 9:12 15:6
**basis** 27:3
**Batis** 5:9
**bed** 5:7
**beginning** 14:15
  17:12
**believe** 11:24
  12:10 14:2
  16:6
**believes** 6:17
**Benton** 5:14,22
  28:18
**best** 10:8
**better** 12:19
  18:17
**bit** 3:22 10:19
  10:20 11:19
**boring** 27:12
**Botsam** 7:22 9:1
  9:6 11:1,5,21
  12:15
**breakdown** 7:14
**Brian** 6:6,19
  28:18
**briefly** 5:9
**bring** 7:11
**Brown** 9:21 10:9
**business** 30:5

**C**

**call** 10:1,1 11:8
  26:4
**called** 3:23,24
  11:9 15:22
  16:23 24:6
**capacity** 3:5
  25:19
**captain's** 9:23
**career** 26:11
**case** 5:10,16,24
  6:11 14:14,15
  17:12 23:9
**Cassandra** 1:3
  3:9 18:4 19:5
  19:10,15 25:8
  26:9 28:10
**Cassandra's**
  9:11
**cell** 3:9 7:14 9:8
  9:11 10:20,24
  14:7 20:5 25:8
  25:16 26:16,20
  26:24 28:10
**Cellebrite** 11:18
  11:19 12:1
  13:11 23:22
  24:2 28:20
**certain** 5:11
**Certified** 1:12
  30:4
**Chicago** 30:5,16
**chief** 5:13,14,22
  5:22 6:8,9
  14:17 23:6
**choice** 10:17
**Christopher** 2:3
**City** 1:6 2:6,7
  15:20 30:5
**claiming** 7:14
  15:15
**claims** 17:23,24
**Clark** 30:15
**Class** 4:9

**clear** 28:3
**cleared** 27:18
**click** 15:22,24
  16:2,10,11,18
  17:6 18:13,15
  18:15
**clicked** 17:2,15
  18:6 21:19,19
  22:24
**close** 18:8
**clothes** 18:5
  19:10
**clueless** 12:4
**collective** 2:19
  2:20
**come** 3:11,19
  7:12 10:1
**coming** 9:7
**commander's**
  9:16
**complaint** 19:12
  24:11
**computer** 8:18
  11:19,21 12:2
  12:11,20 14:1
  14:19,22 15:1
  15:17 20:8,10
  21:1,2 23:14
  23:18,21 24:19
  25:3,7,8 28:21
  29:2
**concentrate**
  17:18
**concerned** 13:18
  22:17
**conference** 9:23
**confirming**
  15:14
**contacted** 5:12
**content** 4:8
**contents** 3:8
  14:7 25:3,7,7
  26:12,14,20
**continue** 13:22
**contract** 2:13

**conversation**
  27:8
**Cook** 30:2,5
**cool** 24:8
**cooperate** 2:7
  28:4
**copied** 14:21
  25:3
**copies** 22:1
  25:15 28:9
**copy** 14:2,4
  21:23 22:18
  23:3,4 25:6
  28:13
**corporation** 1:6
**correct** 3:4
  25:20 26:7
  28:12 30:9
**correctly** 13:4
**counsel** 26:22
  27:15
**County** 30:2,5
**couple** 17:15
**course** 3:14 7:11
**court** 1:1 4:19
**criminal** 2:10
  19:2
**Crowley** 3:18
  5:20,24 6:4
  14:16
**CSR** 30:15,18
**curve** 15:5

**D**

**D** 1:12 30:3,15
**Darrell** 28:14
**data** 12:14,23
  14:24 15:2
  16:7,8,18 17:8
  20:8 21:16,17
  21:18 22:9,10
  22:18,21 23:2
  23:17,22 24:1
  25:15 27:20
  28:13,21 29:7

Royal Reporting Services, Inc.
312.361.8851

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

date 3:13,15
20:4 21:14
dates 24:10,17
27:21
day 8:6,7 13:3
13:22 19:3
24:24 25:23
27:15
days 22:2
deals 21:4
decision 6:1
Defendants 1:8
definitely 6:8,15
delete 24:18
27:20
deleted 8:23
28:21
department
7:12 14:17
27:20 28:9
depth 18:10
Deputy 5:13,22
23:6
described 29:4
desk 26:1
Detective 1:11
2:1,1 7:17,21
8:3,21 14:3
29:16
determination
6:17 9:13,24
determined 9:4
device 8:19
digital 19:9
directly 5:23
disk 12:24
DISTRICT 1:1
1:1
division 1:2 3:3
dog 27:13
doing 6:14 10:13
30:5
download 7:23
8:1 11:6,16
21:23 22:6,8

downloaded
7:24 17:1
drafted 7:2
drive 8:21 12:8
13:4 14:5,11
14:13,14,18,21
15:1,19,20
20:17,21 21:16
22:7 23:8
duly 30:3
dump 14:8
22:16
dumped 14:9,10
15:7

E
e-mail 20:13
earlier 3:7 5:15
16:15
EASTERN 1:2
Ed 2:2
EDWARD 1:6
1:11
either 16:11,12
19:9 20:18,19
20:20
employees 2:7
entire 14:7,21
15:12 22:9,10
26:10
entirely 15:13
Erin 1:12 30:3
30:15
eventually 11:1
13:24
everybody
15:19
exact 3:15
exactly 4:13 5:4
exciting 27:11
executed 9:5
explain 10:7
11:18
extract 12:23
extracted 11:1

13:24 14:6
18:24
extraction 16:7
16:8

F
far 6:3 11:11
13:17 16:13
22:17,23 23:24
25:4 29:4
FBI 24:14,23
28:3
federal 2:21
feel 4:7,8
felony 4:10
figure 12:13
file 12:2,3,7,9,10
20:20,20 29:5
filed 24:11
finally 14:1
find 17:19,19,20
18:18,19 20:2
first 7:2 10:6
11:17 12:1
23:19 30:3
fishing 27:13
fit 4:14
flash 8:20 12:8
13:4 14:5,11
14:13,14,18,21
15:1 22:7 23:8
flip 25:17,21,22
25:23
Florida 24:3,4
focus 20:5
folder 15:22
16:20 23:1
following 6:2
foregoing 30:9
Fort 24:6
found 8:15
12:18 15:10,11
15:12 19:20
four 3:6
froms 23:1

front 26:1
further 11:19
16:14

G
Gatlin 4:4 5:1
7:12 15:14
17:13
Gatlin's 8:4
Gavin 28:14
General 2:3,8
generally 5:16
German 7:17,21
8:3,21 12:6
14:3
give 10:14,23
11:3 15:6,8
given 8:18 14:2
23:5,5
go 6:22 10:5,21
10:22 16:14
21:15 23:1
25:24 26:21
27:9 29:2,10
29:15
goes 3:20 15:8
going 4:3 5:9
6:16 9:4,5,22
9:22 10:11,14
11:23 12:2,11
12:20 17:18
18:7,18 25:23
26:21
grand 20:4
Grizzle 1:6,11
2:1,2 29:16
Gulf 24:5
guys 6:13

H
happened 7:9
happening
24:21
harassment 4:9
4:17,18

hate 25:23
hear 3:21
Hey 9:6
hidden 12:12
hold 23:20
home 3:20 13:21
hour 10:24
hours 4:1
hundred 13:6

I
icon 20:15 21:1
icons 18:12
20:11
Illinois 1:1 30:1
30:6,16
images 17:8
18:11 19:9
25:15 26:9
in-laws 24:5
including 14:15
info 8:22 16:7
information
13:9 20:2
initial 11:6
initially 21:14
initiated 3:8
Inspector 2:3,8
instance 23:19
internal 19:12
22:4 23:7
internet 20:13
interview 1:11
2:10
intimidation
4:17
investigation
2:18 3:8 6:3
7:10 9:2 13:19
13:23 14:20
17:22 19:2,23
20:20 22:4
23:7 28:6
investigations
2:8,17 3:3

Case: 1:18-cv-05681 Document #: 116-2 Filed: 10/14/20 Page 39 of 41 PageID #:556

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

Page 33

24:18 27:16
**involve** 5:17
**involved** 3:8
**involving** 5:24
**iPhones** 11:22

**J**

**Jeff** 12:6
**Jensen** 28:16
**job** 6:18
**John** 1:7 2:5,15
**Joliet** 1:6 15:20
  27:24
**Jr** 2:5
**jump** 21:9
**June** 3:7,16
**jury** 20:4

**K**

**keep** 5:21 20:19
  20:21 27:22
**kept** 14:16 15:10
**kind** 6:10 8:18
  12:24 15:5
  16:1,11 18:7,9
**know** 4:12,13,17
  5:5,5,9,10,12
  5:24 6:13,15
  7:4,6,13,20,23
  8:4,20,21,22
  9:8 10:8,19
  12:4,4,5,11,18
  12:21 14:10
  15:11,17,23
  16:1,1,4,5,7,21
  17:4,5,12,14
  17:15,17,21,22
  18:1,6,9,14,15
  18:18,19,23
  19:2,3,8,14
  20:10,18,20,21
  20:24 21:18,19
  21:21 22:1,13
  22:14,15,24
  23:16 24:20

25:4 28:2,23
  28:23 29:12
**knowledge**
  18:22 22:23
  23:24

**L**

**Lampkin** 3:22
  7:5 8:7
**Lantern** 11:21
  12:20 13:2
  14:1 23:23
  24:2
**law** 2:21 4:13
  27:23
**lawsuit** 24:11
**learning** 15:5
**leave** 10:17 21:5
  21:8
**Let's** 8:11 20:5
  29:15
**lies** 18:1
**lieutenant** 4:2
  5:9,12 9:21
  10:9 21:24
  22:1 23:6
**litigation** 23:20
**little** 3:22 8:12
  10:19,19 11:18
  18:12
**live** 24:5
**load** 7:14
**lock** 21:6
**locked** 23:9
**locks** 21:5
**long** 2:4 3:5
  11:23
**look** 7:13 8:17
  10:9,11 12:6
  12:14 13:8
  14:24 15:2,4
  16:8,15 18:20
  21:16,18 29:15
**looked** 17:16
  19:1 21:17

29:7
**looking** 7:7 17:5
  17:5,7 18:7
  19:20
**Lorinda** 3:22
  4:7 7:4
**lot** 27:13

**M**

**machine** 21:9
  23:23
**Maria** 4:4,24
  5:1 7:12 8:8
  15:14 17:13
**Maria's** 15:11
  15:11
**Marie** 8:3
**Mark** 4:2
**mean** 12:9 20:22
**media** 8:19
  12:24
**memos** 16:4
  23:1
**message** 4:5,8
  4:21,22 7:24
  11:20 12:17,18
  12:22 15:13
  16:13 17:4
  21:15
**messages** 15:7
  15:10 16:16
  17:6,19 19:17
**minute** 28:2
**minutes** 21:5
**Mitoraj** 1:12
  30:3,15
**Mm-hmm** 18:2
  27:11 29:3
**morning** 5:8
**motherfucker**
  10:10
**municipal** 1:6
**Myers** 24:6

**N**

**nah** 18:15
**name** 4:24 15:9
  27:18
**need** 4:16 12:3
  17:20 25:22
**Negative** 19:7
  24:20 26:10
  28:22
**never** 18:23,24
  19:1 21:17,20
  23:2
**new** 5:23
**night** 3:21 5:8
  8:5 9:18 10:23
  11:5,16,17
  12:15,23 13:8
  13:17 14:6
**North** 24:6
  30:15
**NORTHERN**
  1:1
**notification**
  27:24
**notified** 20:1
**nude** 10:11
**number** 15:8,11
  15:12
**numbers** 16:6

**O**

**oath** 30:4
**object** 26:17
  27:4
**objection** 26:15
  27:2
**obligated** 21:13
  27:23,23
**obstructing**
  10:16
**obviously** 23:20
**offhand** 3:15
**office** 3:23 9:16
  10:15 14:17
  23:10
**officer** 2:3,24

3:18 4:11 5:20
  5:24 9:14,16
  14:16 15:13
**offshoot** 6:10
**oh** 17:6,13 28:5
**okay** 2:6 3:2,19
  4:20 5:2,6 7:1
  7:9,18 8:1,5,9
  8:11 9:1,12
  10:3 11:15
  12:14,23 17:4
  17:7 18:8,16
  21:8,19 22:12
  23:17 26:1,19
  27:5,7 29:10
  29:15,16
**once** 16:2
**open** 16:11 29:5
**opened** 21:20,24
**opening** 21:21
**order** 5:19 24:17
**ordered** 5:11,15
**orders** 6:2
**ordinance** 2:6,7
  2:16
**original** 6:3 23:5
  23:13,16
**outside** 28:10

**P**

**p.m** 3:24 9:20
**pages** 15:9 17:18
  18:18
**part** 5:10 9:1
**partial** 11:20
  12:16,17
**participate** 24:1
**participating**
  2:17
**participation**
  2:17
**parts** 5:16
**password-pro...**
  21:2
**pending** 22:3

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

Page 34

**people** 5:11,16
**percent** 13:6
**person** 19:13
**personal** 17:17
  26:6,8,16
  27:10
**personnel** 27:20
**phone** 3:9,20
  4:11,20 5:3
  7:13,15 8:4,13
  8:23 9:8,11
  10:14,20,23,24
  11:2,3,11,13
  13:9 14:7,10
  15:8,11,12
  16:21 17:8,8
  18:14,21 19:18
  20:6 25:8,10
  25:12,14,16,17
  25:18,21,22,23
  26:6,8,13,14
  26:20,24 27:3
  27:10,12 28:10
  30:17
**phones** 26:16
**phonetic** 7:22
**photographs**
  26:23
**photos** 10:11
  16:12 17:3,14
  17:17 27:9
**pictures** 13:13
  16:24 17:10,11
  18:4 19:9
**Plaintiff** 1:4
**players** 25:24
**please** 9:7
**point** 10:12
  12:10 20:3
  21:21
**police** 7:12
  27:19,24 28:8
**popped** 5:23
**Port** 24:6
**possession** 9:10

11:17
**present** 2:4,14
  9:22 28:3
**pretty** 6:22
  16:10
**printed** 19:9
**private** 27:3
**probably** 3:24
  10:24 12:20
  13:2
**problem** 29:9
**proceed** 4:15
**proceedings**
  2:11,12 30:8
  30:10
**progress** 19:24
**proper** 27:24
**prosecutor** 5:13
  6:17 7:4,5 20:2
  20:3
**Prosecutor's**
  3:23
**provide** 25:12
**proving** 15:13
**purpose** 19:2
**put** 12:1,2,7
  13:3 14:19
  22:5

      **Q**
**quasi** 12:12
**questions** 2:9,21
  2:23
**quick** 18:10

      **R**
**R** 2:5
**rationale** 15:6
**RCFL** 9:6 25:4
  27:16
**reached** 9:5
**read** 4:13,14 5:2
**real** 17:24
**really** 7:21 17:3
  18:9,10 27:12

**reason** 27:14
**recall** 3:14
**recognize** 2:16
**recorded** 1:10
**recording** 29:17
  29:19 30:8,11
**recreate** 29:7
**referring** 10:10
**regarding** 13:19
**Regis** 2:4,6 3:1
  26:18 27:5,6
**Reid** 4:2 21:24
  22:1,17 23:6
  23:11
**remember** 3:13
  5:4 13:1,3 22:2
**remove** 23:20
**removed** 12:8
**removing** 24:1
**rep** 2:13
**report** 13:20
**reported** 30:7
**Reporter** 1:12
  30:4
**reputation**
  26:11
**request** 26:16
**required** 2:9,22
**requires** 2:7,16
**Retrieved** 10:20
**returned** 11:2
  11:13
**right** 2:1,13 6:19
  9:10 11:10,12
  15:19 22:20
  24:8 25:18
  26:22 29:2,17
**rightfully** 10:7
**rights** 2:19,24
**risk** 26:10
**Roche** 2:5,5,15
  2:15 26:15
  27:2
**Roechner** 5:14
  5:22 6:8 23:6,8

**Roechner's**
  14:17
**roll** 10:1
**room** 2:4 9:23
  9:24 21:9
**run** 6:23

      **S**
**savvy** 7:21
**saw** 4:14 19:1
**saying** 10:10
  27:22
**says** 2:13 4:8
  16:20,21 20:17
  30:4
**scope** 10:13
**screen** 8:18
**screenshot** 7:20
  8:15,24 17:13
  18:8,19
**screenshots**
  16:12 17:15,21
**screenshotted**
  7:24
**scrolling** 15:10
**search** 4:10,16
  6:18 7:1,3,3,6
  9:4,7 10:2,8,13
  10:18 15:21,22
  16:5 20:18,19
**see** 3:22 8:22
  15:5,23 16:3,9
  17:10 18:4
  21:19 26:16
**seen** 18:23 19:5
  19:8,14
**segregate** 16:23
**send** 23:2
**sent** 4:5,23 7:4
  15:14
**September** 2:2
  29:18
**sergeant** 2:2 3:2
  7:22 9:6 11:1
  11:21

**serve** 9:7
**served** 9:13
**set** 20:3
**sexual** 19:6,15
**shift** 9:17
**shorthand** 1:12
  30:4,7
**show** 12:19
  18:13 26:12,14
  26:19,23
**showed** 8:23
**shows** 16:4,5
**sic** 2:4 5:13 13:4
**side** 24:5
**signed** 9:5
**Simultaneous**
  27:8
**sitting** 3:20
**situation** 19:6
**situations** 19:15
**small** 18:11
**smartphone**
  26:4
**Socha** 1:3 9:16
  11:13 15:13,24
  16:2,20 18:5
  19:6,10,15
  20:15 26:9
**Socha's** 3:9 4:11
  25:8 28:10
**somebody** 2:12
  4:18 21:12
**somebody's**
  15:9
**sorry** 3:13 22:2
**sort** 19:1
**specific** 8:12
**specifically** 15:4
  22:13
**SS** 30:1
**started** 9:17
  10:15
**state** 2:20 18:5
  30:1,6
**stated** 4:1 10:14

Cassandra Socha v. City of Joliet; et al.
Interview of Detective Edward Grizzle - Audio Transcription

**STATES** 1:1
**stating** 4:5,6
**statute** 2:20
**stick** 15:16
**stored** 15:1,18
**Street** 30:15
**stuff** 6:4 13:20
    16:12 18:6
    20:14
**subpoena** 9:14
**Suite** 30:16
**sure** 7:13 17:24
**Surprisingly**
    3:21
**sworn** 30:3

**T**
**Tab** 28:16
**take** 9:1 11:23
**taken** 8:12 13:9
    25:16
**talk** 2:14
**talked** 27:16
    28:2
**talking** 10:20
**technologically**
    7:21
**technology**
    11:11 12:5
    25:24
**tell** 4:21 5:11,16
    6:1 17:3 18:9
**tells** 4:7
**ten** 17:16 21:5
**testified** 4:4,18
**text** 4:5,8,21,22
    12:18 15:7,10
    15:12 16:13,16
    17:3,6,18
    19:17 21:15
    22:8
**texts** 16:24
**thanked** 27:17
**theory** 21:8,10
**they'd** 25:24

**thing** 5:8 10:6
**things** 4:6 5:11
    17:14,16,16
    20:19
**time** 3:14,17,18
    4:20 9:3,15
    11:23 13:1
    22:20 23:13
**tinkered** 22:21
**told** 5:21 6:6,9
    6:19,22 10:20
    22:3 23:24
    27:15 28:10
**town** 24:6
**transcribed**
    1:11
**transcript** 30:10
**TRANSCRIP...**
    1:10
**transpired** 5:5
**transpiring** 6:16
**trial** 3:18 4:5
    5:20
**Tried** 10:7
**true** 7:14 30:9
**truthfully** 2:9
**try** 8:11 17:19
    17:20
**trying** 4:2 18:17
    18:19
**turned** 14:16
**two** 10:24 20:19
**type** 19:4 20:24
**typed** 13:20

**U**
**Um** 3:12
**unaware** 28:8
**understanding**
    2:22 4:23
    22:15 25:2
**undress** 18:5
**union** 2:12,13
    26:15
**UNITED** 1:1

**thing** upset 10:7
**upstairs** 10:21
    10:22

**V**
**valid** 10:8,18
**verify** 28:21
**VHS** 25:24
**victim** 7:11
    15:15 17:23
**video** 18:22,23
    18:23 19:1,4,5
**videos** 13:15
    16:24 18:20
    19:14
**visit** 24:23
**vs** 1:5

**W**
**waited** 3:22
**waiving** 2:18,24
**walked** 10:16
**walking** 10:15
**want** 4:15
**wanted** 7:7 20:3
    28:24
**warrant** 4:10,16
    6:18 7:1,3,6
    9:4,7 10:2,9,13
    10:18 16:5
**warrants** 7:3
    15:21,22 20:18
    20:19
**wasn't** 5:23
**watch** 9:16
**way** 22:14 27:18
**we're** 2:22 27:7
**weighted** 13:2
**went** 5:7 9:15
    13:21 21:17
**wholesale** 26:16
**willing** 26:12,19
    26:23
**wish** 25:24
**witness** 4:9

**woke** 5:8
**work** 9:15 24:22
    25:10,12,14,18
**write** 21:13
**written** 19:12

**X**

**Y**
**yeah** 3:17 5:4
    6:8,15 8:10,14
    8:20 9:19 13:7
    13:20 16:19,22
    17:1,2,11
    18:12,12 20:12
    20:21,23 21:10
    22:13,23 23:9
    23:15,15,16
    24:9,13 25:5
    25:20 26:3
    27:1,13 29:9
    29:11
**year** 3:7
**years** 3:6
**Yep** 6:24 14:8
    20:9 22:23

**Z**
**Z** 15:19,20 20:17
    20:21 21:16

**0**
**084-003582**
    30:18

**1**
**1-20** 1:7
**1:18-cv-05681**
    1:5
**10:56** 2:3
**11:26** 29:17
**161** 30:15
**18:00** 9:19
**19:00** 9:19

**2**

**2** 4:9
**21:00** 4:1
**21st** 24:10,12
    27:21
**24th** 24:11,16,22
    27:21
**25th** 2:2 29:18

**3**
**3050** 30:16
**312.361.8851**
    30:17

**4**

**5**

**6**
**6:00** 9:19
**60601** 30:16

**7**
**7:00** 9:20

**8**

**9**
**9,000** 15:9 17:18
    18:18,18
**9:00** 3:24