UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASSANDRA SOCHA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-05681 |
| | ) |
| CITY OF JOLIET, a municipal corporation, | ) |
| EDWARD GRIZZLE, JOHN DOES 1-20, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT GRIZZLE'S MEMORANDUM OF LAW
IN SUPPORT OF THIS MOTION FOR SUMMARY JUDGMENT**

This case arises out of the seizure and search of Plaintiff's iPhone pursuant to a search warrant. Defendant Edward Grizzle ("Sgt. Grizzle"), a Detective Sergeant with the Joliet Police Department ("JPD"), applied for and obtained the warrant in May 2018 at the direction of and in consultation with a State prosecutor. Sgt. Grizzle subsequently seized Plaintiff's iPhone, with assistance of fellow officers, extracted the data from the cell phone, and returned it to Plaintiff the same day. Within a few days, Sgt. Grizzle searched the extracted data for evidence. In July 2018, Plaintiff, who is a JPD officer, began receiving anonymous reports suggesting that several JPD detectives and command staff had been viewing sexual photographs and videos extracted from her cell phone.

Of the six (6) counts directed against Sgt. Grizzle in the First Amended Complaint ("FAC"), four (4) remain at issue: (1) Count I – Violation of Fourth Amendment Rights, (2) Count IV – Violation of Fourteenth Amendment Right of Privacy, (3) Count X – Illinois common law intrusion upon seclusion, and; (4) Count XVI – Illinois common law publication of private facts. As argued fully below, Sgt. Grizzle remains entitled to summary judgment on the remaining claims.

1

## SUMMARY OF RELEVANT FACTS[1]

Sgt. Grizzle at all relevant times was a Detective Sergeant with the JPD. SOF, ¶ 2. Plaintiff has been a patrol officer with the JPD since April 14, 2014. SOF ¶ 3. Nicholas Crowley ("Crowley") has been a patrol officer with the JPD since February 2013. SOF ¶ 4.

On July 16, 2017, Plaintiff and Crowley, who had been living together for over a year, got into an argument, which resulted in officers being called to their home, and Crowley being charged with multiple crimes. SOF ¶¶ 6-7. The JPD assigned Sgt. Grizzle to investigate the matters alleged in the criminal case. SOF ¶ 8. Lorinda Lamken, a Special Prosecutor with the Office of the State's Attorney's Appellate Prosecutor ("Lamken"), was assigned to the case. SOF ¶ 9.

A trial against Crowley began on May 13, 2018. SOF ¶ 10. Plaintiff's close friend, Maria Gatlin ("Gatlin"), testified against Crowley. SOF ¶ 12. On May 16, 2018, after the close of testimony in Crowley's trial, Plaintiff sent a text message to Gatlin. Gatlin contacted Lamken and informed her that she had received a text message from Plaintiff, and was very upset by it. SOF ¶ 14. Gatlin further informed Lamken that the text message was sent from a telephone number familiar and well-known to her as being associated with Plaintiff, as they had been friends for many years. SOF ¶ 15. Gatlin shared with Lamken the screen shot of the text message from Plaintiff, which accused Gatlin of committing crimes when employed as a police officer, ridiculed Gatlin as a mother, and made reference to "TESTIFY" and "FELONY." SOF ¶ 16.

Lamken concluded that in her professional opinion, the message met the elements of the offense of witness harassment in 720 lLCS 5/32-4a (a). SOF ¶ 17. She contacted JPD Lt. Marc Reid ("Lt, Reid"), of the Internal Affairs Division, and made him aware of the matter, as she understood that he was handling an internal affairs investigation involving Crowley and Plaintiff arising from the

---

[1] This section contains a truncated version of Sgt. Grizzle's L.R. 56.1 Statement of Facts. References to "SOF ¶ ___"refers to the paragraphs of that document.

events at issue in the criminal case. SOF ¶ 18. On May 16, 2018, Lamken called Sgt. Grizzle and told him about the message informed him that a search warrant was needed for Plaintiff's iPhone to ensure the message received by Gatlin originated from it. SOF, ¶¶ 19- 20.

On May 17, 2018, Sgt. Grizzle met with Chief Benton and Deputy Chief of Investigations Al Roechner ("Deputy Chief Roechner") who directed him obtain a search warrant for Plaintiff's iPhone if that was what Lamken wanted. SOF, ¶ 21. Sgt. Grizzle also met with Gatlin, who showed him a screenshot of a text message, and told him that she had received it from Plaintiff. SOF, ¶¶ 22-23.

Sgt. Grizzle conferred with Lamken and they discussed the drafting of a search warrant and what it should include. SOF, ¶ 24. Sgt. Grizzle prepared, signed, and swore to a complaint for a search warrant which included the following averments:

> "On May 16th, 2018 at 2052 hours I Detective Sergeant Grizzle was notified by Appellate Prosecutor Lorinda Lamkin that the witness in Joliet Police Department case 17-0010915 Maria Gatlin F/W DOB; 1/4/67 was contacted by the victim Cassandra Socha F/W DOB: l/13/85 via text message from phone number 708-717-3652 on May 16th Maria Gatlin has been friends with Cassandra Socha for over 15 years and knows this to be her phone number. Maria Gatlin and Cassandra Socha has conversed numerous times over the years with Cassandra using the cell phone number 708-717-3652. A search through law enforcement tools does show this number 708-717-3652 does belong to Cassandra Socha. On May 16th 2018 Maria Gatlin did testify in Will Court House room 400 in the case People vs. Crowley. Cassandra Socha is the victim in this case. Cassandra Socha's text message accuses Maria Gatlin of committing crimes when employed as a Police officer, ridiculing Maria as a mother and not being able to have children along with having a mixed child."

SOF, ¶ 25. Sgt. Grizzle sent the complaint to Lamken for approval prior to submitting it to the Court; she reviewed and approved it. SOF, ¶¶ 26-27. On May 18, 2018, Sgt. Grizzle presented it to a judge who issued a search warrant that authorized the seizure and search of Plaintiff's iPhone. SOF, ¶ 28.

3

The search warrant states that Plaintiff's iPhone "constitute[s] evidence of the offense of Harassment via electronic communications, Intimidation," commands that it "be seized, searched, and forensically analyzed [for]:

> Any and all data regarding electronic communications, including dates and times of those communications, digital images or videos … and any "hidden," erased, compressed, password-protected, or encrypted files,"

and specifically included the authority to "analyze and search any media seized for relevant evidence as outlined in this search warrant." SOF, ¶ 29. That same day, after Plaintiff's roll call, Lt. Brown escorted her into a room at the JPD where Sgt. Grizzle was seated. SOF, ¶ 30. Sgt. Grizzle served Plaintiff with the search warrant. SOF, ¶ 31. At the time Sgt. Grizzle seized Plaintiff's iPhone, it contained naked photographs of Plaintiff and three to four videos of Plaintiff and Crowley engaged in sex acts, including sexual intercourse and oral sex. SOF, ¶ 34.

After Grizzle seized Plaintiff's iPhone, he asked Sgt. Botzum to perform an extraction of the data it contained, as he understood that Sgt. Botzum had the training and experience to perform such data extractions from electronic devices. SOF, ¶ 35. Sgt. Botzum performed an extraction on Plaintiff's iPhone using Cellebrite software which allows a user to access data and retrieve deleted data within a cell phone, and extracts the data and puts it in a readable format. SOF, ¶ 36. When Sgt. Botzum performed the extraction, he looked for the message for which Sgt. Grizzle was looking, found remnants of it, took a screen shot of it, saved it to a disk and gave it to Sgt. Grizzle. SOF, ¶ 37. From the remnants Sgt. Botzum found, he could not determine if the text message was sent, received, where it came from, or the date and time of it. SOF, ¶ 38. After the Cellebrite extraction was complete, Sgt. Botzum saved the encoded or encrypted extraction file on the computer. SOF, ¶ 39. Because Cellebrite did not find all the data, Sgt. Botzum put the iPhone on a laptop equipped with Lantern software, another software program, and started another extraction with the hope that it

4

would find the date, time, sender, and recipient of the message. SOF, ¶ 40. The Lantern was taking a long time, so Sgt. Botzum called Detective Jeffrey German ("Det. German") and asked him to keep an eye on the computer the next day. SOF, ¶ 41. Det. German generated a Lantern report on the full set of phone data from Plaintiff's iPhone and copied it onto a USB drive along with a copy of the full data from the Cellebrite extraction and gave the drive to Sgt. Grizzle. SOF, ¶ 42.

Sgt. Grizzle loaded the data from the USB drive onto his computer so he go through the data and search for evidence of the alleged crime, and gave the drive to Deputy Chief Roechner at Deputy Chief Roechner's direction. SOF, ¶ 43.

Sgt. Grizzle's search of the data extracted from Plaintiff's cell phone took about an hour. SOF, ¶ 44. He searched the extracted data by scrolling through almost 9,000 pages of messages to find ones associated with Gatlin's number. SOF, ¶ 45. Once he located the block of messages associated with Gatlin's number, he located the message previously shown to him by Gatlin. SOF, ¶ 46. His search of the extracted data did not include clicking on photograph or video files. SOF, ¶ 47.

Lt. Reid told Sgt. Grizzle that there was going to be an internal affairs investigation and that he needed a copy of the information. SOF, ¶ 48. Sgt. Grizzle asked Det. German for a copy of the phone extraction and gave it to Lt. Reid per his order, after confirming with Deputy Chief Roechner that it was what Deputy Chief Roechner wanted done. SOF ¶ 49.

## ARGUMENT

### I. STANDARD OF REVIEW

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits, show that there is no issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although the moving party has the initial burden to show that there is no genuine issue of material fact, the opposing party may not rest on his pleadings; she must present some admissible evidence to show that he has a

5

case to take to the jury. *Id.* "[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Where the plaintiff fails to set forth admissible evidence to demonstrate a genuine issue of material fact summary judgment must be granted. *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

## II. SGT. GRIZZLE REMAINS ENTITLED TO SUMMARY JUDGMENT ON THE § 1983 CLAIMS.

The FAC alleges that Sgt. Grizzle deprived Plaintiff of the Fourth Amendment right to be free from unreasonable search and seizure and the Fourteenth Amendment right to privacy by (1) obtaining a search warrant for her iPhone using false or incomplete information, (2) conducting a search of the iPhone that exceeded the warrant's scope, and (3) disseminating sexually private images and videos obtained from her iPhone to other JPD officers.

"[T]he threshold inquiry in a § 1983 suit … requires courts to identify the specific constitutional right at issue. *Manuel v. City of Joliet*, Ill., 137 S. Ct. 911, 920 (2017). "Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment … must be the guide for analyzing these claims." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994). "The Fourth Amendment guarantees "[t]he right of the people to be secure in their … papers, and effects, against unreasonable searches and seizures ... and no Warrants shall issue, but upon probable cause ...." *Mitchell v. Doherty*, 37 F.4th 1277, 1286 (7th Cir. 2022), quoting U.S. Const. amend. IV.

Because the nature of Sgt. Grizzle's conduct falls "within the ambit of those activities regulated by the Fourth Amendment," the Court should analyze the § 1983 claims using the Fourth Amendment, rather than the unenumerated right to "privacy" recognized in the Fourteenth Amendment. *Kernats*, 35 F.3d at 1182. Specifically, Courts have analyzed claims that an officer obtained a search warrant unconstitutionally under a Fourth Amendment standard (*Rainsberger v.*

6

*Benner*, 913 F.3d 640, 647 (7th Cir. 2019), and that an officer's search exceeded the scope of a warrant under a Fourth Amendment standard. *See United States v. Mann*, 592 F.3d 779, 782 (7th Cir. 2010)("in light of the limitations in the warrant, the execution of the search was reasonable—the touchstone for all Fourth Amendment inquiries…") The last action at issue – disseminating seized materials to other officers in the JPD – while unaddressed in the case law, generally falls within the ambit of Fourth Amendment activities, as it concerns how a seizing officer handled materials within his organization.[2]

### A. The Warrant Request

An officer's request for a warrant violates the Fourth Amendment if the officer "knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Hart v. Mannina*, 798 F.3d 578, 591 (7th Cir. 2015). "A reckless disregard for the truth can be shown by demonstrating that the officer entertained serious doubts as to the truth of the statements, had obvious reasons to doubt their accuracy, or failed to disclose facts that he or she knew would negate probable cause." *Id.*, quotations and citations omitted.

Sgt. Grizzle remains entitled to summary judgment on this claim because the record remains bereft of any evidence to suggest that he knowingly, intentionally, or recklessly included any false statements in his complaint for a search warrant. There are no facts that suggest any of the statements in Sgt. Grizzle's complaint were false, let alone that their inclusion in the request was knowing, intentional, or reckless. The evidence shows that Sgt. Grizzle spoke to the putative victim and corroborated what she told him by looking at her phone and confirming Plaintiff's cell phone number from other investigative sources. The details of Sgt. Grizzle's conversation with the putative victim and the findings of his corroborative efforts were the only facts included in the complaint.

---

[2] If the Court elects to analyze this claim under the Due Process Right to Privacy, Sgt. Grizzle still remains entitled to summary judgment as argued below in Section II(C).

B. **Search of the Extracted Data**

An officer violates the Fourth Amendment in executing a search warrant only if his actions were objectively unreasonable under the circumstances. *Los Angeles County, California v. Rettle,* 550 U.S. 609, 614, (2007). Moreover, an officer executing a search warrant is entitled to rely upon it and is not obliged to interpret it narrowly. *See Hessel v. O'Hearn*, 977 F.2d 299, 302 (7th Cir. 1992).

The warrant authorizing Sgt. Grizzle's search of Plaintiff's iPhone authorized the search of:

> "*Any and all data regarding electronic communications*, including dates and times of those communications, *digital images or videos*, e-mail, voice mail, buddy lists, chat logs, instant messaging or text accounts, forensic data as well as data pertaining to ownership and registration of the device, any and all access logs identifying who utilized said digital storage devices, and any "hidden," erased, compressed, password-protected, or encrypted files." (emphasis added). SOF, ¶ 29.

The warrant contained additional language specifically authorizing a search of "*any media seized* for relevant evidence as outlined in this search warrant." (emphasis added). SOF, ¶ 29.

Based on the breadth of the warrant, even if the evidence showed that Sgt. Grizzle personally examined every file extracted from Plaintiff's cell phone to look for evidence of witness harassment, there remains no reasonable basis to conclude that he exceeded the scope of the warrant. *See United States v. Bishop*, 910 F.3d 335, 337 (7th Cir. 2018)("[the warrant] permits the search of every document on the cell phone, which (like a computer) serves the same function as … filing cabinets … And as with filing cabinets, the incriminating evidence may be in any file or folder. That's why courts routinely conclude that warrants with wording similar to the one at issue here are valid."); *see also United States v. Hannah*, 2021 WL 3173571, at *12 (C.D. Ill. July 27, 2021) ("[a]n image file can be saved within a word processing document or a text message, and a screenshot of a text message can convert a text message into an image file. If probable cause exists to search a cell phone for evidence of a crime, this case law recognizes that a search of the entire cell phone may be both necessary and permitted.")

8

Moreover, the undisputed evidence shows that Sgt. Grizzle's search of the extracted data was limited and at all times aimed at locating evidence of witness harassment. First, his use of the Cellebrite and Latern software to extract data from the cell phone was reasonable given that the warrant authorized the police to search the entirety of the cell phone. *See United States v. Winn*, 79 F. Supp. 3d 904, 924 (S.D. Ill. 2015)("[g]iven that the warrant authorized the police to search the entirety of the cell phone, using the Cellebrite machine is certainly the easiest and most expeditious way to view all of the data.") Overall, Sgt. Grizzle spent about an hour looking through the extracted data until he located the text message that Gatlin had claimed Plaintiff sent to her. SOF ¶¶ 44-46. The evidence shows that Sgt. Grizzle did not examine any photograph or video files. No facts in the record suggest that Sgt. Grizzle examined the data any longer than he needed to in order to locate the text message for which he was searching that constituted evidence witness intimidation allegation. Such as search remained within the scope of the warrant's authority and objectively reasonable as a matter of law. *See United States v. Palms*, 423 F. Supp. 3d 1254, 1265 (N.D. Okla. 2019)(officer's search of cell phone data was reasonable where officer limited his search to the offense alleged).

### C. Dissemination of Seized Materials

The evidence shows that Sgt. Grizzled provided copies of the extracted data to Deputy Chief Roechner and Lt. Reid. There is no evidence in the record to suggest that these actions were objectively unreasonable under the circumstances. To the contrary, the evidence shows that Sgt. Grizzle's actions were reasonable. The data Sgt. Grizzle shared was obtained pursuant to a legally obtained search warrant. Both Deputy Chief Roechner and Lt. Reid were Sgt. Grizzle's superior officers and directed him to provide them with copies, and both were authorized to search the data for evidence pursuant to the search warrant. Moreover, the record remains bereft of any evidence to suggest Sgt. Grizzle had any reason to suspect that the directives from his superiors were unlawful or that either intended to use the extracted data for any extra-legal purpose.

9

Should the Court decide to analyze the "dissemination" claim under the "privacy" rubric, the inexorable outcome remains that Sgt. Grizzle's actions did not deprive Plaintiff of her constitutionally protected right to privacy. The Seventh Circuit recognizes a constitutional right to privacy of "sexual … information that most people are reluctant to disclose to strangers." *Wolfe v. Schaefer*, 619 F.3d 782, 785 (7th Cir. 2010). This right, however, is not absolute and is defeasible where there exists a "strong public interest in access to or dissemination of the information." *Id.*

Here, the undisputed evidence shows that Deputy Chief Roechner and Lt. Reid, both members of the JPD command, had a strong public interest in access to data extracted from Plaintiff's cell phone. The JPD was investigating Plaintiff for potential criminal acts at the specific direction from a prosecutor. The data that Sgt. Grizzle disseminated to them was seized pursuant to a validly issued search warrant. Both were authorized by the warrant to examine the data for evidence of criminal activity. As Deputy Chief of Investigations, Deputy Chief Roechner has supervisory authority over the criminal investigation, and as an Internal Affairs supervisor Lt. Reid was charged with carrying out investigations of potential criminal activities by the JPD's officers. 'There is a strong public interest in ferreting out misconduct by police officers." *Rossi v. Bower*, 2002 WL 1160151, at *7 (N.D. Ill. May 29, 2002); *see also Shields v. Burge*, 874 F.2d 1201, 1204 (7th Cir. 1989) ("A trustworthy police force is a precondition of minimum social stability in our imperfect society...."). As such, there was a strong public interest in allowing Lt. Reid, the member of the JPD charged with ferreting out misconduct by JPD officers, access to the extracted data.

### D. Sgt. Grizzle Remains Entitled to Qualified Immunity.

Qualified immunity is a "high standard," that attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Doe v. Purdue Univ.*, 928 F.3d 652, 665 (7th Cir. 2019); *White v. Pauly*, 137 S. Ct. 548, 551 (2017). The Supreme Court has directed courts "'not to define clearly established law at a high level of

10

generality.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *see also White*, 137 S. Ct. at 552. "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590. In other words, "the level of generality is appropriate when it establishes the rule in a way that tells a public employee what the Constitution requires in the situation that employee faces." *Weiland v. Loomis*, 938 F.3d 917, 920 (7th Cir. 2019). The plaintiff carries the burden of defeating the qualified immunity defense. *Chasensky v. Walker*, 740 F.3d 1088, 1095 (7th Cir. 2014).

"Contrary to what [Plaintiff] must establish to defeat qualified immunity, the record here belies any contention that [Sgt. Grizzle] acted plainly incompetently or that he knowingly violated the law." *Allin v. City of Springfield*, 845 F.3d 858, 863 (7th Cir. 2017).

The warrant request claim is the most straightforward. There is no evidence that Sgt. Grizzle included any false statements in his request for a search warrant, or that he omitted any facts that would have been clear to a reasonable officer were "material to the probable-cause determination." *Rainsberger v. Benner*, 913 F.3d 640, 654 (7th Cir. 2019). Moreover, the evidence shows that Sgt. Grizzle consulted with the prosecutor on all matters relating to the warrant request, which "goes a long way toward solidifying [a] qualified immunity defense." *Zhang v. Schuster*, 2022 WL 615015, at *19 (N.D. Ill. Mar. 2, 2022)(collecting cases).

Plaintiff's search claim fares no better. Even if the Court finds that Sgt. Grizzle exceeded the scope of the warrant, given the breadth of the search it authorized, and the nature of Sgt. Grizzle's search of the extracted data, a reasonable officer in Sgt. Grizzle's position could have reasonably, if not mistakenly, believed that his search was within the scope of the warrant. In other words, the search was not "plainly incompetent," nor did it clearly run afoul of any clearly established law that would have alerted Sgt. Grizzle that his actions were unconstitutional. *See Allin*, 845 F.3d at 863.

Plaintiff's dissemination claim is more novel, and as such remains ripe for summary judgment on the basis of qualified immunity, as "[p]ublic employees are not required, at their financial peril, to anticipate developments in constitutional law." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). In order to overcome qualified immunity on this claim, Plaintiff must come forth with some law that would have placed it beyond doubt that Sgt. Grizzle acted unconstitutionally when he provided copies of lawfully seized cell phone data to his superior officers, upon lawful request, when that data included, unbeknownst to him at the time, naked and sexual images and videos of the cell phone's owner. There is no such law, and thus, Plaintiff cannot overcome qualified immunity on this claim.

### III. SGT. GRIZZLE REMAINS ENTITLED TO SUMMARY JUDGMENT ON THE STATE LAW PRIVACY CLAIMS.

#### A. Intrusion Upon Seclusion

To survive summary judgment on an intrusion upon seclusion claim, Plaintiff must come forth with evidence to show that "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Spiegel v. McClintic*, 916 F.3d 611, 618–19 (7th Cir. 2019). Sgt. Grizzle remains entitled to summary judgment on this claim because the evidence fails to satisfy the first and third elements.

"Illinois courts suggest analyzing the third element first, because that is 'the predicate for the other elements, and as such, if this element is not proven, th[e] court need not reach the other elements.'" *Alicea v. Dart*, 2022 WL 4602103, at *6 (N.D. Ill. Sept. 30, 2022), quoting *Jacobson v. CBS Broadcasting, Inc.*, 19 N.E.3d 1165, 1181 (Ill. App. Ct. 2014). "In analyzing the third element, Illinois courts look to the reasonable expectation of privacy in a particular circumstance. Where courts find a diminished expectation of privacy, a claim of intrusion on seclusion likely fails." *Id.* Plaintiff cannot demonstrate that she had a reasonable expectation of privacy in the data on her cell phone after it was legally obtained by police through the execution of a valid warrant. "Any reasonable person expects

12

that when law enforcement seizes evidence pursuant to a search warrant, law enforcement will review that evidence for a valid law enforcement purpose. The search warrant itself abrogates an individual's reasonable expectation of privacy in the seized property." *United States v. Deschambault*, 2020 WL 5637659, at *11 (D. Me. Sept. 21, 2020)("[a]fter the phone was seized pursuant to the state search warrant, [its owner] lacked possession, control, and use of the phone and no reasonable expectation that law enforcement would decline to perform a search the warrant authorized."); *see also United States v. Huart*, 735 F.3d 972 (7th Cir. 2013)(no reasonable expectation of privacy in the contents of a lawfully seized cell phone); *Wallace v. State*, 373 Md. 69, 90, 816 A.2d 883, 896 (Md. 2003)("no reasonable or legitimate expectation of privacy in effects being lawfully held by the police.")(collecting cases).

Additionally, Plaintiff cannot demonstrate the first element of this claim because any "intrusion" that Sgt. Grizzle made was literally authorized the search warrant. *See In re Trans Union Corp., Priv. Litig.*, 326 F. Supp. 2d 893, 902 (N.D. Ill. 2004)(defendant's accessing lawfully obtained files cannot be considered an unlawful intrusion).

### B. Public Disclosure of Private Facts

To survive summary judgment on a claim of public disclosure of private facts, a plaintiff must come forth with evidence to demonstrate that the defendant made private facts about her public and that the matter made public would be highly offensive to a reasonable person. *Karraker v. Rent-A-Ctr., Inc.*, 411 F.3d 831, 838 (7th Cir. 2005). Sgt. Grizzle remains entitled to summary judgment because there is no evidence in the record to establish the publicity requirement.

"Disclosure to persons with a 'natural and proper interest' in the information is not actionable." *Id*, quoting *Roehrborn v. Lambert*, 277 Ill.App.3d 181, 213 (Ill. App. 1st Dist.1995). As discussed above, the evidence shows that Sgt. Grizzle provided copies of the extracted data from Plaintiffs cell phone to D.C. Roechner and Lt. Reid. Both had a natural and proper interested in the extracted data. The JPD was investigating Plaintiff for potential criminal acts at the specific direction

13

from a prosecutor. The data that Sgt. Grizzle disseminated to both D.C. Roechner and Lt. Reid was seized pursuant to a validly issued search warrant. Both were authorized by the warrant to examine the data for evidence of criminal activity. As Deputy Chief of Investigations, D.C. Roechner has supervisory authority over the criminal investigation, and as an Internal Affairs supervisor Lt. Reid was charged with carrying out investigations of potential criminal activities by the JPD's officers. *See Indiana Nat. Bank v. Chapman*, 482 N.E.2d 474, 479 (Ind. Ct. App. 1985)(no invasion of privacy claim lies where the "communication was in answer to a legitimate investigation by law enforcement.")

### C. Sgt. Grizzle Remains Entitled to Immunity under Section 2-202 of the Illinois Tort Immunity Act.

Section 2-202 of the Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2020). Sgt. Grizzle remains entitled to immunity under this section because the record (1) shows that he was acting in the execution or enforcement of the law and (2) remains bereft of any evidence to demonstrate that his acts or omissions rose to the level of willful and wanton conduct.

A public employee's acts or omissions are in the execution or enforcement of the law where he is "engaged in a course of conduct designed to carry out or put into effect any law." *Fitzpatrick v. City of Chicago*, 112 Ill. 2d 211, 221 (Ill. 1986). Courts have held that a police officer acts within the meaning of Section 2-202 when he is "engaged in an investigation" in order to enforce laws. *Wade v. City of Chicago*, 364 Ill. App. 3d 773, 780 (Ill. App. 1st Dist. 2006). The conduct of Sgt. Grizzle of which Plaintiff complains in this case occurred while Sgt. Grizzle was engaged in an investigation of her for the crime of witness harassment or intimidation. Specifically, Sgt. Grizzle was engaged in the execution of a search warrant issued as part of that investigation. Several courts have applied Section 2-202 to the conduct of police officers during the execution of a search warrant. *See Prokop v. Hileman*, 588 F. Supp. 3d 825, 844 (N.D. Ill. 2022)(precluding negligence claims for actions taken by officers

14

during the execution of a search warrant); *see also Walker v. Weatherspoon*, 2017 WL 3521417, at *7 (N.D. Ill. Aug. 15, 2017), aff'd, 900 F.3d 354 (7th Cir. 2018)(officer's conduct during execution of search warrant was shielded by law enforcement immunity); *Short v. Fitzpatrick*, 2011 WL 3320516, at *9 (C.D. Ill. Aug. 2, 2011)(same).

Having established that Sgt. Grizzle was acting in the execution or enforcement of the laws, the Court must then examine whether there is evidence to demonstrate that his allegedly tortious conduct was "willful and wanton." The Tort Immunity Act defines willful and wanton as, "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. The conduct must be "more than mere inadvertence, incompetence, or unskillfulness." *Stevenson v. City of Chicago*, 2018 WL 1784142, at *32 (N.D. Ill. 2018). The evidence in this case cannot meet this high bar. What the evidence shows is that any intrusion upon or publication of Plaintiff's privacy or private facts was entirely inadvertent. There is no evidence to suggest that Sgt. Grizzle was aware of any private images on videos contained within Plaintiff's cell phone data when he was examining the data for evidence or when he provided copies of the data to his superior officers. Under such facts, Plaintiff cannot establish that Sgt. Grizzle intentionally, indifferently, or consciously invaded her privacy.

## CONCLUSION

For all the above-argued reasons, Defendant Edward Grizzle respectfully requests that this Honorable Court grant summary judgment in his favor, and against Plaintiff.

Respectfully Submitted,

/s/ Michael J. Atkus
MICHAEL J. ATKUS (ARDC #6285666)
One of the Attorneys for the Defendant,
EDWARD GRIZZLE

15

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2022, a copy of the foregoing **DEFENDANT GRIZZLE'S MEMORANDUM OF LAW IN SUPPORT OF THIS MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System. Notice of this filing will be sent to the following parties by operations of the Court's electronic filing system:

James John Hess    jhess@tresslerllp.com, ogarcia@tresslerllp.com

Joseph C. Sheahan    joseph.c.sheahan@gmail.com

Stacey Lynn Wilkins    chicagodocket@tresslerllp.com, swilkins@tresslerllp.com, nfranco@tresslerllp.com

Michael Jude Atkus    kstocco@khkklaw.com, matkus@khkklaw.com

Paul Bruno Johnson    jcorbett@khkklaw.com, pjohnson@khkklaw.com

Hall Adams    hall@adamslegal.net

Darcy L. Proctor    chicagodocket@tresslerllp.com, dproctor@tresslerllp.com

Matthew Scott Clark    kstocco@khkklaw.com, mclark@khkklaw.com

John M. O'Driscoll    jodriscoll@tresslerllp.com, chicagodocket@tresslerllp.com, ogarcia8888@tresslerllp.com

                                             /s/ Michael J. Atkus
                                             MICHAEL J. ATKUS (ARDC #6285666)

KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
Attorneys for Defendant EDWARD GRIZZLE
5600 North River Road, Suite 600
Rosemont, Illinois60018-5114
Telephone:    847/261-0700
Facsimile:    847/261-0714
E-Mail:    matkus@khkklaw.com