UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASSANDRA SOCHA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-05681 |
| | ) |
| CITY OF JOLIET, a municipal corporation, | ) |
| EDWARD GRIZZLE, JOHN DOES 1-20, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DEFENDANT CITY OF JOLIET**

Plaintiff, Cassandra Socha, by her attorney, Hall Adams, and pursuant to Rule 56, Fed. R. Civ. P., LR 56.1(b)(1), and this Court's 24 October 2022 Order (Doc 249), permitting and directing her to do so, states as follows for her Memorandum in Opposition to Motion for Summary Judgment of Defendant City of Joliet:

*Introduction*

Defendant City of Joliet ("City") is not immunized by the *Tort Immunity Act* against the intrusion upon seclusion claim alleged in Count XII of plaintiff's First Amended Complaint ("FAC"), which is based on City's employees' *intentional* viewing of private photos and videos ("private images") on plaintiff's iPhone.[1] Otherwise, disputed issues of fact

---

[1] Plaintiff does not oppose City's Motion for Summary Judgment as to Count XVII of her FAC, which is based only on the transmission and publication of the private images on her iPhone.

exist regarding whether that viewing was unauthorized. Accordingly, City's Motion of Summary Judgment (Doc. 251) should be denied.

## Standard of Adjudication

The standards for adjudicating City's motion are established by Rule 56 and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) and are well known to this Court. City gets this mostly, if not completely, right. (Doc 252, pp. 1096-1097) To City's recitation, plaintiff adds that, at the summary judgment phase, the Court should not weigh evidence or resolve credibility determinations. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986); *Thomas v. Martija*, 991 F.3d 763, 767 (7th Cir. 2021) All reasonable inferences from the record must be drawn in favor of the plaintiff. *Johnson v. Runyon et al.*, 47 F.3d 911 (7th Cir. 1995)

## *Tort Immunity Act* Does Not Immunize City Against Intrusion Upon Seclusion Claim Based on Viewing Private Images

The *Illinois Local Governmental and Government Employees Tort Immunity Act*, 745 ILCS 10/1-101 et seq. ("*Act*") was enacted in derogation of the common law and is therefore to be strictly construed against City. Unless a specific immunity provision of the *Act* applies, City is liable *in tort* to the same extent as a private party. *Monson v. City of Danville*, 2018 IL 122486, ¶ (15). None of the provisions of the *Act* asserted by City immunize it against plaintiff's intrusion upon seclusion claim.

- **Intrusion Upon Seclusion Is an Intentional Tort to Which §§ 2-109 and 2-202 of *Act* Do Not Apply**

§§ 2-109 and 2-202 of the *Act* do not immunize against claims for willful and wanton misconduct. Under the *Act*, "willful and wanton conduct" includes intentional misconduct. 745 ILCS 10/1-210.

As City correctly points out, intrusion upon seclusion is an intentional tort. (Doc. 252, p.1101) See *Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530, ¶ (23). As such, §§2-109 and 2-202 do not immunize City against the intrusion upon seclusion alleged in Count XII of plaintiff's FAC.

- **§ 2-107 Of *Act* Does Not Apply to Intrusion Upon Seclusion Claims**

§ 2-107 of the *Act* immunizes municipalities only against claims based on the "provision" or "transmission" of information. It does not immunize against claims based on improper accessing and viewing private information.

The "core" of a claim of intrusion upon seclusion is "the offensive prying into the private domain of another." *Lovegren v. Citizens Nat'l Bank of Princeton*, 126 Ill.2d 411, 417 (1989). The claim "does not depend on any publicity." *Id.* Instead, "it is the intrusion itself that creates liability, not any subsequent publication or disclosure." *In re Trans Union Corp. Privacy Litigation*, 326 F.Supp.2d 893, 901 (N.D. Ill. 2004), citing Restatement (Second) of Torts, § 652B.

The intrusion upon seclusion claim alleged in Count XII of plaintiff's FAC is based on City's employees' accessing and viewing not their publication or transmission of the private images on plaintiff's iPhone. City is not immunized against that claim by § 2-107 of the *Act*.

**Sufficient Evidence to Submit Count XII to Jury[2]**

City accurately lists the elements of a claim for intrusion upon seclusion. (Doc. 252, p.1097) City does not dispute that its employees' accessing and viewing the private images on

---

[2] References to plaintiff's Statement of Facts herein are to PSoF. References to defendant Grizzle's Statement of Facts (Doc 256) are to GSoF. References to defendant City's Statement of Facts (Doc 253) are to CSoF.

3

plaintiff's iPhone would sufficiently support plaintiff's intrusion upon seclusion claim if it was unauthorized and intentional. Nor could it.

Protectible privacy interests are implicated in an intrusive search of a person's cell phone. *Riley v. California*, 573 U.S. 373, 393-397 (2014). Invasion of private data/images stored on an iPhone would be sufficient to support this claim. *In re Trans Union Corp. Privacy Litigation*, 326 F.Supp.2d 893, 901 (N.D. Ill.), citing Comments (a) and (b) to Restatement (Second) of Torts, § 652B, which is the genesis of this tort in Illinois law. See *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶¶ (33) – (35).

Unauthorized prying into and viewing private pictures of a person's naked image and/or private information relating to a person's sexual life are actionable as intrusion upon seclusion. *Zboralski v. Monahan,* 446 F.Supp.2d 879, 884-885 (N.D. Ill.) (unauthorized viewing of plaintiff's naked image actionable), citing *Acosta v. Scott Labor LLC*, 377 F.Supp.2d 647, 649-650 (N.D. Ill.) ("examples of inherently 'private facts include' "a person's . . . sexual life, or a peculiarly private fact of an intimate[,] personal nature.'") See also *Busse v. Motorola, Inc.*, 351 Ill.App.3d 67, 72 (1st Dist. 2004) (Examples of protected private facts include "romantic interests, sex lives . . . "), cited with approval for this proposition in *Vega v. Chicago Park District*, 958 F.Supp.2d 943, 959 (N.D. Ill. 2013)

Because searching for and viewing the private images on plaintiff's iPhone constitute actionable intrusion upon seclusion if done intentionally and without authority, City disputes only that the evidence raises triable fact issues regarding whether its employees' viewing of the private images on plaintiff's iPhone was unauthorized and intentional. (Doc. 252, pp. 1098-1101) The evidence on these issues is disputed, which makes summary judgment improper.

- **Search Warrant Did Not Authorize City's Employees to View Private Images on Plaintiff's iPhone**

  - *Trans Union* Is Inapposite on the Issue of Authority

City inaptly relies on *Trans Union*, *supra*, for the proposition that the search warrant issued for plaintiff's iPhone permitted City employees to search for and view the private images on that iPhone. *Trans Union* did not involve a search warrant and thus did not address whether employees of a police department exceeded the permissible scope of a search warrant to invade an otherwise protectable privacy interest in a phone. *Trans Union* held only that a credit reporting agency had not engaged in intrusion upon seclusion by accessing its own lawfully obtained files containing data regarding the plaintiffs. *Trans Union*, 326 F.Supp.2d at 901-902.

  - Warrant Was Unconstitutionally Overbroad and Viewing Private Images Exceeded Scope of Warrant

*Unites States v. Winn*, 79 F.Supp.3d 904 (C.D. Ill. 2015) is highly instructive. In *Winn*, the court found a Fourth Amendment violation and suppressed evidence obtained from the defendant's cell phone via a Cellebrite extraction *both* because the warrant for the search was overbroad and thus invalid, *and* the search of the phone had "ignored the one limitation [the offense identified in the warrant] in the warrant and exceeded its scope." *Winn* at 918-922 and 926. *Winn* held that a warrant allowing for the search of *all* data and media on a suspect's phone violated the Fourth Amendment prohibition against general search warrants and requirement that search warrants describe the place (a phone) to be searched with particularity, and that a warrant application that was similarly overbroad also violated the Fourth Amendment. *Winn* at 918-922.

5

Based on *Winn*, this court should reject City's argument that broad, boilerplate language regarding the data and media in plaintiff's iPhone that could be searched constituted valid authorization for doing so. *Winn* rejected just such warrant language as "facially overbroad" and a Fourth Amendment violation because "the police did not have probable cause to believe that *everything* on the phone was evidence of the crime" at issue. *Winn* at 919 – 922 (*italics* original at p. 919) *Winn* invalidated the warrant as a Fourth Amendment violation and suppressed evidence because:

> In sum, the complaint establishes that the police had probable cause to look for and seize a very small and specific subset of data on Winn's cell phone. But the warrant did not limit the scope of the seizure to only that data or describe that data with as much particularity as the circumstances allowed. Instead, the warrant contained an unabridged template that authorized the police to seize the entirety of the phone and rummage through every conceivable bit of data, regardless of whether it bore any relevance whatsoever to the criminal activity at issue. Simply put, the warrant told the police to take everything, and they did. As such, the warrant was overbroad in every respect and violated the Fourth Amendment.

*Winn* at 922. *Winn* is cited with approval in *United States v. Oglesby*, 2019 U.S. Dist. LEXIS 72238 (S.D. Tex.), ¶¶ (20) – (24).

City correctly notes that the search warrant for plaintiff's iPhone "allowed for the search for material, namely 'evidence of the offense of harassment via electronic communications, intimidation.'" (Doc. 252, p. 1099, quoting from the warrant itself) As such, language in the warrant purporting to authorize a search of *all* the data and media in plaintiff's iPhone was patently overbroad and invalid, just as if plaintiff's iPhone was seized and searched without a warrant in violation of her Fourth Amendment right.

There was never any investigative need for any JPD employee to search for and view the private images on plaintiff's iPhone. Searching for and viewing those private images was

beyond the scope of the search permitted by the warrant, which was limited to searching the contents of the iPhone "for evidence of the offense . . ." The warrant did not authorize any JPD employee to search plaintiff's iPhone for anything except "evidence of the offense . . ."

When Grizzle obtained the warrant and seized plaintiff's iPhone, Lamken and Grizzle knew that there was no need to search for or view any photos or videos. By that time, they had already seen the single text message about which Gatlin had complained. (CSoF, ¶ 11; GSoF, ¶¶ 14-16). Their only purpose for obtaining the warrant and seizing plaintiff's iPhone was to confirm that the text message had originated from plaintiff's iPhone. (PSoF, ¶ 6). This evidence of transmission of the text message by plaintiff was the only "evidence of the offense" for which the warrant was needed. (PSoF, ¶¶ 6-7)

Grizzle performed his search solely for this purpose. (PSoF, ¶ 7; GSoF, ¶¶ 45-47). In doing so, he was able to limit his search to just text messages because the data from plaintiff's iPhone had already been parsed such that text messages were segregated from photos and video images. *Id*. Grizzle had no need to look for photos or videos, which were identified in the extracted data by distinct icons on which he did not need to click to search, which he claims not to have done. *Id*. He did not expect to find "evidence of the offense . . ." among the photos and/or videos extracted from plaintiff's iPhone. *Id*. Instead, he expected to and did find the single text message for which he was looking after searching exclusively among transmitted text messages. That was the extent of the search for "evidence of the offense . . ." permitted by the warrant. (Doc. 253-3, p. 1251)

Viewing the private images on plaintiff's iPhone was more clearly violative of the Fourteenth Amendment than the violation in *Winn*, since the only thing for which there was

7

any need to search plaintiff's iPhone was to confirm that a single text message had been transmitted from it. This did not require searching for or viewing any other data or media on plaintiff's iPhone, including the private images.

This Court should reject City's argument that the warrant constituted valid authorization for any JPD employee to search for or view the private images on plaintiff's iPhone, since those private images had no "relevance whatsoever to the criminal activity" under investigation. While it may have been technologically impossible to extract only the text messages on plaintiff's iPhone, Grizzle's testimony establishes that it was possible to limit the search of those contents only for the text messages. No City employ had any reason to view and the warrant did not validly authorize the viewing of those private images.

- **Whether McKinnon's Accessing and Viewing Private Images Was Intentional Should be Determined by Jury**

Questions of intent are rarely suitable for summary judgment. *White Motor Co. v. United States*, 372 U.S. 253, 259 (1963); *McCottrell v. White*, 933 F.3d 651, 671 (7th Cir. 2019) Circumstantial evidence will suffice to raise a triable issue of fact regarding whether a defendant's unauthorized accessing electronic evidence was intentional. *McCann v. Iroquois Mem. Hosp.*, 622 F.3d 745, 752-753 (7th Cir. 2010).

A jury could reasonably conclude that McKinney intentionally accessed, viewed, and then facilitated McKeon's viewing of the private images extracted from plaintiff's iPhone, and that McKinney testified untruthfully about these facts. Neither McKinney nor McKeon were assigned to nor had any official role in JPD's investigation of plaintiff. (PSoF, ¶ 21). Thus, neither had any law enforcement purpose for accessing or viewing *any* of the data extracted

from plaintiff's iPhone, including the private images, and it was improper for them to do so. (PSoF, ¶¶ 18 and 21)

McKinney's explanation that he was "self-training" on the Cellebrite computer when he accidentally opened a nude photo of plaintiff strains credulity. The extraction of the data on plaintiff's iPhone was purposely saved to the Cellebrite computer by Botzum under a non-descript name where "a normal person or normal detective would not go" and where no one [without that information] should be able to find [it]." (PSoF, ¶ 10). Defendants go so far as to characterize the data extracted from plaintiff's iPhone as having been "encrypted," suggesting that decryption was necessary to view it. (GSoF, ¶ 39). Botzum shared this locator/identifying information only with Grizzle and, perhaps, German. (PSoF, ¶ 10). A reasonable jury could conclude that this locator/identifying information must necessarily have been shared with or become known to McKinney in order for him to access the data extracted from plaintiff's iPhone on the Cellebrite computer.

Botzum and German, JPD's Cellebrite "duty experts," confirmed that several intentional steps, including entering this locator/identifying information, were necessary to access the data. (PSoF, ¶¶ 10, 19). They described a process that a reasonable jury could conclude required purpose and intent. A reasonable jury could reject McKinney's accidental-access testimony as a self-exculpating fib.

McKinney's testimony that he did not know that the nude torso image he showed to McKeon was that of plaintiff until he subsequently opened another image depicting plaintiff's face is belied by McKeon's testimony. McKinney identified the nude torso image as that of plaintiff *before* displaying any other image that showed plaintiff's face. (PSoF, ¶ 20). That

9

McKinney kept trawling after finding a nude image of anyone in a case to which he knew he was not assigned and in which he had no official, law enforcement role casts further doubt on his testimony that his discovery of a nude image of plaintiff was an accidental discovery by a novice Cellebrite trainee.

Even McKinney acknowledged that he intentionally elected to trawl through data relating to an open investigation in which he was not involved instead of his own Cellbrite training file, and then also intentionally "clicked through" (per *Winn*, "rummaged through") media tabs/icons, expecting that this would cause photos to be displayed, instead of document tab/icons, which would have caused documents to be displayed. (PSoF, ¶ 22). Of course, this is exactly what happened. A reasonable jury could conclude that McKinney accessed and viewed the private images on plaintiff's iPhone because that is what he intended to do.

Even if a jury accepts McKinney's strained explanation that he accessed the private images on plaintiff's iPhone while self-training on the Cellbrite computer, the Search Warrant did not authorize this. Per *Winn*, the Search Warrant only authorized that plaintiff's iPhone be searched for evidence of a specific offense. McKinney acknowledges that the intentional steps he took to access the private images he found had nothing to do with searching for evidence of that offense. His conduct was thus both intentional and unauthorized.

On this record, a reasonable jury could conclude that McKinney knew where and how to find, and intentionally looked for, found, accessed and viewed private images from plaintiff's iPhone that he knew had been stored on the Cellebrite computer where he could find them, and then showed at least one of those private images to another JPD officer, McKeon. A reasonable jury, concluding that McKinney was being untruthful, might similarly

reject his testimony that his trawling led him to just one of the private images and conclude instead that the one private image he admits to viewing was just the one he got caught viewing. These are all determinations a jury should make.

- **Evidence Supports Reasonable Inference That Other JPD Officers Intentional Viewed the Private Images Without Authority**

Plaintiff acknowledges that deposition testimony of JPD officers has been something less than a litany of "true confessions" regarding their mishandling and viewing of the private images extracted from plaintiff's iPhone. Still, reasonable circumstantial inferences can be reached that JPD employees in addition to McKinney and McKeon, who had ample opportunity to view the private images extracted from plaintiff's iPhone, did so intentionally and without authority.

At least 5 copies of the extraction were saved to 5 separate USB drives, none of which were ever entered into JPD evidence and tracked via JPD's BEAST software as they should have been. (CSoF, ¶¶ 26, 36, 38, 41, 44; GSoF, ¶¶ 36-45, 48-49; PSoF, ¶¶ 24, 31, 33). Of these, we are told that 2-3 may have ended up in Roechner's office. (CITE) The one provided to Lt. Reid has never been accounted for. There is no "chain-of-custody" documentation of any of this reproduction and handling of this evidence. More, the entire extraction from plaintiff's iPhone ended up loaded onto the desktop computers of Grizzle, German, and Roechner. (CSoF, ¶¶ 36, 44; GSoF, ¶ 43; PSoF, ¶ 26)

The private images were stored on the Cellebrite computer from 18 May – 8 June. (CSoF, ¶¶ 26, 40). Data extracted by and stored on the Cellbrite computer was generally accessible to anyone in the Investigations Division area via the common and not-so-discrete password, "Joliet." (PSoF, ¶¶ 12-17). Numerous JPD officers were trained to access and view

11

data once extracted by and stored on the Cellebrite computer, even if only Botzum and German were trained to do the actual extractions. (PSoF, ¶ 14)

JPD's investigation of plaintiff and the fact that her iPhone had been seized and was being searched were matters of common knowledge/interest and ubiquitous rumors throughout JPD. (CSoF, ¶¶ 55-56). There is evidence that one JPD officer, Gavin, bragged to others about having seen the private images and graphically described the manner in which plaintiff performed oral sex on Crowley ("… like a porn star."). (PSoF, ¶

Many of the JPD officers who were deposed acknowledged hearing general "rumors" about the private images on plaintiff's iPhone, but also the specific "… porn star" comment. None, other than McKeon, own up to having witnessed anyone else viewing the private images. Nor do any admit to the original "authorship" of the "… porn star" comment. None, other than Jackson and Matlock, were willing to identify from whom they heard the general rumors about the private images or the "… porn star" comment. A reasonable jury could find the prevalence of JPD's fraternal amnesia beyond improbable.

Roechner and German loaded the data from plaintiff's iPhone onto his own desktop computer for no evident law enforcement purpose. (PSoF, ¶ 26; CSoF, ¶ 44). Finally, there is evidence that Roechner, while serving as Dep. Chief of Investigations, directed JPD's IT officer, Bergner, to dispose of one of Roechner's JPD issued cell phones when JPD's Chief, then Benton, had ordered an investigation/audit of all of the JPD computer devices in the Investigations Department to investigate plaintiff's concerns that the data extracted from her iPhone had been/was being trafficked and viewed by her fellow (and they were all male)

officers. (PSoF, ¶ 31). Roechner, once Chief of Police, terminated that investigation before it was completed. (PSoF, ¶ 32)

Again, plaintiff appreciates the circumstantial nature of this body of evidence. Still, it is enough to enable a reasonable jury to infer that other JPD officers intentionally viewed the private images without the authority and have attempted to cover up their "frat house" voyeurism. JPD's replication and lack of institutional (or documented) control over the handling of this sensitive evidence positively undermines definitive accountability for it and also supports this reasonable inference. In particular, Roechner's direction that Bergner dispose of his phone during JPD's audit/investigation of Investigation Department computer devices, if believed, supports such a reasonable inference.

## CONCLUSION

At this juncture, it is not this Court's role to weigh or assess the credibility of this evidence. This is a jury's function. There is enough here to submit the matter to a jury. Accordingly, City's Motion for Summary Judgment on Count XII of plaintiff's FAC should be denied.

Respectfully Submitted,

/s/ Hall Adams

Law Offices of Hall Adams LLC
Advocates Row
33 N. Dearborn Street, Suite 2350
Chicago, Illinois 60602
P: (312) 445-4900
F: (312) 445-4901
ARDC No.: 6194886

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2022, a copy of the foregoing **PLAINTIFF's MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANT CITY OF JOLIET** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System. Notice of this filing will be sent to the following parties by operations of the Court's electronic filing system:

James John Hess     jhess@tresslerllp.com, ogarcia@tresslerllp.com

Joseph C. Sheahan     joseph.c.sheahan@gmail.com

Stacey Lynn Wilkins     chicagodocket@tresslerllp.com, swilkins@tresslerllp.com, nfranco@tresslerllp.com

Michael Jude Atkus     kstocco@khkklaw.com, matkus@khkklaw.com

Paul Bruno Johnson     jcorbett@khkklaw.com, pjohnson@khkklaw.com

Hall Adams     hall@adamslegal.net

Darcy L. Proctor     chicagodocket@tresslerllp.com, dproctor@tresslerllp.com

Matthew Scott Clark     kstocco@khkklaw.com, mclark@khkklaw.com

John M. O'Driscoll     jodriscoll@tresslerllp.com, chicagodocket@tresslerllp.com, ogarcia8888@tresslerllp.com

/s/   Hall Adams