UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASSANDRA SOCHA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-05681 |
| | ) |
| CITY OF JOLIET, a municipal corporation, | ) |
| EDWARD GRIZZLE, JOHN DOES 1-20, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT GRIZZLE'S LOCAL RULE 56.1(a)(2)
STATEMENT OF MATERIAL FACTS**

Plaintiff, Cassandra Socha, by her attorney, Hall Adams, and pursuant to Federal Rule of Civil Procedure and Local Rule 56.1(e), states as follows for her Response to Defendant Grizzle's Local Rule 56.1(a)(2) Statement of Material Facts (Doc. 256):

**LIST OF EXHIBITS TO THIS RESPONSE**[1]

1. The City of Joliet ("Joliet") is an Illinois municipal corporation. See Def. Grizzle's Answer to FAC, ¶ 2, attached as Ex. 1.

    **RESPONSE: Admitted.**

2. Edward Grizzle ("Sgt. Grizzle") at all relevant times was a Detective Sergeant with the Joliet Police Department ("JPD"). See Ex. 1, ¶ 10.

    **RESPONSE: Admitted.**

---

[1] Exhibits to defendant Grizzle's Statement of Facts are referenced by their ECF docket number. Exhibits to this Response are referenced by their alphabetic designations.

1

3. Cassandra Socha ("Plaintiff") has been a patrol officer with the JPD since April 14, 2014. See Ex. 1, ¶ 7; Pltf. Dep. p. 17, attached at Ex. 2.

**RESPONSE: Admitted.**

4. Nicholas Crowley ("Crowley") has been a patrol officer with the JPD since February 2013. See Ex. 1, ¶ 8; Crowley Dep. pp. 11-12, attached at Ex. 3.

**RESPONSE: Admitted.**

5. Plaintiff and Crowley began dating in late 2014. Ex, 2, p. 10

**RESPONSE: Admitted.**

6. Plaintiff and Crowley began living together in 2015 or 2016. Ex. 2, p. 27.

**RESPONSE: Admitted.**

7. On July 16, 2017, Plaintiff and Crowley got into an argument, which resulted in officers being called to their home, and Crowley being charged with reckless discharge of a firearm and domestic battery. Ex. 2, pp. 39, 44.

**RESPONSE: Admitted.**

8. Sgt. Grizzle was assigned by the JPD to investigate the matters alleged in the criminal case against Crowley. Ex. 1, ¶ 13.

**RESPONSE: Admitted.**

9. Lorinda Lamken, a Special Prosecutor with the Office of the State's Attorney's Appellate Prosecutor ("Prosecutor Lamken"), was assigned to the case. See Lamken Affidavit, ¶¶ 1-2, attached at Ex. 4.

**RESPONSE: Admitted.**

10. A criminal trial against Crowley in the Circuit Court of Will County began on May 13, 2018. Ex. 1, ¶ 12; Ex. 2, p. 61.

**RESPONSE: Admitted.**

11. On May 14, 2018, Plaintiff testified in the criminal case against Crowley pursuant to the prosecution's subpoena. Ex. 1, ¶¶ 14, 15.

**RESPONSE: Admitted, except the date of plaintiff's testimony in the criminal trial against Crowley, which plaintiff denies based on transcripts of the criminal trial that reflect that she testified on 16 not 14 May 2018, a factual discrepancy that is immaterial.**

12. Plaintiff's close friend Maria Gatlin ("Gatlin") also testified in the criminal trial against Crowley. Ex. 2, pp. 39, 62.

**RESPONSE: Admitted, except to the "close friend" characterization which plaintiff denies, by which dispute is immaterial.**

13. On May 16, 2018, after the close of testimony in Crowley's trial, Plaintiff sent a text message to Gatlin that stated:

> "I think it's safe to say at this point I have seen your true colors and who you are as a human being. I use that term loosely. I also use the term mother loosely when I talk about you. At one point maybe I did speak of you that way, but my God now I know why your own kids don't now besides Josh, but that's probably only we see you but literally bailed that criminal out of jail and used your police influence to help him out up to and committing a burglary to help him. I am sure that he can testify to that. Wow. If you are charged, that would be a felony. I forgot about the insurance fraud. What happened to Lorenzo's Intrepid again? Stolen, right? Or did Dave Kline get rid of it for you? How much did insurance pay out again? Poor Tyler. My goodness, that poor kid. He would have had a better life in a fucking foster home than being with you dysfunctional animals. All he was a paycheck and mixed kid you and Bruce could never have. It clearly has shown throughout that poor kid was a burden to you both, but quick to use him when you didn't get

3

> your way during scheduling at the station. You're a fucking scammer and a joke. Didn't you ever think all your female problems was a sign telling you you were unfit to be a mother? No doubt I believe all the shit you said your older son would say about you. Your own husband and his family hated your child, but you chose to stand by his side. Kind of gross if you ask me. I mean, I've never given birth to a child, but I know I wouldn't choose a dude over my spawn. Looking back concurrently, you're nothing but miserable, miserable in every aspect of your life down to your neighbors who fucking hate you. Gee, it was never you, always them. Again, I wondered why no one from Summit gave a fuck about you when you got fired, but I did know."

Ex. 1, ¶18; Ex. 2, pp. 39, 63-66.

**RESPONSE: Admitted.**

14. On May 16, 2018, Gatlin contacted Prosecutor Lamken and informed her that she had received a text message from Cassandra, Plaintiff, and was very upset by it. Ex. 4, ¶ 4.

**RESPONSE: Admitted.**

15. Ms. Gatlin further informed Prosecutor Lamken that the text message was sent from a telephone number familiar and well-known to her as being associated with Plaintiff. as they had been friends for many years. Ex. 4, ¶ 4.

**RESPONSE: Admitted.**

16. Gatlin shared with Prosecutor Lamken the screen shot of the text message from Plaintiff, which accused Gatlin of committing crimes when employed as a police officer, ridiculed Gatlin as a mother, and made reference to "TESTIFY" and "FELONY" in the body of the text message. Ex. 4, ¶ 5.

**RESPONSE: Admitted, except as to defendant Grizzle's characterizations of the text message inconsistent with its contents, which characterizations plaintiff denies.**

4

17. Prosecutor Lamken concluded that in her professional opinion, the text message met the requisite elements of the criminal offense of witness harassment set forth in 720 ILCS 5/32-4a (a). Ex. 4, ¶ 5.

**RESPONSE: Admitted.**

18. Prosecutor Lamken contacted JPD Lt. Marc Reid, of the Internal Affairs Division, and made him aware of the matter, as she understood that he was handling a pending internal affairs investigation involving Crowley and Plaintiff arising from the events at issue in the *People v. Crowley* criminal case. Ex. 4, ¶ 6, Ex. 5, p. 57.

**RESPONSE: Admitted.**

19. On May 16, 2018, at approximately 9:00 P.M., Prosecutor Lamken called Sgt. Grizzle on the telephone and told him about the text message that Gatlin received from Plaintiff. See Grizzle Dep. pp. 27-31, attached at Ex. 5.

**RESPONSE: Admitted.**

20. Prosecutor Lamken informed Sgt. Grizzle that a search warrant was needed for Plaintiff's cell phone to ensure the message received by Gatlin originated from Plaintiff's cell phone. Ex. 4, ¶ 7.

**RESPONSE: Admitted.**

21. On May 17, 2018, Sgt. Grizzle met with Chief Benton and Deputy Chief of Investigations Al Roechner ("Deputy Chief Roechner") who directed him obtain a search warrant for Plaintiff's phone if that was what Prosecutor Lamken wanted him to do. Ex. 5. p. 89.

**RESPONSE: Admitted.**

22. On May 17, 2018, Sgt. Grizzle met with Gatlin at the JPD at 10:30 A.M. Ex. 5, pp. 33-34.

**RESPONSE: Admitted.**

23. During Sgt. Grizzle's meeting with Gatlin, Gatlin showed him a screenshot of a text message and told him that she had received it from Plaintiff. Ex. 5, p. 35.

**RESPONSE: Admitted.**

24. Sgt. Grizzle conferred with Prosecutor Lamken and they discussed the drafting of a search warrant and what it should include. Ex, 4, p. 46.

**RESPONSE: Admitted.**

25. Sgt. Grizzle prepared, signed, and swore to a complaint for a search warrant which included the following averments:

> "On May 16th, 2018 at 2052 hours I Detective Sergeant Grizzle was notified by Appellate Prosecutor Lorinda Lamkin that the witness in Joliet Police Department case 17-0010915 Maria Gatlin F/W DOB; 1/4/67 was contacted by the victim Cassandra Socha F/W DOB: l/13/85 via text message from phone number 708-717-3652 on May 16th Maria Gatlin has been friends with Cassandra Socha for over 15 years and knows this to be her phone number. Maria Gatlin and Cassandra Socha has conversed numerous times over the years with Cassandra using the cell phone number 708-717-3652. A search through law enforcement tools does show this number 708-717-3652 does belong to Cassandra Socha. On May 16th 2018 Maria Gatlin did testify in Will Court House room 400 in the case People vs. Crowley. Cassandra Socha is the victim in this case. Cassandra Socha's text message accuses Maria Gatlin of committing crimes when employed as a Police officer, ridiculing Maria as a mother and not being able to have children along with having a mixed child."

Ex. 1, ¶ 21; complaint for search warrant at Ex. 6.

**RESPONSE: Admitted.**

6

26. Sgt. Grizzle sent the Complaint for search warrant to Prosecutor Lamken for approval prior to submitting it to the Court. Ex. 5, p. 46.

**RESPONSE: Admitted.**

27. Prosecutor Lamken reviewed and approved the Complaint for search warrant. Ex. 4, ¶ 9.

**RESPONSE: Admitted.**

28. On May 18, 2018, Sgt. Grizzle presented the complaint for a search warrant to Judge Sarah Jones ("Judge Jones") of the Circuit Court of Will County who on its basis issued a search warrant that authorized the seizure and search of Plaintiff's iPhone. Ex. 1, ¶¶ 21-22; Search Warrant, attached at Ex. 7; Ex. 2, p. 77.

**RESPONSE: Admitted.**

29. The search warrant issued by Judge Jones states that Plaintiff's iPhone "constitute[s] evidence of the offense of Harassment via electronic communications, Intimidation," commands that it "be seized, searched, and forensically analyzed [for]:

> Any and all data regarding electronic communications, including dates and times of those communications, digital images or videos, e-mail, voice mail, buddy lists, chat logs, instant messaging or text accounts, forensic data as well as data pertaining to ownership and registration of the device, any and all access logs identifying who utilized said digital storage devices, and any "hidden," erased, compressed, password-protected, or encrypted files,"

and specifically included the authority to "analyze and search any media seized for relevant evidence as outlined in this search warrant." Ex. 7.

**RESPONSE: Admitted, except to the completeness of the quoted language from the warrant, which plaintiff denied because it quotes the warrant incompletely.**

7

30. On May 18, 2018, after Plaintiff's roll call, Lt. Brown escorted her into a conference room at the JPD station where Sgt. Grizzle was seated. Ex. 2, pp. 80-82.

**RESPONSE: Admitted.**

31. Sgt. Grizzle then served Plaintiff with the search warrant and told her that he needed her cell phone. Ex. 2, p. 82.

**RESPONSE: Admitted.**

32. Prior to handing over her cell phone, Plaintiff told Lt. Brown that she did not trust Sgt. Grizzle and that she "knew what they were going to do with [her] cell phone when they took it upstairs" and said that there was stuff on her phone that she did not want anybody to see. Ex. 2, pp. 83, 88.

**RESPONSE: Admitted.**

33. After Sgt. Grizzle left the conference room, Plaintiff told Lt. Brown that her phone contained progress pictures from when she was working out. Ex. 2, p. 90.

**RESPONSE: Admitted.**

34. At the time Sgt. Grizzle seized Plaintiff's iPhone, it contained naked photographs of Plaintiff and three to four videos of Plaintiff and Crowley engaged in sex acts, including sexual intercourse and oral sex. Ex. 2, p. 74; Ex. 3, pp. 34-35.

**RESPONSE: Admitted.**

35. After Grizzle seized Plaintiff's I-Phone, he asked Sgt. Botzum to perform an extraction of the data it contained, as he understood that Sgt. Botzum had the training and experience to perform such data extractions from electronic devices. See Botzum Dep. pp. 53-54, Grizzle Affidavit, ¶ 2, attached at Ex. 8.

**RESPONSE: Admitted.**

36. Sgt. Botzum performed an extraction on Plaintiff's cell phone using Cellebrite forensic software which allows a user to access data and retrieve deleted data within a cell phone, and extracts the data and puts it in a readable format. Ex. 9, pp. 13-14, 53-54.

**RESPONSE: Admitted.**

37. When Sgt. Botzum performed the extraction, he looked for the text message for which Sgt. Grizzle was looking, found remnants of it, took a screen shot of it, saved it to a disk and gave it to Sgt. Grizzle. Ex. 9, p. 64.

**RESPONSE: Admitted.**

38. From the remnants Sgt. Botzum found, he could not determine if the text message was sent, received, where it came from, or the date and time of it. Ex. 9, p. 65.

**RESPONSE: Denied. Botzum's testimony on this point is inconsistent with the screen shots themselves.**

39. After the Cellebrite extraction was complete, Sgt. Botzum saved the encoded or encrypted extraction file on the computer and showed Sgt. Grizzle where it was saved. Ex. 9, pp. 52-54; 119-120.

**RESPONSE: Admitted, except as to the characterizations of the extraction as having been "encoded" or "encrypted." The extraction was saved on the desktop computer on which the Cellebrite software ran under a name that neither Botzum nor Grizzle were able to recall but which was intended to limit access to the stored data labelling did not prevent other members of JPD from accessing nude images of Socha stored on that computer. (Plaintiff SoF, ¶ 10)**

40. Because Cellebrite did not find all the data, Sgt. Botzum decided to put the phone on a laptop equipped with Lantern software, another forensic software program, and

9

started another extraction with the hope that it would find the date, time, sender, and recipient of the text message. Ex. 9, pp. 65-66; 86.

      **RESPONSE: Admitted.**

41. The Lantern was taking a long time to parse the extracted data and create a report, so Sgt. Botzum called Detective Jeffrey German ("Det. German") and asked him to keep an eye on the computer the next day. Ex. 9, p. 66.

      **RESPONSE: Admitted.**

42. Det. German generated a Lantern report on the full set of phone data from Plaintiff's phone and copied it onto a USB thumb drive along with a copy of the full data from the Cellebrite extraction and gave the drive to Sgt. Grizzle to review the data and make whatever copies were needed for evidence. German Dep., pp. 60-62, attached at Ex. 10.

      **RESPONSE: Admitted.**

43. Sgt. Grizzle loaded the data from the USB drive onto his computer so he go through the data and search for evidence of the alleged crime, and gave the drive to Deputy Chief Roechner at Deputy Chief Roechner's direction. Ex. 5, pp. 42, 66; Roechner Dep. p. 44, attached at Ex. 11.

      **RESPONSE: Admitted.**

44. Sgt. Grizzle's search of the data extracted from Plaintiff's cell phone took about an hour. Ex. 5, p. 70.

      **RESPONSE: Admitted.**

45. Sgt Grizzle searched the extracted data by scrolling through almost 9,000 pages of text messages to find ones associated with Gatlin's number. Ex. 5, pp. 67-68.

**RESPONSE: Admitted.**

46. Once Sgt. Grizzle located the block of text messages associated with Gatlin's phone number, he located the text message previously shown to him by Gatlin, which appeared to have been the last message sent to Gatlin from Plaintiff's cell phone. Ex. 5, p. 69.

**RESPONSE: Admitted.**

47. Sgt. Grizzle's search of the extracted data did not include clicking on any icons that showed photograph or video files. Ex. 5, p. 67.

**RESPONSE: Plaintiff admits that Grizzle so testified but believes that a jury could reasonably infer he did so falsely based on the amount of time he spent searching the extraction from her phone looking for a single text message the contents of which he already had.**

48. Internal Affairs Division Lt. Marc Reid came to Sgt. Grizzle and told him there was going to be an internal affairs investigation and that he needed a copy of the information. Ex. 5, p. 57.

**RESPONSE: Admitted, except the implication that any new JPD internal affairs investigation of plaintiff (i.e., unrelated to any which had been initiated in relation to the Crowley investigation/prosecution) was ever initiated or conducted, which implication plaintiff denies. (PSF, ¶ 35)**

49. Sgt. Grizzle asked Det. German for a copy of the phone extraction and gave it to Lt. Reid per his order, after confirming with Deputy Chief Roechner that it was what Deputy Chief Roechner wanted done. Ex. 5, pp. 57-58.

**RESPONSE: Admitted.**

50. On or about July 2, 2018 Plaintiff received an anonymous letter in her mailbox at the JPD that read:

> Cassandra,

11

> I want to let you know after a search warrant was executed on your cell phone what is being talked about and has been SHARED by the investigator, internal affairs, with several members throughout the Police department including the staff. Cassandra only you know what is or was on your cell phone but you and Nick's sex life and all the pictures and videos of you both having sex has been viewed by multiple individuals throughout the department. Pictures of you giving Nick head, deep throating Nick's Penis, Spitting on his Penis while giving him head, fucking him, naked pictures of you and so much more all have been viewed by several members, supervisors, internal affairs throughout the department. Comments are said that you fuck like a porn star and the way you give Nick head and fuck, Nick or no man should ever leave you alone. The search warrant should have never revealed any of this information it should have only been for text messages and phone calls. This information is coming to you because you need to know what is going on with your private information and how it's being passed around and shared throughout the department, what you choose to do is up to you and Nick but you both need to no. VERY UNPROFESSIONAL INVESTIGATION.

Ex. 2. pp. 109, 133; Ex. Dep. Exh p. 14, attached at Ex. 12.

       **RESPONSE: Admitted.**

                                        Respectfully Submitted,

                                        /s/ Hall Adams

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 19, 2022, a copy of the foregoing PLAINTIFF's RESPONSE TO **DEFENDANT GRIZZLE'S LOCAL RULE 56.1(a)(2) STATEMENT OF MATERIAL FACTS** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System. Notice of this filing will be sent to the following parties by operations of the Court's electronic filing system:

James John Hess     jhess@tresslerllp.com, ogarcia@tresslerllp.com

Joseph C. Sheahan     joseph.c.sheahan@gmail.com

Stacey Lynn Wilkins     chicagodocket@tresslerllp.com, swilkins@tresslerllp.com, nfranco@tresslerllp.com

Michael Jude Atkus     kstocco@khkklaw.com, matkus@khkklaw.com

Paul Bruno Johnson     jcorbett@khkklaw.com, pjohnson@khkklaw.com

Hall Adams     hall@adamslegal.net

Darcy L. Proctor     chicagodocket@tresslerllp.com, dproctor@tresslerllp.com

Matthew Scott Clark     kstocco@khkklaw.com, mclark@khkklaw.com

John M. O'Driscoll     jodriscoll@tresslerllp.com, chicagodocket@tresslerllp.com, ogarcia8888@tresslerllp.com

                                              /s/   Hall Adams