UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASSANDRA SOCHA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-05681 |
| | ) |
| CITY OF JOLIET, a municipal corporation, | ) |
| EDWARD GRIZZLE, JOHN DOES 1-20, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT GRIZZLE'S LOCAL RULE 56(c)(2) RESPONSE TO
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

Defendant, EDWARD GRIZZLE, by and through one of his attorneys, MICHAEL J ATKUS of KNIGHT, HOPPE, KURNIK & KNIGHT, LTD., and, pursuant to L.R. 56.1(c)(2), responds to Plaintiff's Statement of Additional Material Facts as follows:

1. Plaintiff has been employed continuously as a patrol officer by the Joliet Police Department ("JPD") since 14 April 2014. (Doc 253-1, 17:6-10) She still serves on the JPD. (Doc 253-1, p. 1131, 22:9-14).

**RESPONSE:** Undisputed.

2. At the time Grizzle obtained a warrant to seize and search, then seized and searched Plaintiff's iPhone, he was an experienced detective. (Doc 253-2, pp. 1229, 86:23-87:16)

**RESPONSE:** Undisputed.

3. In the bench trial of State of Illinois v. Nicholas Crowley, 17 CF 1422, Circuit Court of 12th Judicial Circuit, Will County, Illinois ("Crowley trial") the evidence closed, counsel gave closing arguments, and the court took the matter under advisement on 16 May 2018. (Ex. A, pp. 48-49)

**RESPONSE:** Undisputed.

1

4. Plaintiff transmitted the single text message to Gatlin that is referenced in defendants' Statements of Fact after the close of evidence and arguments of counsel in the Crowley criminal trial proceedings had concluded and the court taken the matter under advisement on 16 May 2016. (Doc 253-1, p. 1141, 63:7-14)

**RESPONSE:** Undisputed.

5. Grizzle was and is of the opinion that plaintiff did not testify truthfully during the Crowley trial, in which Grizzle was JPD's assigned investigator, an opinion he has expressed to others. (Ex. B, 13:6 – 15:1; Ex. C, 86:4 – 87:8)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Plaintiff ostensibly asserts this fact to establish that Defendant Grizzle acted with ill-motive. However, whether an officer's conduct violates the Fourth Amendment is judged based upon an objective standard, and "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."** *Whren v. United States*, **517 U.S. 806, 813, (1996);** *see also Sutterfield v. City of Milwaukee*, **751 F.3d 542, 558 (7th Cir. 2014) ("subjective motive…is irrelevant, what matters is whether the facts, viewed objectively, justified the action taken by the police." Defendant Grizzle does not dispute for purposes of this motion that he expressed the opinion to Lieutenant Batis and Detective Jackson that Plaintiff did not testify truthfully during the Crowley trial.**

6. The sole purpose for searching plaintiff's iPhone was to verify that the text message, of which defendants were already in possession (from Gatlin) was sent to Gatlin by plaintiff from plaintiff's phone and not from someone else. (Doc 253-14, p. 1571, ¶ 10-11; Doc 253-2, p. 1226, pp. 49:14-50:2, p. 1221, 54:19-55:18)

**RESPONSE:** Undisputed.

2

7. It was possible to search Socha's iPhone for this purpose by searching only for text message transmissions from that phone without also searching for photographic or video files, which required clicking on icons that identified them as such. (Doc 253-6, pp.1326-1327, 66:23 – 67:8, 68:10 – 69:17) This is, in fact, exactly what Grizzle claims to have done. (Grizzle's SoF, Doc 256, p. 1602, ¶¶ 45-47)

**RESPONSE:** **Defendant Grizzle objects to paragraph 7 on the basis that it mischaracterizes the undisputed record. It is undisputed that there was no ability for only part of the data to be downloaded (i.e. only downloading text messages) from Plaintiff's iPhone. See Dkt. 258-3, ¶ 27 (Plaintiff concedes fact as undisputed). Defendant Grizzle does not dispute that once the contents of the iPhone were downloaded, the physical analyzer software could parse the data into categories, including text messages, photographs, and videos. Dkt. 258-3, ¶ 226-27. Defendant Grizzle does not dispute that a search of the parsed data could be limited to text messages only, that that is the type of search that he conducted.**

8. In the Complaint for Search Warrant that Grizzle prepared and submitted to Hon. Sarah Jones, Cir. Court of Will County, Illinois, Grizzle did not inform Judge Jones that the search could be so limited. Instead, he drafted that Complaint For Search Warrant and the Search Warrant itself to provide for an unfettered search of plaintiff's iPhone, including "all digital images and videos" and "any media" on the iPhone, even though he knew that search of such images or any media other than the single text message for which he was looking was unnecessary. (Doc 253-3, pp. 1250-1259)

**RESPONSE:** **Defendant Grizzle objects to this statement on the bases that it remains argumentative and largely unsupported by reference to the record. *See Haworth v. Round Lake Area Sch., Cmty. Unit Sch. Dist. 116*, 2019 WL 3080928, at \*1 (N.D. Ill. July 15, 2019) (Alonso, J.) ("the Court will disregard those portions of plaintiff's statement that are … argumentative.); *see also Brandes v. Mizuno*, 2020 WL 2542158, at \*1 (N.D. Ill. May 19, 2020) (Alonso, J.) (statements "unsupported" are "not considered"). The only record support Plaintiff offers for this paragraph is the Complaint for Search Warrant and Search Warrant, Defendant Grizzle does not dispute the content of those documents, and asserts that the contents speak for themselves without editorial.**

3

9. Defendants knew from the time that plaintiff's iPhone was seized that it contained sensitive personal information. At the time Grizzle seized plaintiff's iPhone pursuant to the Search Warrant, plaintiff informed Grizzle that her iPhone contained sensitive personal information. (Grizzle's SoF, ¶ 32; Doc 253-2, p. 1222, 56:13-14) During the process of the extraction of contents of plaintiff's iPhone, Grizzle confirmed his awareness that those contents included "personal" things on her phone that were "very sensitive" and may have acknowledged that this information included photos and/or videos of a personal or sensitive nature. (Doc 253-6, p. 1323, 54:14-20, p. 1324, 58:8-15, p. 1325, 60:10 – 61:21) Dep. Chief of Investigations Roechner was also aware that that the contents of Socha's iPhone included "sensitive information about an officer." (Doc 253-7, 49:12-17)

**RESPONSE:**   **Defendant Grizzle objects to this statement on several bases.**

> **The first sentence of this paragraph is editorial, argumentative, and unsupported by any specific reference to the record.**
>
> **The second sentence mischaracterized the portions of the record to which it cites, and generally does not support the proposition that "[a]t the time Grizzle seized plaintiff's iPhone pursuant to the Search Warrant, plaintiff informed Grizzle that her iPhone contained sensitive personal information." In support Plaintiff cites Grizzle's SOF, ¶ 32, which stands for the proposition that Plaintiff told Lt. Brown that there was "stuff on her phone that she didn't want anybody to see," and page 56 of Grizzle's deposition during which Grizzle testified that Plaintiff stated "This motherfucker is going to look at personal information" prior to turning over her phone.**
>
> **The third sentence is argumentative and mischaracterizes the portion of the record to which it cites and generally does not support the proposition that Defendant Grizzle "knew" that Plaintiff's phone contained "sensitive, personal information," in the form of pictures, videos, or otherwise. Plaintiff cited portions of Detective Botzum's deposition testimony to support this contention, but even in light most favorable to Plaintiff, this portion of the record merely supports a contention that Defendant Grizzle told Detective Botzum that Plaintiff was upset when he took her phone and that *she said* there were personal things on there and that she did not want people going through her phone.**

4

> **The fourth sentence is immaterial to the claims asserted against Defendant Grizzle, as the fact it asserts has no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy.**

10. After Botzum performed the extraction of the data on plaintiff's iPhone to the Cellebrite computer, he stored it on the Cellebrite computer under label/file name that he created/assigned to it. To then locate and access that data on the Cellebrite computer, a user would necessarily have to know and search for/locate it under the identifying label/file name that Botzum assigned to it. Neither Botzum (nor any other witness who was asked) could recall what that label/file name was. Botzum recalled only that, because of the sensitivity of the data extracted from plaintiff's iPhone, he purposely assigned it a "very vanilla" (i.e., non-descriptive) name that was not plaintiff's name where "a normal person or a normal detective would not go" and where "no one [without that information] should be able to find this" (i.e., the data from plaintiff's iPhone stored on the Cellebrite computer). Defendants have characterized the data extracted from plaintiff's iPhone as thusly "encrypted." (Grizzle SoF, ¶ 39) Botzum then directed Grizzle where/how/under what label/name plaintiff's iPhone data could be found on the Cellebrite computer. Botzum may also have communicated this information to German. (Doc 253-6, pp. 1323-1324, 52:15 – 59:6, p. 1330, 81:6 – 82:9; See Doc , pp. 1272-1273, 38:2 – 42:24 regarding what steps are generally required to access data extracted from any particular computer device by/stored on the Cellebrite computer)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

11. The search of plaintiff's iPhone for the purpose of locating the single text message she sent to Gatlin was accomplished in approximately one hour. (Grizzle SoF, Doc 256, p. 1602, ¶¶ 44-45)

5

**RESPONSE:** **Undisputed.**

12. Data saved to the Cellebrite computer was accessible by a single, universal password for all users. The password was communicated to investigators (i.e., Detectives) and supervisors in JPD's Investigations Division. (Doc 253-5, pp. 1270-1271, 31:24 – 32:15) During May – June 2018, the password was JOLIET. (Doc 253-9, p. 1447, 16:13-17) No individualized identification information (i.e., "User ID") was needed to access data save to the Cellebrite computer. (Doc 253-5, p. 1271, 34:12-17; Doc 253-9, p. 1450, 21:20-24)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

13. In May – June 2018, the Cellebrite computer was accessible to any person in the Investigations Division area of the JPD in which approximately 20 people had workstations. (Doc 253-9, p. 1448, 14:17, 15:4-7)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

14. Data extracted from computer devices, including plaintiff's iPhone, to the Cellebrite computer could be accessed by anyone in the Investigations Division who knew the universal password and under which file name/label to find the data. (Doc 253-5, p. 1273, 41:6-9) During May – June 2018, the majority of JPD's detectives had been trained to do this. (Doc 253-5, p. 1273, 43:21 – 44:6)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights**

6

or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.

15. Detectives were not required to obtain permission to log onto the Cellebrite computer to review data stored on it. (Doc 253-5, p. 1277, 57:22-58:2)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

16. The Cellebrite computer was not equipped so that only authorized persons could access the data stored on it. (Doc 253-6, p. 56:3-8)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

17. Nor was the Cellebrite computer capable of recording when or by whom data stored on it was accessed. (Doc 253-6, p. 1321, 46:22 – 47:9; Doc 253-5, p. 1271, 34:12-17)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

18. A detective who did not have an official role in and was not working on a particular investigation would have no reason to access and review the contents of computers seized by using either the Cellebrite or Lantern computers. (Doc 253-5, p. 1272, 36:21 – 37:4)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights**

>or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.

19. McKinney knew before he viewed the nude image of plaintiff on the Cellebrite computer that he had accessed and was trawling through the extraction of plaintiff's iPhone. He could not have accessed the data without knowing under which name/label to search for it in the Cellebrite computer. See generally, ¶ 10, above.

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

20. McKinney called McKeon's attention to that nude image before McKinney displayed any other image of plaintiff's face on the Cellbrite computer monitor. When McKinney did this, he identified the nude image to McKeon as that of plaintiff. (Ex. D, 21:3 – 23:22, 34:6 – 35:7)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

21. Neither McKinney nor McKeon were assigned to or had an official role in the JPD's investigation of plaintiff or law enforcement purpose/reason to access the extraction of plaintiff's iPhone that was stored on the Cellebrite computer. (Ex. D, 30:10-15; Doc 253-9, p. 1447, 11:5-9; Doc 253-2, p. 1220, 50:3-5)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

22. When McKinney accessed data from plaintiff's iPhone that was stored on the Cellebrite computer, he consciously elected to access data relating to an open case in which he was not involved instead of a training file of his own stored in the Cellebrite computer. (Doc 253-9, p. 1451, 24:21 – 25-12)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

23. To get to the nude image of plaintiff that he viewed and then displayed to McKeon, McKinney consciously "clicked through" the data from plaintiff's iPhone, scrutinized the different media icons/tabs from which he was able to differentiate between those by which to access documents from those by which to access images and purposely clicked on an images tab anticipating that this would result in photos being displayed, which is what then occurred. (Doc 253-9, pp. 1451-1452, 25:13 – 28:4)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

24. There are two competing versions of how the data from plaintiff's iPhone finally came to be removed from the Cellebrite (and Lantern) computers on 8 June 2018. We refer to them here as the "Jensen version" and "Gavin version."

a) Jensen Version

During the period May – July 2018, when he retired from JPD, Tab Jensen served as Dep. Chief of Administration, up through which JPD's Internal Affairs Division reported (to Chief of Police, then Benton). (Ex. E, 6:4 – 7:8) Gavin reported to Jensen that there had been reports that

9

"detectives or persons from investigations may have been viewing some photos, explicit photos from basically the Socha case" that depicted plaintiff. (Ex. E, 19:7-15, 20:1-3) Jensen took these to be "nude photos or something sexual in nature." (Ex. E, 20:13-18) Jensen concluded that these images were on the Cellebrite computer. (Ex. E, 21:5-13) He was already aware that JPD had seized plaintiff's iPhone. (Ex. E, 21:14 – 22:20, 23:7 – 24:8) At the time, neither German nor Roechner were present in JPD's offices. (Ex. E, 28:18-22; 34:13-16) Jensen directed Gavin to supervise the removal (by German) of plaintiff's iPhone extraction from the Cellebrite computer. (Ex. E, 34:13 – 35:11; 36:11 – 18) Jensen expected that plaintiff's iPhone extraction would be removed from the Cellebrite computer, saved to a disk or thumb-drive and put into evidence, by which he expected it would be handled in conformity with JPD's G.O. 16.1 and tracked via JPD's BEAST system. (Ex. E, 37:5-12, 40:23 – 41:11) Roechner overrode Jensen on this point and told Jensen that he, Roechner, would take possession of this new copy of plaintiff's iPhone extraction, which he did. (Ex. E: 37:13-17, 40:9-12, 43:7-23)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

    b) Gavin Version

Gavin was directed by Chief Benton to have German remove the plaintiff's iPhone extraction from the Cellebrite and Lantern computers, save it to another device ("Put it on whatever you can put it on. And then put it in evidence.") (Ex. F, 24:20 – 26:22, 30:4-13) Jensen did not give this directive to Gavin. (Ex. F, 31:11-15) German removed the data from both computers and stored the data to two separate USB drives, which Gavin took to his own office (with one USB still in the Lantern computer while it completed the purge) (Ex. F, 34:18 – 36:16) Roechner than to these devices. (Ex. F, 37:20 – 38:24)

10

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

25. The two new USB drives created when the plaintiff's iPhone data was removed from the Cellebrite computer and the Lantern computer on 8 June 2018, respectively, were never entered into JPD evidence and conformity with G.O. 16-1 and were not tracked via JPD's BEAST system.

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

26. Roechner admitted to Det. Dave Jackson that Roechner had loaded the contents of the data extracted from plaintiff's iPhone onto Roechner's own JPD desktop computer located in Roechner's office. (Ex. C, 35:16-36:4)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

27. Lt. Robert Brown admitted to Det. Jackson that Brown had been present in a JPD Watch Commander's office when Sgt. Gavin said to a small group of officers assembled there discussing the data extracted from plaintiff's iPhone: "Now I know why Crowley's with her. She sucks dick like a porn star." ("porn star remark") Brown later told Jackson that Brown would lie about this if Brown was ever questioned about it. (Ex. C, 14:16-15:1, 21:9 -13) Carlos Matlock reported to a friend/fellow JPD officer that he had heard Gavin utter the porn star remark. (Ex. G, 33:16 – 38:23, 39:6-23, 56:1-

11

15, 68:4-10) Matlock also reported to Det. Jackson and to Off. Crowley that Brown had admitted to Matlock that Brown was present and heard Gavin utter the porn star remark. (Ex. H, 72:14 – 75:12)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

28. The porn star remark became a specific subject of "rumors" about the contents of the data extracted from plaintiff's iPhone that were circulated widely and were heard by numerous JPD officers during the period that JPD possessed multiple copies of the data extracted from plaintiff's iPhone. (Ex. B, 37:21-38:21; Ex. I, 16:2-20:18; Ex. J, 16:23-20:23; SoF ¶¶ 55-56)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

29. On or around 23 August of 2018, Chief Benton commissioned a Chicago RCFL investigation of computer equipment issued to JPD Investigations Department personnel. (City SoF, ¶ 43) By that time, the data extracted from plaintiff's iPhone had been copied to at least 5 USB drives, had been stored on both the Cellebrite and Lantern computers from 18 May – 8 June 2018, and had also been loaded onto Grizzle's and Roechner's desk-top computers. (City SoF, ¶¶26, 36, 40-41; Grizzle SoF, ¶¶ 26, 39-44, 49; and ¶¶ 24, above). The RCFL investigation also found plaintiff's phone data on German's computer. (City SoF, ¶ 44)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

30. After Roechner learned of Chief Benton's initiation of the RCFL investigation, Roechner directed JPD's IT Officer, Phillip Bergner, to dispose of one of Roechner's phones and that Bergner had complied with this order and disposed of one of Roechner's phones. (Ex. G, 23:16 – 27:2) Roechner and Bergner both deny this.

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

31. Roechner himself, once promoted to Chief of JPD, directed that the RCFL investigation be terminated before it was completed. (Doc. 253-6, p. 1338, 112:4-114:22)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

32. Once data extracted from a computer device like plaintiff's iPhone has been copied to a storage device like a USB drive, those storage devices should be entered into evidence in conformity with G.O. 16-1 and the handling of such evidence tracked via JPD's BEAST system like any other physical evidence ("like guns, knives, whatever"), the circumvention of which would be a violation of the General Order and improper. (Doc 253-5, pp. 1274-1275, 47:11 – 49:3) Yet, none of the copies of the data extracted from plaintiff's iPhone and saved to USB drives were entered into JPD evidence or tracked via the BEAST system. (City SoF, ¶ 32)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Neither the Fourth Amendment, nor Illinois tort law requires that Defendant Grizzle or any other officer store evidence according to general orders. While mishandled evidence may be excluded from a criminal trial,**

13

> **there was no criminal trial of the Plaintiff in this case, and thus her right to a fair trial is in no way implicated by the facts of this case.**

33. Plaintiff intended that the nude and sexual photos and videos on her iPhone be and remain private and has limited end transmission to herself and her then fiancé (now husband), Crowley, the only other person depicted in those images and their respective phones. (Doc 253-1, p. 1144, 74:14-75:10, p.1151, 102:13-105:4)

**RESPONSE:** **Undisputed.**

34. JPD Internal Affairs Division never opened an internal affairs investigation of plaintiff relating to the text message plaintiff sent to Gatlin at the conclusion of the Crowley trial. (Ex. I, 28:20-23)

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

35. Plaintiff was never charged with any crime relating to the text message she sent to Gatlin. The statute of limitation for the offense suggested by the Search Warrant and Complaint for Search Warrant for plaintiff's iPhone, 720 ILCS 5/32-4a (a), was/is three years and has expired.

**RESPONSE:** **Defendant Grizzle objects to this statement as immaterial to the claims asserted against him, as they have no tendency to prove or disprove that he violated Plaintiff's Fourth Amendment rights or invaded her privacy. Defendant Grizzle, for the purpose of the adjudication of his motion for summary judgment, does not dispute the contentions in this paragraph.**

Respectfully Submitted,

/s/ *Michael J. Atkus*
MICHAEL J. ATKUS, Attorney #6285666
One of the Attorneys for EDWARD GRIZZLE

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2023, the foregoing **DEFENDANT GRIZZLE'S RESPONSE TO PLAINTIFF'S LOCAL RULE 56(b)(3) STATEMENT OF ADDITIONAL MATERIAL FACTS** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System.  Notice of this filing will be sent to the following parties by operations of the Court's electronic filing system:

James John Hess     jhess@tresslerllp.com, ogarcia@tresslerllp.com

Joseph C. Sheahan     joseph.c.sheahan@gmail.com

Stacey Lynn Wilkins     chicagodocket@tresslerllp.com, swilkins@tresslerllp.com, nfranco@tresslerllp.com

Michael Jude Atkus     kstocco@khkklaw.com, matkus@khkklaw.com

Paul Bruno Johnson     jcorbett@khkklaw.com, pjohnson@khkklaw.com

Hall Adams     hall@adamslegal.net

Darcy L. Proctor     chicagodocket@tresslerllp.com, dproctor@tresslerllp.com

Matthew Scott Clark     kstocco@khkklaw.com, mclark@khkklaw.com

John M. O'Driscoll     jodriscoll@tresslerllp.com, chicagodocket@tresslerllp.com, ogarcia8888@tresslerllp.com

/s/ *Michael J. Atkus*
MICHAEL J. ATKUS, Attorney #6285666

KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
Attorneys for Defendant EDWARD GRIZZLE
5600 North River Road, Suite 600
Rosemont, Illinois 60018-5114
Telephone:     847/261-0700
Facsimile:     847/261-0714
EMAIL:     matkus@khkklaw.com