UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASSANDRA SOCHA,<br><br>      Plaintiff,<br>v.<br><br>CITY OF JOLIET, an Illinois Municipal corporation, EDWARD GRIZZLE, and JOHN DOES 1-20<br><br>      Defendants. | Case No. 18-cv-5681<br><br>Honorable Jorge L. Alonso |

### CITY OF JOLIET'S REPLY IN SUPPORT OF ITS MOTION SUMMARY JUDGMENT

Defendant, CITY OF JOLIET, a municipal corporation (hereafter the "City"), by and through its attorneys, TRESSLER, LLP, submits the following Reply in support of its Motion for Summary Judgment as follows:

Preliminarily, Plaintiff did not oppose the City's Motion for Summary Judgment as to Count XVII of her FAC – Publication of Private Acts. *See* (Doc No. 258-1, pg. 1) Therefore, this Court should grant summary judgment on Count XVII in favor of the City.

The remaining substantive issue on Defendant's Motion for Summary Judgment is Count XII of Plaintiff's FAC – Intrusion Upon Seclusion. Plaintiff does not contest that Officer McKinney engaging in training on the Cellebrite computer at the time of the events in question. Plaintiff further does not contest that as a result of this training, Officer McKinney – who was one of the select officers that could even access the Cellebrite computer – clicked on an unidentified folder that contained images. Plaintiff further agrees that when Officer McKinney clicked on the unidentified folder and image, the first one depicted a nude woman from the chest down – again not identifying Plaintiff. Officer McKinney then viewed a second image that depicted the Plaintiff,

1

and he immediately logged out of the Cellebrite system and never looked at another private image of the Plaintiff - which is not undisputed.

Notwithstanding these admissions, Plaintiff wants this Court to somehow conclude that the Officer McKinney intentionally accessed and viewed her private images. Specifically, Plaintiff argues that: (1) the City was not authorized to look at Plaintiff's images because the initial search warrant was unconstitutional, and Officer McKinney was not part of Plaintiff's criminal investigation; and (2) there is a question of fact as to whether other JPD officers intentionally accessed and viewed Plaintiff's images. But none of these arguments raise a genuine issue of material fact or is otherwise sufficient to survive summary judgement. Even when the record is construed most favorably to Plaintiff, she cannot prevail on her claim because Officer McKinney was authorized to use the Cellebrite system for training purposes, and outside of inadmissible hearsay, there was no intentional act.

**A. The City was Authorized to View Plaintiff's Phone.**

There is no question that the City lawfully obtained a search warrant that allowed the City to download, extract and obtain data from Plaintiff's phone that included "electronic communications, digital images or videos, e-mails, voice mail, buddy lists, chat logs, instant messaging, and text messages" (Doc No. 253, ¶ 15) which, Plaintiff admits. (Doc No. 258-3, ¶ 15). In an attempt to create an issue of fact, Plaintiff argues that the search warrant itself was unconstitutional. (Doc No. 258-1, pg. 5) However, such an argument is a red herring because the issue before this Court is not whether the search warrant was unconstitutional but whether the City was authorized to view Plaintiff' phone, which included "digital images." The answer to that question is yes, which Plaintiff admits. (Doc No. 258-3, ¶ 15).

It follows that Plaintiff's reliance on *United States v. Winn,* 79 F. Supp. 3d 904 (S.D.[1] Ill. 2015) is misplaced. *Winn* involved a criminal case in which the defendant argued that the search warrant violated his Fourth Amendment rights because it failed to state with particularity the items permitted to be seized. *United States v. Winn*, 79 F. Supp. 3d 904, 918 (S.D. Ill. 2015). However, *Winn* had nothing to do with a state law intrusion upon seclusion claim. *Id.* Moreover, Plaintiff's previous Fourth Amendment claim against the City was previously dismissed, and it is improper to try and relitigate this dismissed claim on summary judgment. Doc No. 52. Therefore, *Winn* is inapplicable to Plaintiff's intrusion upon seclusion claim against the City.

Plaintiff's attempt to conflate and relitigate issues does not create an issue of material fact that the City *lawfully* obtained a search warrant through the proper procedures resulting in Hon. Sarah Jones' authorization. (Doc No. 253, ¶¶ 13-17) In this regard, *Trans Union* is directly on point. As Plaintiff admits, *Trans Union* held that a reporting agency "had not engaged in intrusion upon seclusion by accessing its own *lawfully* obtained files containing data regarding the plaintiffs." In *In re Trans Union Corp. Privacy Litigation,* 326 F. Supp. 2d. 893, 902 (N.D. Ill. 2014) (Doc 258-1, pg. 5) This is exactly what the City did here, when the City accessed its own lawfully obtained information containing Plaintiff's phone data. Here, the search warrant authorized the City to download, extract and obtain Plaintiff's digital images from Plaintiff's phone. As Plaintiff admits, it was simply not possible for the City to download only "part" of Plaintiff's phone data, i.e. her text messages. (Doc No. 258-3, ¶ 15). Once Plaintiff's phone data was downloaded into Cellebrite, it was accessible to only a select few JPD detectives who had the password to access Cellebrite and knew how to use the program. (Doc No. 253, ¶ 31) To be clear, the City argues that these select JPD detectives were authorized to view Plaintiff's phone data

---

[1] Plaintiff incorrectly cited *Winn* as a Central District case. Doc 258-1, pg. 5

located on Cellebrite, and not the entire JPD department as Plaintiff asserts. *Compare* Doc No. 252, pg. 6 to Doc No. 258-1, pg. 8. One of these JPD detectives was Officer McKinney, who at the time, was training on the Cellebrite computer to gain experience with the program. (Doc No. 253, ¶ 46) This in turn authorized Officer McKinney to view Plaintiff's data on the Cellebrite computer because he engaged in informal and independent self-education with Cellebrite by accessing lawfully obtained evidence. (Doc No. 253, ¶¶ 46-48) Finally, Plaintiff has not pointed to any City policy or practice that prohibited JPD officers, like Officer McKinney, from reviewing the results of a pending investigation, which further supports that Officer McKinney was authorized to view Plaintiff's phone data. (Doc. No. 258-1). Therefore, the only "intrusion" of Plaintiff's images was by Officer McKinney, who was authorized to do so, and as a result, her claim for intrusion upon seclusion claim fails.

**B. The City Did Not Intentionally Access and View Plaintiff's Private Images.**

Plaintiff does not dispute that an intrusion upon seclusion claim is an intentional tort requiring that a defendant "intentionally intrude" upon her private images. (Doc No. 258-1, pg. 8) Here, the evidence establishes that only two detectives within the JPD viewed Plaintiff's images – Officer McKinney and Officer McKeon. Any evidence to the contrary is based on hearsay and speculation. Moreover, the undisputed facts establish that Officer McKinney and Officer McKeon did not purposefully view Plaintiff's personal photographs because her cell phone data was secured in a media file on Cellebrite that was not labeled, nor identifiable to her. (Doc No. 253, ¶ 50) Thus, when Officer McKinney viewed Plaintiff's private images, he had no way of knowing that it was Plaintiff whose images were contained in this unidentified media folder. *Id.* In Plaintiff's response, she argues that there is circumstantial evidence that: (1) other JPD employees accessed and viewed Plaintiff's private images; and (2) Officer McKinney and Officer McKeon did intentionally intrude

4

upon her private images. Doc. 258-1. As set forth below, both arguments fail as a matter of law because "evidence" based on hearsay and speculation is insufficient to create a genuine issue of material fact. *See Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009)

> **i. There is no Evidence to Establish that JPD Officers Intentionally Viewed Plaintiff's Private Images.**

As Plaintiff admits, there is no direct evidence to establish that any JPD employee (other than Officer McKinney and McKeon) intentionally accessed and viewed Plaintiff's private images. (Doc No. 128-1, pg. 11) Now, Plaintiff argues that "reasonable circumstantial inferences can be reached that JPD employees in addition to McKinney and McKeon, who has ample opportunity to view the private images extracted from plaintiff's iPhone, did so intentionally and without authority." *Id.* Plaintiff cites to no authority, or analogous case law that supports his assertion that "reasonable circumstantial inferences" can create an issue of material fact to thwart the City's motion for summary judgment. Notwithstanding the lack of case law, the "reasonable circumstantial inferences" that Plaintiff refers to is based on hearsay and speculation, and therefore, does not create an issue of material fact.

First, Plaintiff argues that the "chain of custody" of the extraction of Plaintiff's phone data can be called into question. (Doc. 258-1, pg. 11) According to Plaintiff, there were multiple copies of Plaintiff's phone data on USB drives, computers and Cellebrite, which then gave other JPD officers the ability to view and access the data. *Id.* Detrimental to Plaintiff's theory, there was an independent investigation done by the Chicago Regional Crime laboratory ("RCFL") to investigate the presence of Plaintiff's data on JPD electronic devices. (Doc. 253, ¶ 43) The RCFL's report indicated that Plaintiff's phone data was located on only two devices – Grizzle's and German's computers. (Doc. 253, ¶ 44) Plaintiff's argument that Plaintiff's data was located on Roechner's computer is based on hearsay and is false. (Doc 253, ¶¶ 36, 41; Doc 253-7, p. 1387, 69: 10-13)

5

Roechner denied that Plaintiff's phone data was located on his computer and RCFL's investigation confirms this fact. *Id.* In sum, Plaintiff's phone data was removed from Cellebrite on June 8, 2018, and thereafter, was located on two devices, a location where they were intended to and had a lawful purpose to be. (Doc. 253, ¶ 40, 44) Moreover, there is no evidence that anyone at JPD accessed or viewed Plaintiff's images on USB drives that were secured under lock in key in Roechner's office. There is no actual admissible evidence to the contrary, and instead, Plaintiff relies on only vague speculation, which is insufficient to create an issue of fact.

Second, Plaintiff argues that from May 18, 2018 to June 8, 2018 it was possible for other JPD officers to access Plaintiff's phone data that was located on the Cellebrite computer. (Doc 258-1, pg. 11-12) The "circumstantial evidence" Plaintiff offers in support of this allegation is Plaintiff's assertion that the Cellebrite computer was "generally accessible" to anyone within the investigation division. (Doc. 258-1, pg. 11) However, Plaintiff omits his admissions in response to the City's statement of facts stating that: (1) the investigations room required keycode access; (2) the Cellebrite computer required a login password; (3) only a select few JPD officers knew how to use Cellebrite and could run a report to access Plaintiff's data; and (4) Plaintiff's phone data was not identifiable to her on Cellebrite. (Doc 258-3, ¶ 22, 28, 31) There is no actual evidence - either direct or circumstantial - that exists to support Plaintiff's argument. Thus, Plaintiff's assertion that her data was "generally accessible" to anyone via the Cellebrite Computer is based on Plaintiff's speculation, and therefore, this allegation fails.

Finally, Plaintiff argues that the "rumors" at JPD provide circumstantial evidence that her data must have been shared within JPD. (Doc 258-1, pg. 12 -13) Specifically, Plaintiff claims that these rumors started when Sgt. Gavin allegedly told others he had seen Plaintiff's private images and that she "sucks dick like a porn star." *Id.* at 12. To support this allegation, Plaintiff states that

6

Lt. Brown told David Jackson about the "porn star" comment when he heard it from Sgt. Gavin during a Watch Commander meeting. *Id.* Of course, this is hearsay within hearsay, but more than that, Lt. Brown affirmatively denies that Sgt. Gavin told him this, and denies that this alleged Watch Commander meeting took place. (Doc 253, ¶ 66) Moreover, Sgt. Gavin denies making this statement (Doc 257-7, p. 2187, 51: 1-5) Other than the hearsay statement noted above, Plaintiff offers no evidence - either direct or circumstantial - that anyone at JPD made or heard statements concerning Plaintiff's private images. *See generally,* (Doc 258-1, pg. 12-13) As such, Plaintiff fails to establish that any JPD officer – other than McKinney and McKeon – actually viewed Plaintiff's private images. Therefore, her intrusion upon seclusion claim fails as a matter of law to these other JPD officers.

      **ii.**    **Officer McKinney and McKeon Inadvertently Viewed Plaintiff's Private Image.**

The City admits that Officer McKinney and McKeon viewed a single private image of the Plaintiff that was stored on the Cellebrite computer, but they are nonetheless entitled to summary judgment because the evidence establishes that this viewing was an inadvertent mistake. First, Plaintiff did not respond to the City's argument that Officer McKeon did not have the requisite intent to be found liable for her intrusion upon seclusion claim. (Doc 258-1). Thus, any claim against the City as it relates to Officer McKeon fails as a matter of law. Instead, Plaintiff focus in her response is on Officer McKinney's intent. *Id.* Plaintiff offers no direct evidence to rebut Officer McKinney testimony, but instead, relies on the presumption that questions of intent are "rarely suitable for summary judgment." (Doc 258-1, pg. 8) Regardless of this alleged presumption, the City has put forward direct evidence as to Officer McKinney (and McKeon's) inadvertent mistake that would entitle it to summary judgment and Plaintiff does not counter by pointing to contrary

7

direct evidence. *Schroeder v. Winyard*, 375 Ill. App. 3d 358, 368, 873 N.E.2d 35, 43 (2007). Instead, Plaintiff once again relies on speculation to establish Officer McKinney intent.

First, Plaintiff's reliance on *McCottrell v. White* is misplaced as this case discussed the application of intent on an excessive force claim. *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019). There, the court applied a five-factor test to evaluate whether correctional officers used more force than reasonably necessary to subdue inmates when they discharged their shotguns over the dining hall. *Id.* The five-factor test, which is inapplicable here, looks at objective factors such as the need for force, the extent of the injury and threat to staff and inmates. *Id.* The court found that there were contested issues of fact that could support that defendants acted "maliciously and sadistically" rather than in good faith to restore order. *Id* at 670. The court reasoned that the evidence supported an inference that by the time the correctional officers discharged a warning shot with their shotgun, the inmates were already subdued by correctional officers. Thus, the need for force – warning shot with their shotgun - was unwarranted. *Id.*

This case is analogous to *Johnson v. Northshore Univ. Judge Presiding Healthsystem,* where the court held that plaintiff failed to state an intrusion upon seclusion claim because defendants made an inadvertent error when they accessed and distributed confidential medical records. *Johnson v. Northshore Univ. Judge Presiding Healthsystem,* 2011 WL 10069086, (Ill. App. Ct. Mar. 31, 2011). There, confidential medical records were improperly sent to the defendants in compliance with an overly broad subpoena. *Id* at *1. The defendants in turn reviewed her confidential information and distributed it to others within a lawsuit, including the plaintiff. *Id.* The court found that defendants made an inadvertent error when it received and distributed plaintiff's confidential medical information as their conduct did not rise to the level of "offensive prying" or "deceitful" behavior. *Id.* at *5.

8

Like *Johnson,* there is no evidence to establish that Officer McKinney or Officer McKeon engaged in "offensive prying" or "deceitful" behavior when they inadvertently viewed two private images of the Plaintiff. *Also see Geiling v. Wirt Fin. Servs., Inc.*, 2014 WL 8473822, at *53 (E.D. Mich., 2014), aff'd, 2017 WL 6945559 (6th Cir. June 8, 2017) (defendants who inadvertently receive the information have not intruded). Plaintiff argues that since Officer McKinney was not assigned to the City's investigation into Plaintiff's threatening text message, he had no reason to be looking at Plaintiff's data in Cellebrite. (Doc No. 258-1, pg. 8) Thus, according to Plaintiff, he intentionally sought out her information and viewed it. *Id.* However, Plaintiff's argument does not create a genuine issue of material fact as to Officer McKinney's intent because the City admits that he was not assigned to the investigation. Rather, the City argues that while Officer McKinney was training on the Cellebrite computer, like he did many times before, he randomly ran a report on a file that contained a bunch of numbers (did not identify Plaintiff in any way). (Doc No. 253, ¶¶ 46-48, 50) Officer McKinney did this to better familiarize himself with the forensic process utilizing the Cellebrite system as a tool of self-education. *Id.* Unbeknownst to him, the report that he generated contained photographs of the Plaintiff. (Doc No. 253, ¶ 50) It was not until he saw a photograph that contained Plaintiff's face, did he realize his inadvertent error, and immediately closed the program (and never looked at her photograph again). (Doc No. 253, ¶ 52) Plaintiff fails to provide this Court with any evidence, including any testimony from McKinney or McKeon that refutes these undisputed facts.

Based on these facts, Plaintiff has offered no contested issues of fact which this Court can infer that Officer McKinney deliberately, and intentionally intruded upon Plaintiff's private images. Therefore, summary judgement should be entered in the City's favor.

**C. The City is Entitled to Immunity under *745 ILCS 10/2-107.***

Even if this Court finds that there is a question of fact as to Plaintiff's intrusion upon seclusion claim, which the City denies is possible here, the City is nonetheless entitled to immunity under 745 ILCS 10/2-107. Plaintiff argues that § 2-107, is inapplicable to intrusion upon seclusion claims, but provides no case law that supports this argument. (Doc 258-1, pg. 3) According to the plain language of § 2-107, it protects municipalities, like the City, from the conduct of its employees that is "libelous or slanderous or *for the provision of information* either orally, in writing, by *computer or any other electronic transmission*." 745 ILCS 10/2-107 (emphasis added) In *Goldberg v. Brook*, the Court held that the phrase "provision of information" provides for broad public protection and even investigated the legislative history of this phrase in the context of § 2-210. *Goldberg v. Brooks*, 409 Ill. App. 3d 106, 111, 948 N.E.2d 1108, 1114 (2011) It stated:

> [w]e note that the phrase, "or the provision of information either orally, in writing, in a book or other form of library material" was the result of an amendment to the original version of section 2–210 of the Tort Immunity Act (Pub. Act 84–1431 (eff.Nov.25, 1986)), as was the language regarding computer and electronic transmissions (Pub. Act. 89–100 (eff. July 7, 1995)). Thus, grammar, the rules of statutory construction, and legislative history all point to the conclusion that the provision of information is a separate category… providing a broad protection to public employees acting within the scope of their employment.

*Id.*

As the court correctly noted in *Wright-Young v. Chi. State Univ.*, 153 N.E.3d 185, 201 (Ill. App. 2019), the "provision of information" in § 2-210 and § 2-107 are interpreted in the same manner. Given that the § 2-107 provides broad protection to the City, there is no question that the "provision of information" by "computer or any other electronic transmission" is applicable to Plaintiff's intrusion upon seclusion claim in which she claims, "extreme embarrassment, humiliation and anguish." *See Thompson v. Bd. of Educ. Tp. High School Dist. 113,* No. 13 L 879, 2015 WL 12660367, at *8 (Ill. Cir. Ct. Jan. 23, 2015) (holding that a the board is immune from liability under § 2-107 on ***plaintiff's intrusion upon seclusion claim***) (emphasis added); *also see*

10

*Thuet v. Bd. of Educ. of City of Chicago,* 2022 WL 16961443, at *4 (N.D. Ill. Nov. 16, 2022) (granting the board's affirmative defense under § 2-107 on plaintiff's state law intentional emotional distress claims." Provision means "the act or process of providing." *Provision,* Merriam-Webster Dictionary, https://www.merriam-webster.com/#:~:text=1%20of%202, noun,a%20need%20or%20contingency%20%3A%20preparation.

Here, the City lawfully obtained Plaintiff's phone data from a search warrant and extracted her phone data into Cellebrite. (Doc No. 253, ¶ 26) Officer McKinney, while conducting self-training on the Cellebrite computer, inadvertently viewed Plaintiff's private image, which Plaintiff alleges caused her extreme embarrassment, humiliation, and anguish due to the viewing of said private image. (Doc No. 253, ¶¶ 50-51; Doc. No 60, ¶ 33) Like *Thompson,* Officer McKinney's actions of viewing Plaintiff's private image through the Cellebrite computer falls squarely within the definition of "provision" of information and therefore, the City is absolutely immune from liability under § 2-107 as it cannot be held liable for Officer McKinney's or any City employee's actions.

WHEREFORE, Defendant, the City of Joliet, prays that this Honorable Court grant its Motion for Summary Judgment and enter judgment in its favor and against Plaintiff, Casandra Socha, and for any other relief this Court deems proper and just.

          Respectfully submitted,

          */s/ Andrew O'Donnell*

John O'Driscoll
Darcy Proctor
Andrew O'Donnell
TRESSLER LLP
550 E Boughton Rd #250
Bolingbrook, IL 60440
312-627-4000
jodriscoll@tresslerllp.com
dproctor@tresslerllp.com

aodonnell@tresslerllp.com
Attorney for City of Joliet

## **CERTIFICATE OF SERVICE**

I hereby certify that on, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will send notification to all counsel of record via the Court's CM/ECF system on January 17, 2023.


/s/Andrew O'Donnell___

Attorney for City of Joliet