UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASSANDRA SOCHA, <br><br> Plaintiff, <br> v. <br><br> CITY OF JOLIET, an Illinois Municipal corporation, EDWARD GRIZZLE, and JOHN DOES 1-20 <br><br> Defendants. | Case No. 18-cv-5681 <br><br> Honorable Jorge L. Alonso |

### CITY OF JOLIET'S REPLY TO PLAINTIFF'S LOCAL RULE 56(b)(3) STATEMENT OF ADDITIONAL FACTS

Defendant, CITY OF JOLIET, a municipal corporation (hereafter the "City"), by and through its attorneys, Tressler LLP, and its reply to Plaintiff's Local Rule 56(b)(3) statement of additional facts, and pursuant to Fed. R. Civ. P. 56 state as follows:

### REPLY TO ADDITIONAL MATERIAL FACTS

Plaintiff's response does not dispute certain numbered material facts listed in the City's Motion. (Doc No. 257, Pltf. Resp. to City's MSJ, pp. 1-17) Therefore, those facts not specifically disputed should be deemed admitted. *See* Local Rule 56.1(a)(3).

Plaintiff's response does offer additional material facts as required by Local Rule 56.1(b)(3)(C). The City provides its response to Plaintiff's statement of additional material facts as follows:

1. Plaintiff has been employed continuously as a patrol officer by the Joliet Police Department ("JPD") since 14 April 2014. (Doc 253-1, 17:6-10) She still serves on the JPD. (Doc 253-1, p. 1131, 22:9-14)

**RESPONSE:** Admit.

1

2.	At the time Grizzle obtained a warrant to seize and search, then seized and searched Plaintiff's iPhone, he was an experienced detective. (Doc 253-2, pp. 1229, 86:23-87:16)

**RESPONSE:** The City admits that at the time of Grizzle's deposition, he testified that he had 21 years' experience as a police officer and had 8 years' experience as a detective with the Aurora Police Department. (Doc 253-2, pp. 1229, 86:23-87:16)

3.	In the bench trial of State of Illinois v. Nicholas Crowley, 17 CF 1422, Circuit Court of 12th Judicial Circuit, Will County, Illinois ("Crowley trial") the evidence closed, counsel gave closing arguments, and the court took the matter under advisement on 16 May 2018. (Ex. A, pp. 48-49)

**RESPONSE:** The City admits that on May 16, 2018, in 17-CF-1422, the evidence closed, counsel had closing arguments and the Court took the matter under advisement. The City denies that the above fully, and accurately characterizes what transpired on May 16, 2018 in 17-CF-1422 and this disputed fact is immaterial. Plaintiff conveniently omits that Marie Gatlin gave testimony in support of the State's prosecution on May 16, 2018. (Doc No. 257-2, Ex. A pp. 2-21)

4.	Plaintiff transmitted the single text message to Gatlin that is referenced in defendants' Statements of Fact after the close of evidence and arguments of counsel in the Crowley criminal trial proceedings had concluded and the court taken the matter under advisement on 16 May 2016. (Doc 253-1, p. 1141, 63:7-14)

**RESPONSE:** Admit.

5.	Grizzle was and is of the opinion that plaintiff did not testify truthfully during the Crowley trial, in which Grizzle was JPD's assigned investigator, an opinion he has expressed to others. (Ex. B, 13:6 – 15:1; Ex. C, 86:4 – 87:8)

**RESPONSE:** Objection. Paragraph 5 fails to identify a citation for each asserted fact, and thus, the Court should disregard Paragraph 5. *See* Local Rule 56.1(d)(2). Specifically, Exhibit B or C does not support the statements in Paragraph 5. Rather, it relies on inadmissible hearsay of what David Jackson allegedly heard Grizzle say. *See* Fed. R. Evid 801; Fed. R. Civ. P. 56(c)(2). Subject to and without waiving said objections, the City admits that David Jackson testified that Grizzle told him he did not think Socha's testimony at trial was truthful. Doc. No. 257-3, Ex. B, 13-14.

6. The sole purpose for searching plaintiff's iPhone was to verify that the text message, of which defendants were already in possession (from Gatlin) was sent to Gatlin by plaintiff from plaintiff's phone and not from someone else. (Doc 253-14, p. 1571, ¶ 10-11; Doc 253-2, p. 1226, pp. 49:14-50:2, p. 1221, 54:19-55:18)

**RESPONSE:** The City denies that the "sole purpose" for searching Plaintiff's phone was to verify that the text message sent to Ms. Gatlin originated from Plaintiff's phone and this disputed fact is immaterial. Another purpose would be to investigate Plaintiff's phone for possible exculpatory evidence which Prosecutor Lamkin considered in her affidavit. (Doc No. 253-14, ¶ 11) The search warrant allowed for the search for specific material on Plaintiff's phone, namely, "evidence of the offense of harassment via electronic communications, intimidation…" Among the categories of information to be extracted and analyzed, the search warrant authorizes electronic communications, digital images or videos, e-mails, voice mail, buddy lists, chat logs, instant messaging, and text messages. (Doc No. 257-3, Ex. D) In fact, Plaintiff admitted this fact in response to the City's Local Rule 56.1 Statement of Uncontested Facts. (Doc No. 258-3, ¶ 15) The City admits that it sought Plaintiff's phone to verify forensically that the text message was sent to Gatlin by Plaintiff from her phone.

7.	It was possible to search Socha's iPhone for this purpose by searching only for text message transmissions from that phone without also searching for photographic or video files, which required clicking on icons that identified them as such. (Doc 253-6, pp.1326-1327, 66:23 – 67:8, 68:10 – 69:17) This is, in fact, exactly what Grizzle claims to have done. (Grizzle's SoF, Doc 256, p. 1602, ¶¶ 45-47)

**RESPONSE:** The City admits that after the Cellebrite downloaded Plaintiff's entire phone, the physical analyzer software could parse the data into categories including text messages, photographs, and videos. [ECF No. 258-3, ¶ 226-27]. The City denies that it was possible to download only parts of Plaintiff's phone and this disputed fact is immaterial. (Doc No. 258-3, ¶ 27)

8.	In the Complaint for Search Warrant that Grizzle prepared and submitted to Hon. Sarah Jones, Cir. Court of Will County, Illinois, Grizzle did not inform Judge Jones that the search could be so limited. Instead, he drafted that Complaint For Search Warrant and the Search Warrant itself to provide for an unfettered search of plaintiff's iPhone, including "all digital images and videos" and "any media" on the iPhone, even though he knew that search of such images or any media other than the single text message for which he was looking was unnecessary. (Doc 253-3, pp. 1250-1259)

**RESPONSE:** The City denies Plaintiff's characterization of Paragraph 8 and this Paragraph is immaterial. Plaintiff admits that it was not possible to download only parts of her phone, rather, the Cellebrite system had to extract her entire phone, and then the physical analyzer would parse through her phone, which included categories such as text messages, photographs, and videos. (Doc No. 258-3, ¶ 26-27) The City admits that Grizzle prepared the complaint for the search warrant that he submitted to Hon. Sarah Jones.

4

9. Defendants knew from the time that plaintiff's iPhone was seized that it contained sensitive personal information. At the time Grizzle seized plaintiff's iPhone pursuant to the Search Warrant, plaintiff informed Grizzle that her iPhone contained sensitive personal information. (Grizzle's SoF, ¶ 32; Doc 253-2, p. 1222, 56:13-14) During the process of the extraction of contents of plaintiff's iPhone, Grizzle confirmed his awareness that those contents included "personal" things on her phone that were "very sensitive" and may have acknowledged that this information included photos and/or videos of a personal or sensitive nature. (Doc 253-6, p. 1323, 54:14-20, p. 1324, 58:8-15, p. 1325, 60:10 – 61:21) Dep. Chief of Investigations Roechner was also aware that that the contents of Socha's iPhone included "sensitive information about an officer." (Doc 253-7, 49:12-17)

**RESPONSE:** Objection. Paragraph 9 is not a concise numbered paragraph. *See* Local Rule 56.1(d)(1). The City further objects as "Defendants" is vague and ambiguous. Finally, the statement "*may have acknowledged* that this information included photos and/or videos of a personal or sensitive nature" is not a statement of fact and therefore, no response is required. (emphasis added). Subject to and without waiving said objections, the City admits that Plaintiff told Grizzle that her phone contained "personal information" and admits that Roechner was aware Plaintiff's phone contained "sensitive information of an officer." (Doc 253-7, 49:12-17)

10. After Botzum performed the extraction of the data on plaintiff's iPhone to the Cellebrite computer, he stored it on the Cellebrite computer under label/file name that he created/assigned to it. To then locate and access that data on the Cellebrite computer, a user would necessarily have to know and search for/locate it under the identifying label/file name that Botzum assigned to it. Neither Botzum (nor any other witness who was asked) could recall what that label/file name was. Botzum recalled only that, because of the sensitivity of the data extracted

5

from plaintiff's iPhone, he purposely assigned it a "very vanilla" (i.e., non-descriptive) name that was not plaintiff's name where "a normal person or a normal detective would not go" and where "no one [without that information] should be able to find this" (i.e., the data from plaintiff's iPhone stored on the Cellebrite computer). Defendants have characterized the data extracted from plaintiff's iPhone as thusly "encrypted." (Grizzle SoF, ¶ 39) Botzum then directed Grizzle where/how/under what label/name plaintiff's iPhone data could be found on the Cellebrite computer. Botzum may also have communicated this information to German. (Doc 253-6, pp. 1323-1324, 52:15 – 59:6, p. 1330, 81:6 – 82:9; See Doc , pp. 1272-1273, 38:2 – 42:24 regarding what steps are generally required to access data extracted from any particular computer device by/stored on the Cellebrite computer)

**RESPONSE:** Objection. Paragraph 10 is not a concise numbered paragraph and Plaintiff fails to identify a citation for each asserted fact, and thus, the Court should disregard Paragraph 10. *See* Local Rule 56.1(d)(1) & (2). Further objecting, the statement "Botzum *may* also have communicated this information to German" is not a statement of fact and therefore, no response is required. (emphasis added). Subject to and without waiving said objections, the City admits that Botzum conducted a forensic download of Plaintiff's phone which was then saved on the Cellebrite system but denies that he created the label/file name. Botzum testified that it was possible that the label/file name was auto generated but at the very least, the label did not contain Socha's name. (Doc No. 256-6, Ex. F pp. 56: 3 - 57: 13) The City admits that Botzum told Grizzle where Plaintiff's phone extraction data was located. (Doc No. 256-6, Ex. F pp. 54: 3 – 55: 2) The City denies that a user would "necessarily have to know and search for/locate it under the identifying label/file name that Botzum assigned to it" and this disputed fact is immaterial.

11.     The search of plaintiff's iPhone for the purpose of locating the single text message she sent to Gatlin was accomplished in approximately one hour. (Grizzle SoF, Doc 256, p. 1602, ¶¶ 44-45)

**RESPONSE:** Admit and deny in part. The City admits that Grizzle's search of the data extracted from Plaintiff's phone took approximately one hour. The City denies that the "sole purpose" for searching Plaintiff's phone was to verify that the text message sent to Ms. Gatlin originated from Plaintiff's phone and this disputed fact is immaterial. The search warrant allowed for the search for specific material on plaintiff's rose phone, namely, "evidence of the offense of harassment via electronic communications, intimidation…" Among the categories of information to be extracted and analyzed, the search warrant authorizes electronic communications, digital images or videos, e-mails, voice mail, buddy lists, chat logs, instant messaging, and text messages. (Doc. No. 257-3, Ex. D) In fact, Plaintiff admitted this fact in response to the City's Local Rule 56.1 Statement of Uncontested Facts. (Doc. No. 258-3, ¶ 15)

12.     Data saved to the Cellebrite computer was accessible by a single, universal password for all users. The password was communicated to investigators (i.e., Detectives) and supervisors in JPD's Investigations Division. (Doc 253-5, pp. 1270-1271, 31:24 – 32:15) During May – June 2018, the password was JOLIET. (Doc 253-9, p. 1447, 16:13-17) No individualized identification information (i.e., "User ID") was needed to access data saved to the Cellebrite computer. (Doc 253-5, p. 1271, 34:12-17; Doc 253-9, p. 1450, 21:20-24)

**RESPONSE:** The City admits that Cellebrite was located on a single computer that required a password that was only communicated to investigators and supervisors within investigations. The City denies that Doc 253-9, p. 1447, 16:13-17, supports Plaintiff's assertion that "Joliet" was the password from May to June of 2018. Detective McKinney testified that "I

7

believe at the time it was just Joliet." (Doc 253-9, p. 1447, 16:13-17) The City admits that no User ID was needed to access the Cellebrite computer.

    13.    In May – June 2018, the Cellebrite computer was accessible to any person in the Investigations Division area of the JPD in which approximately 20 people had workstations. (Doc 253-9, p. 1448, 14:17, 15:4-7)

    **RESPONSE:** Objection. Plaintiff's citation does not support the asserted facts in Paragraph 13, thus, the Court should disregard Paragraph 13. *See* Local Rule 56.1(d)(2). Subject to and without waiving said objection, the City denies that the Cellebrite computer was accessible to any person in the Investigations Division as by Plaintiff's own admission, the computer required a login password and required knowledge on how to use the Cellebrite system. *See* Paragraph 12, Doc 253, ¶ 31. Material to the extent that Plaintiff alleges the 20 people in the Investigations Divisions accessed and viewed Plaintiff's private images, which he provides no evidentiary support.

    14.    Data extracted from computer devices, including plaintiff's iPhone, to the Cellebrite computer could be accessed by anyone in the Investigations Division who knew the universal password and under which file name/label to find the data. (Doc 253-5, p. 1273, 41:6-9) During May – June 2018, the majority of JPD's detectives had been trained to do this. (Doc 253-5, p. 1273, 43:21 – 44:6)

    **RESPONSE:** The City admits that only those who had the computer password AND knew how to use Cellebrite would be capable to open saved data and run a report to access Plaintiff's phone extraction data. (Doc 253, ¶ 31) The City denies that "anyone in the Investigations Division" would be capable of accessing Plaintiff's phone extraction data. *Id.* Material to the extent that

8

Plaintiff alleges everyone in Investigations Divisions accessed and viewed Plaintiff's private images, which he provides no evidentiary support.

15. Detectives were not required to obtain permission to log onto the Cellebrite computer to review data stored on it. (Doc 253-5, p. 1277, 57:22-58:2)

**RESPONSE:** Admit.

16. The Cellebrite computer was not equipped so that only authorized persons could access the data stored on it. (Doc 253-6, p. 56:3-8)

**RESPONSE:** The City denies Plaintiff's characterization of Paragraph 16. Individuals who had knowledge of the password to login onto the computer and knew how to use Cellebrite were authorized to access the data stored in it. Doc 253, ¶ 31. Thus, the Cellebrite computer was secure on its own as it was not and could not be used by everyone within the Investigations Division. (Doc 253-5, p. 1324, 56: 7-13)

17. Nor was the Cellebrite computer capable of recording when or by whom data stored on it was accessed. (Doc 253-6, p. 1321, 46:22 – 47:9; Doc 253-5, p. 1271, 34:12-17)

**RESPONSE:** Admit.

18. A detective who did not have an official role in and was not working on a particular investigation would have no reason to access and review the contents of computers seized by using either the Cellebrite or Lantern computers. (Doc 253-5, p. 1272, 36:21 – 37:4)

**RESPONSE:** Deny. Detectives that were being taught on how to use Cellebrite would open extractions, run reports via the physical analyzer, and explore the contents of the data for training purposes. McKinney was a detective engaged in this training and authorized to use Cellebrite during the time of Plaintiff's allegations. (Doc 253-5, p. 1274, 44: 16-24) Detective

9

German trained McKinney on Cellebrite and provided him the password to access Cellebrite. Doc. 253-5, p. 1274, 44:10 – 45: 6.

19. McKinney knew before he viewed the nude image of plaintiff on the Cellebrite computer that he had accessed and was trawling through the extraction of plaintiff's iPhone. He could not have accessed the data without knowing under which name/label to search for it in the Cellebrite computer. See generally, ¶ 10, above.

**RESPONSE:** Objection. Paragraph fails to identify a citation for each asserted fact, and thus, the Court should disregard Paragraph 19. *See* Local Rule 56.1(d)(2). Subject to and without waiving said objection, the City denies that McKinney knew that he was searching through Plaintiff's phone extraction data before he viewed the nude image of the Plaintiff. (Doc 253-9, p. 1451 24:7-10)

20. McKinney called McKeon's attention to that nude image before McKinney displayed any other image of plaintiff's face on the Cellebrite computer monitor. When McKinney did this, he identified the nude image to McKeon as that of plaintiff. (Ex. D, 21:3 – 23:22, 34:6 – 35:7)

**RESPONSE:** The City admits that McKinney called McKeon's attention to the first photograph of a naked breast, from the shoulders down. The City denies that McKinney knew that the first photograph of a naked breast belonged to Plaintiff. (Doc 253-9, p. 1453 35: 7-24)

21. Neither McKinney nor McKeon were assigned to or had an official role in the JPD's investigation of plaintiff or law enforcement purpose/reason to access the extraction of plaintiff's iPhone that was stored on the Cellebrite computer. (Ex. D, 30:10-15; Doc 253-9, p. 1447, 11:5-9; Doc 253-2, p. 1220, 50:3-5)

**RESPONSE:** The City admits that neither McKinney nor McKeon were assigned to investigate Plaintiff's threatening text message to Maria Gatlin. The City denies that McKinney had no lawful enforcement purpose/reason to access the extraction data on the Cellebrite computer as he was a detective engaged in training on Cellebrite during the time of Plaintiff's allegations. (Doc 253-5, p. 1274, 44: 16-24)

22. When McKinney accessed data from plaintiff's iPhone that was stored on the Cellebrite computer, he consciously elected to access data relating to an open case in which he was not involved instead of a training file of his own stored in the Cellebrite computer. (Doc 253-9, p. 1451, 24:21 – 25-12)

**RESPONSE:** The City admits that McKinney accessed data on a case that he was not assigned. The City denies that McKinney had his own "training folder" stored on the Cellebrite computer and this disputed fact is immaterial. (Doc 253-9, p. 1451, 24:21 – 25-12)

23. To get to the nude image of plaintiff that he viewed and then displayed to McKeon, McKinney consciously "clicked through" the data from plaintiff's iPhone, scrutinized the different media icons/tabs from which he was able to differentiate between those by which to access documents from those by which to access images and purposely clicked on an images tab anticipating that this would result in photos being displayed, which is what then occurred. (Doc 253-9, pp. 1451-1452, 25:13 – 28:4)

**RESPONSE:** Objection. Paragraph 23 fails to identify a citation for each asserted fact, and thus, the Court should disregard Paragraph 23. *See* Local Rule 56.1(d)(1) & (2). Specifically, Plaintiff states in quotations "clicked through" yet McKinney never testified to the phrase – clicked through – during his deposition, and Plaintiff provides no support for this statement of fact. *See generally,* (Doc 253-9, Ex. I) Subject to and without waiving said objections, the City denies

11

Plaintiff's characterization of McKinney's actions as set for in Paragraph 23. The City denies that McKinney "consciously "clicked through" the data from plaintiff's iPhone" as the investigation file that McKinney did click on contained a bunch of random numbers that in no way identified Plaintiff. (Doc 253-9, p. 1451, 24:7-10) Once the investigation file opened, Defendant McKinney clicked on the images tab, which then contained images. (Doc 253-9, p. 1451, 27:19-21)

24.     There are two competing versions of how the data from plaintiff's iPhone finally came to be removed from the Cellebrite (and Lantern) computers on 8 June 2018. We refer to them here as the "Jensen version" and "Gavin version."

a) *Jensen Version*

During the period May – July 2018, when he retired from JPD, Tab Jensen served as Dep. Chief of Administration, up through which JPD's Internal Affairs Division reported (to Chief of Police, then Benton). (Ex. E, 6:4 – 7:8) Gavin reported to Jensen that there had been reports that "detectives or persons from investigations may have been viewing some photos, explicit photos from basically the Socha case" that depicted plaintiff. (Ex. E, 19:7-15, 20:1-3) Jensen took these to be "nude photos or something sexual in nature." (Ex. E, 20:13-18) Jensen concluded that these images were on the Cellebrite computer. (Ex. E, 21:5-13) He was already aware that JPD had seized plaintiff's iPhone. (Ex. E, 21:14 – 22:20, 23:7 – 24:8) At the time, neither German nor Roechner were present in JPD's offices. (Ex. E, 28:18-22; 34:13-16) Jensen directed Gavin to supervise the removal (by German) of plaintiff's iPhone extraction from the Cellebrite computer. (Ex. E, 34:13 – 35:11; 36:11 – 18) Jensen expected that plaintiff's iPhone extraction would be removed from the Cellebrite computer, saved to a disk or thumb-drive and put into evidence, by which he expected it would be handled in conformity with JPD's G.O. 16.1 and tracked via JPD's BEAST system. (Ex. E, 37:5-12, 40:23 – 41:11) Roechner overrode Jensen on this point and told

Jensen that he, Roechner, would take possession of this new copy of plaintiff's iPhone extraction, which he did. (Ex. E: 37:13-17, 40:9-12, 43:7-23)

 b) *Gavin Version*

Gavin was directed by Chief Benton to have German remove the plaintiff's iPhone extraction from the Cellebrite and Lantern computers, save it to another device ("Put it on whatever you can put it on. And then put it in evidence.") (Ex. F, 24:20 – 26:22, 30:4-13) Jensen did not give this directive to Gavin. (Ex. F, 31:11-15) German removed the data from both computers and stored the data to two separate USB drives, which Gavin took to his own office (with one USB still in the Lantern computer while it completed the purge) (Ex. F, 34:18 – 36:16) Roechner than to (sic) these devices. (Ex. F, 37:20 – 38:24)

 **RESPONSE:** Objection. Paragraph 24 is not a concise numbered paragraph and Plaintiff fails to identify a citation for each asserted fact, and thus, the Court should disregard Paragraph 10. *See* Local Rule 56.1(d)(1) & (2). Subject to and without waiving said objections, the City denies Plaintiff's characterization of the data removal from Cellebrite/Lantern computers. On or about June 8, 2018, Deputy Chief Jensen informed Deputy Chief of Investigations Roechner of rumors that investigations personnel may have seen or shared pictures or videos from Plaintiff's phone. (Doc. 253-11, p. 1515) Jensen informed Roechner that he had already begun the process of having the data removed from the computers (note Roechner was out of the office during this time). *Id.* On the same date, Detective German received an order from Sgt. Gavin to remove Plaintiff's phone data from the respective Cellebrite and Lantern computers, put them on a USB, and give them to Gavin. *Id.* At this point, Plaintiff's phone data no longer remained on the Cellebrite or Lantern computers. The City admits that Gavin made a flash drive of Plaintiff's phone

data and gave it to Deputy Chief Roechner who in turn secured it in his locked safe. (Doc 253-7, p. 1385, 63: 1- 64: 1)

25. The two new USB drives created when the plaintiff's iPhone data was removed from the Cellebrite computer and the Lantern computer on 8 June 2018, respectively, were never entered into JPD evidence and conformity with G.O. 16-1 and were not tracked via JPD's BEAST system.

**RESPONSE:** Objection. Paragraph 25 fails to identify a citation for each asserted fact, and thus, the Court should disregard Paragraph 25. *See* Local Rule 56.1(d)(2). Subject to and without waiving said objection, the City admits that the two USB drives that contained Plaintiff's phone data were not stored within the BEAST property room. The City denies that the storage of the two USB drives was not in compliance with G.O 16-1 and this disputed fact is immaterial. *See* (Doc 253, ¶¶ 29-39).

26. Roechner admitted to Det. Dave Jackson that Roechner had loaded the contents of the data extracted from plaintiff's iPhone onto Roechner's own JPD desktop computer located in Roechner's office. (Ex. C, 35:16-36:4)

**RESPONSE:** Objection. What Deputy Chief Roechner allegedly told Jackson is hearsay and objectionable. *See* Fed. R. Evid 801; Fed. R. Civ. P. 56(c)(2). Subject to and without waving said objection, the City denies that Roechner downloaded the contents of the USB flash drive to his desktop computer and this disputed fact is immaterial. (Doc 253-7, p. 1387, 69: 10-13)

27. Lt. Robert Brown admitted to Det. Jackson that Brown had been present in a JPD Watch Commander's office when Sgt. Gavin said to a small group of officers assembled there discussing the data extracted from plaintiff's iPhone: "Now I know why Crowley's with her. She sucks dick like a porn star." ("porn star remark") Brown later told Jackson that Brown would lie

about this if Brown was ever questioned about it. (Ex. C, 14:16-15:1, 21:9 -13) Carlos Matlock reported to a friend/fellow JPD officer that he had heard Gavin utter the porn star remark. (Ex. G, 33:16 – 38:23, 39:6-23, 56:1-15, 68:4-10) Matlock also reported to Det. Jackson and to Off. Crowley that Brown had admitted to Matlock that Brown was present and heard Gavin utter the porn star remark. (Ex. H, 72:14 – 75:12)

**RESPONSE:** Objection. Paragraph 27 is not a concise numbered paragraph and thus, the Court should disregard Paragraph 10. *See* Local Rule 56.1(d)(1). Further objecting, what Lt. Brown and Matlock allegedly told Jackson is hearsay and objectionable. *See* Fed. R. Evid 801; Fed. R. Civ. P. 56(c)(2). Moreover, Plaintiff's statement that "Carlos Matlock reported to a friend/fellow JPD officer that he had heard Gavin utter the porn star remark" is also based on hearsay as Plaintiff's support for this statement is based on the secondhand knowledge of Sgt. Shawn Stachelski testimony. *See generally,* 257-8, Plaintiff's Ex. G. Subject to and without waiving said objections, the City denies that Lt. Brown made the statements identified in Paragraph 27 as he affirmatively testified that this alleged "Watch Commander's" meeting did not take place. *See* (Doc 253, ¶ 66) The City further denies that Gavin made the statements identified in Paragraph 27. (Doc 257-7, p. 2187, 51: 1-5)

28. The porn star remark became a specific subject of "rumors" about the contents of the data extracted from plaintiff's iPhone that were circulated widely and were heard by numerous JPD officers during the period that JPD possessed multiple copies of the data extracted from plaintiff's iPhone. (Ex. B, 37:21-38:21; Ex. I, 16:2-20:18; Ex. J, 16:23-20:23; SoF ¶¶ 55-56)

**RESPONSE:** Objection. Paragraph 28 fails to identify a citation for each asserted fact, and thus, the Court should disregard Paragraph 28. *See* Local Rule 56.1(d)(2). Moreover, the little citations that Plaintiff does offer in support of Paragraph 28, is based on hearsay and objectionable.

*See* Fed. R. Evid 801. Subject to and without waiving said objections, the City denies that there is evidence that the alleged "porn star remark" started the rumors, denies that Plaintiff's phone was circulated "widely" by JPD officers and deny that JPD possessed multiple copies of the Plaintiff's phone data. *See* (Doc 253, ¶¶ 55-62)

29. On or around 23 August of 2018, Chief Benton commissioned a Chicago RCFL investigation of computer equipment issued to JPD Investigations Department personnel. (City SoF, ¶ 43) By that time, the data extracted from plaintiff's iPhone had been copied to at least 5 USB drives, had been stored on both the Cellebrite and Lantern computers from 18 May – 8 June 2018, and had also been loaded onto Grizzle's and Roechner's desk-top computers. (City SoF, ¶¶ 26, 36, 40-41; Grizzle SoF, ¶¶ 26, 39-44, 49; and ¶¶ 24, above). The RCFL investigation also found plaintiff's phone data on German's computer. (City SoF, ¶ 44)

**RESPONSE:** The City admits that on August 23, 2018, JPD requested the RCFL to investigate the presence of Plaintiff's data on JPD devices. (Doc 253, ¶ 43) The City further admits that Plaintiff's phone data was stored on both the Cellebrite and Lantern computer from approximately May 18 to June 8 of 2018, and located on Grizzle and German's computers, a location where they were intended to and had a lawful purpose to be. The City denies that Plaintiff's phone data was copied to 5 USB drives and denies that said data was loaded onto Roechner's desk top computer and this disputed fact is immaterial. (Doc 253, ¶¶ 36, 41; Doc 253-7, p. 1387, 69: 10-13)

30. After Roechner learned of Chief Benton's initiation of the RCFL investigation, Roechner directed JPD's IT Officer, Phillip Bergner, to dispose of one of Roechner's phones and that Bergner had complied with this order and disposed of one of Roechner's phones. (Ex. G, 23:16 – 27:2) Roechner and Bergner both deny this.

**RESPONSE:** Objection. Paragraph 30 fails to identify a citation for each asserted fact, and thus, the Court should disregard Paragraph 30. *See* Local Rule 56.1(d)(2). Moreover, Plaintiff's statement in Paragraph 30 is also based on hearsay as Plaintiff's support for this statement is based on the secondhand knowledge of Sgt. Shawn Stachelski testimony. *See generally,* 257-8, Plaintiff's Ex. G. Subject to and without waiving said objections, The City admits that Roechner and Bergner both deny the allegations contained in paragraph 30.

31. Roechner himself, once promoted to Chief of JPD, directed that the RCFL investigation be terminated before it was completed. (Doc. 253-6, p. 1338, 112:4-114:22)

**RESPONSE:** Objection. Paragraph 31 fails to identify a citation for each asserted fact, and thus, the Court should disregard Paragraph 31. *See* Local Rule 56.1(d)(2). Further objecting, Plaintiff's statement that "Roechner himself, once promoted to Chief of JPD, directed that the RCFL investigation be terminated before it was completed" and is not supported by Sgt. Christopher Botzum testimony, and even if it did, it is hearsay. *See generally,* 253-6, Ex. F. Subject to and without waiving said objections, the City denies that Roechner directed the RCFL to terminate its investigation before it was completed and this disputed fact is immaterial. (Doc. 253-7, p. 1390 81: 16-18)

32. Once data extracted from a computer device like plaintiff's iPhone has been copied to a storage device like a USB drive, those storage devices should be entered into evidence in conformity with G.O. 16-1 and the handling of such evidence tracked via JPD's BEAST system like any other physical evidence ("like guns, knives, whatever"), the circumvention of which would be a violation of the General Order and improper. (Doc 253-5, pp. 1274-1275, 47:11 – 49:3) Yet, none of the copies of the data extracted from plaintiff's iPhone and saved to USB drives were entered into JPD evidence or tracked via the BEAST system. (City SoF, ¶ 32)

**RESPONSE:** Objection. Paragraph 32 fails to identify a citation for each asserted fact, and thus, the Court should disregard Paragraph 32. *See* Local Rule 56.1(d)(2). Subject to and without waiving said objections, the City admits that the two USB drives that contained Plaintiff's phone data were not stored within the BEAST property room. The City denies that the storage of the two USB drives was not in compliance with G.O 16-1 and this disputed fact is immaterial. *See* (Doc 253, ¶¶ 29-39).

33.  Plaintiff intended that the nude and sexual photos and videos on her iPhone be and remain private and has limited end transmission to herself and her then fiancé (now husband), Crowley, the only other person depicted in those images and their respective phones. (Doc 253-1, p. 1144, 74:14-75:10, p.1151, 102:13-105:4)

**RESPONSE:** Admit and deny in part. The City admits that Plaintiff testified that she intended that her nude and sexual photos and videos remain private. The City denies that Plaintiff could not transmit her private images as she admitted she did transmit her nude and sexual photos and videos and this disputed fact is immaterial. (Doc 253-1, p. 1159, 136: 20 – 137: 3)

34.  JPD Internal Affairs Division never opened an internal affairs investigation of plaintiff relating to the text message plaintiff sent to Gatlin at the conclusion of the Crowley trial. (Ex. I, 28:20-23)

**RESPONSE:** The City admits only that it did not initiate a formal complaint investigation arising from plaintiff's text message to Gatlin and this disputed fact is immaterial.

35[1]. Plaintiff was never charged with any crime relating to the text message she sent to Gatlin. The statute of limitation for the offense suggested by the Search Warrant and Complaint for Search Warrant for plaintiff's iPhone, 720 ILCS 5/32-4a (a), was/is three years and has expired.

**RESPONSE:** Objection. Paragraph 35 fails to identify a citation for each asserted fact, and thus, the Court should disregard Paragraph 35. *See* Local Rule 56.1(d)(2). Further objecting that "[t]he statute of limitation for the offense suggested by the Search Warrant and Complaint for Search Warrant for plaintiff's iPhone, 720 ILCS 5/32-4a (a), was/is three years and has expired" constitutes a legal conclusion, and thus, the Court should disregard Paragraph 35. *See* Local Rule 56.1(d)(4). Subject to and without waiving said objections, the City admits that Plaintiff was not charged with any crime related to the text message she sent to Gatlin.

Dated: January 17, 2023

                                          Respectfully submitted,

                                          */s/ Andrew O'Donnell*

John O'Driscoll
Darcy Proctor
Andrew O'Donnell
TRESSLER LLP
550 E Boughton Rd #250
Bolingbrook, IL 60440
312-627-4000
jodriscoll@tresslerllp.com
dproctor@tresslerllp.com
aodonnell@tresslerllp.com

Attorney for City of Joliet

---

[1] It should be noted that while Plaintiff incorporates thirty-five additional statements of facts, if she drafted her paragraphs in compliance with Local Rule 56.1(d)(1) – concise numbered paragraphs – she would exceed the forty-paragraph limit under Local Rule 56(d)(5).

## **CERTIFICATE OF SERVICE**

I hereby certify that on, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will send notification to all counsel of record via the Court's CM/ECF system on January 17, 2023

/s/ *Andrew O'Donnell*___

Attorney for City of Joliet