**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Cassandra Socha,

        Plaintiff,

           v.

City of Joliet, *et al.*,

        Defendants.

Case No. 18 C 5681

Judge Jorge L. Alonso

**Memorandum Opinion and Order**

Defendants City of Joliet and Edward Grizzle have each moved for summary judgment

against Plaintiff Cassandra Socha, who brings the following claims:[1]

- Against Defendant Joliet: Count XII alleging intrusion upon seclusion under Illinois law, and Count XVIII[2] alleging invasion of privacy/publication of private facts under Illinois law; and

- Against Defendant Grizzle: Count I alleging violation of federal Fourth Amendment rights, Count IV alleging violation of federal Fourteenth Amendment privacy rights, Count X alleging intrusion of seclusion under Illinois law, and Count XVI alleging invasion of privacy/publication of private facts under Illinois law.[3]

For the reasons below, the Court grants both motions (ECF Nos. 251 and 254) and

dismisses Socha's claims.

---

[1] Socha also brought counts against "John Does 1–20," but evidently has not prosecuted those claims. (*See* ECF No. 60.) Socha's counts against Joliet and Grizzle thus are her only remaining claims.

[2] Both parties mistakenly identified this claim against Joliet as "Count XVII." (*See* ECF No. 60 at 21–22.)

[3] Socha previously brought Counts VII and XIII against Grizzle, which the Court dismissed in 2019. (ECF No. 75.)

## Background

The following background is taken from the statements and responses the parties have submitted under this District's Local Rule 56.1 and the uncontroverted factual record. These facts are either undisputed or presented from Socha's point of view as the non-moving party, with one important caveat. "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). For example, "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible at trial," except for declarations and affidavits as to what is deposed or attested. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (citations omitted). As explained below, the Court must disregard several hearsay statements that Socha relies on. *See Carlisle v. Deere & Co.*, 576 F.3d 649, 655 (7th Cir. 2009) ("If, as here, evidence is inadmissible hearsay, we may not consider it.") (citation omitted); *Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 716 (N.D. Ill. 2016) ("Accordingly, a party cannot rely on hearsay in a Local Rule 56.1 statement of facts or response.") (citations omitted).

Socha has been employed as a Joliet Police Department ("Joliet PD") patrol officer since 2014. Several years ago, Socha began a romantic relationship with another Joliet PD patrol officer, Nick Crowley (they are now married). In July 2017, Socha and Crowley got into a domestic argument during which a television and refrigerator broke, which resulted in Crowley being charged with reckless discharge of a firearm in Will County. Socha's neighbor, Maria Gatlin, provided a statement to Joliet police following this incident and later testified during the government's case in chief at Crowley's criminal bench trial. Socha also testified during that trial, and Crowley ultimately was acquitted.

2

On May 17, 2018, the day after Gatlin testified and the evidence had closed for Crowley's trial, Socha sent Gatlin a text message criticizing Gatlin for her testimony, accusing her of committing crimes when Gatlin was a police officer, and ridiculing Gatlin as a mother. That same day, Gatlin contacted Lorinda Lamken, a Special Prosecutor with the Office of the State's Attorney's Appellate Prosecutor who was assigned to Crowley's criminal case, informing Lamken of the text message and sharing a screenshot of it. Lamken concluded that the text message constituted witness harassment and contacted Lieutenant Marc Reid of the Joliet PD Internal Affairs Division and Defendant Edward Grizzle, a Joliet PD Detective who was assigned to Crowley's criminal case, regarding the text message. Lamken told Grizzle that a search warrant was needed for Socha's cell phone to ensure the text message Gatlin received originated from Socha's cell phone. Grizzle then met with Joliet PD Chief Brian Benton and Deputy Chief of Investigations Al Roechner, who directed Grizzle to obtain a search warrant for Socha's phone if that was what Lamken wanted him to do.

The same day, Grizzle met with Gatlin, who showed him a screenshot of Socha's text message, then conferred with Lamken about preparing the search warrant for Socha's phone. Grizzle prepared, signed, and swore to a complaint that summarized his investigation and requested a search warrant for Socha's phone, which Lamken reviewed and approved. Grizzle submitted the complaint to the Circuit Court of Will County, which issued a warrant concluding that Socha's phone constituted evidence of harassment and intimidation and authorizing seizure of Socha's phone and an associated search for, among other things, "Any and all data regarding electronic communications, including . . . digital images or videos . . . [and] instant messaging or text accounts."

On May 18, 2018, Joliet PD Lieutenant Brown escorted Socha to a conference room where Grizzle served Socha with the search warrant and told her he needed her cell phone. Socha told Brown that there were things on her phone that she did not want anybody to see. At that time, Socha's phone contained naked photographs of her and multiple videos of her and Crowley engaged in sex acts.

After Grizzle seized Socha's phone, he asked Joliet PD Detective Christopher Botzum to extract the data it contained, given Botzum's training and experience with such extractions. Botzum extracted Socha's cell phone data using Cellebrite forensic software, which allows a user to access data and retrieve deleted data and puts it in a readable format. During the extraction, Botzum found remnants of the text message Grizzle was looking for, took a screenshot, and gave the screenshot to Grizzle. Upon extracting the data from Socha's phone, Botzum assigned the data a non-descriptive file name, which did not include Socha's name, and informed Grizzle where it could be found on the Cellebrite computer. Botzum also started extracting Socha's phone with a different forensic software program, called Lantern, because Cellebrite had not found all the data related to the text message at issue. This extraction also was supervised by Joliet PD Detective Jeffrey German when Botzum was not supervising it himself. Once the Lantern extraction was completed, German generated a Lantern report on the phone data and copied it onto a USB thumb drive along with the data from the Cellebrite extraction and gave the drive to Grizzle for review and copying as necessary. Grizzle loaded the data from the USB drive onto his computer so he could review it and gave the USB drive to Roechner at Roechner's direction, who kept it in a locked cabinet in his office.

Grizzle then searched the extracted data from Socha's phone for about an hour, during which he scrolled through almost 9,000 pages of text messages to find ones associated with

Gatlin's phone number and eventually identified the text message that Gatlin had previously shown him. Reid also told Grizzle that he needed a copy of Socha's phone data in anticipation of an internal affairs investigation, so Grizzle obtained a copy from German and gave it to Reid after confirming that Roechner agreed. Once the extraction was complete, Socha's phone was returned to her.

The Joliet PD kept Cellebrite on a single computer in its investigations unit area, which required a generic password (apparently simply "Joliet") for access. Though Detectives Botzum and Jeffrey German were the only detectives trained to perform extractions with Cellebrite, several other detectives were trained to search and view data once it was extracted and stored on the Cellebrite computer. Cellebrite could not download only part of a cellphone's data (such as only its text messages), but forensic programs allowed the user to run reports that would parse out the data into text messages, images, videos, and other media types for the user to navigate and review.

Sometime in May or June 2018, Joliet PD Detective Donald McKinney, who had the Cellebrite password, was using Cellebrite to access digital evidence in various investigations to which he was not assigned.[4] At some point, McKinney opened the non-descriptive file containing Socha's extracted phone data and viewed a photograph of naked breasts. McKinney called this to the attention of Joliet PD Detective Brad McKeon, who was sitting at a desk next to the Cellebrite computer and was on the phone, and McKinney suggested that the photograph might be from Socha's phone.[5] McKinney then viewed a second photograph, which depicted

---

[4] Joliet claims, and McKinney testified, that he was doing this to familiarize himself with Cellebrite for training purposes, which Socha disputes.

[5] Joliet claims that McKinney did not suspect that the photograph might be Socha's until he saw the photograph of Socha's face. Given the conflicting facts on summary judgment, the Court takes Socha's version of events.

Socha's face. It appears that upon seeing the photograph of Socha's face, McKinney immediately closed out of the program.

McKinney and McKeon are the only two Joliet employees who have admitted to seeing a sexually explicit photo from Socha's phone. However, Socha points to several rumors or accounts indicating that others in the Joliet PD – particularly Roechner and Detective Darrell Gavin – may have viewed explicit photographs or videos extracted from Socha's phone. However, these are based on inadmissible hearsay which the Court disregards:[6]

- Roechner: As stated above, Roechner kept a flash drive containing Socha's extracted phone data in a locked cabinet in his office. Roechner also allegedly told another Joliet PD employee, Detective Dave Jackson, that Roechner had downloaded the contents of Socha's phone onto his work computer. Joliet PD Sergeant Shawn Stachelski further testified that Joliet PD IT Officer Phillip Bergner told Stachelski that Roechner, upon later learning that Joliet PD electronic devices would be investigated, asked Bergner to get rid of Roechner's work phone, which Bergner then did.[7] Socha's offered statements of Roechner via Jackson and Stachelski are hearsay (or, in the case of Stachelski, hearsay within hearsay), which is inadmissible. Fed. R. Civ. P. 802; *Eisenstadt*, 113 F.3d at 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."). Socha has not attempted to explain how these statements qualify for a hearsay exception or exemption, and thus has waived inadmissibility. *See Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 552 n.38 (N.D. Ill. 2022) ("Rule 56 requires admissible evidence, and hearsay is not admissible unless an exception applies (and Brinley makes no argument for a hearsay exception) (so any such argument is waived)."). The Court thus disregards those statements for purposes of summary judgment.

---

[6] Following Joliet's explicit objections to the admissibility of this evidence, Socha did not seek permission to respond to those evidentiary objections under this Court's local rules, nor had she argued admissibility in her earlier briefing. *See* N.D. Ill. L.R. 56.1(f).

[7] Roechner testified at deposition that he never downloaded Socha's phone data onto his desktop computer or viewed any of that data, including any explicit photographs or videos. Both he and Bergner also deny that Roechner asked Bergner to dispose of his work phone.

- Gavin: Socha points to rumors that Gavin had bragged to other officers that Socha "sucks _____ like a porn star," indicating that he had viewed an explicit video from Socha's phone data. However, the record lacks admissible evidence that Gavin made this comment. None of the witnesses who testified to the rumor actually heard Gavin make that alleged comment or admissibly identified who did hear Gavin make the comment. For example, Jackson and Stachelski testified that they heard of Gavin's purported comment from Matlock (ECF No. 257-4 at 15:20–16:4; ECF No. 257-8 at 33:19–34:2), who did not personally hear the comment and did not recall who told him about the comment, and others testified that Matlock had told them that he had heard about the comment from Brown, who himself denied hearing it. (ECF No. 257-10 at 20:11–18.) This meandering hearsay within hearsay is not admissible evidence. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 883 (7th Cir. 2016) ("Where a plaintiff attempts to introduce the testimony of an individual who did not personally witness the alleged [] statement but was later told by another that the statement was made, such testimony is rejected as hearsay on summary judgment.") (internal quotation marks and citations omitted). And again, Socha has not attempted to argue admissibility and thus has waived it, so the Court disregards Gavin's purported comment.

- Anonymous Letters: Socha also received two anonymous letters containing rumors and allegations that others in the Joliet PD had seen and shared explicit images and videos from Socha's phone. However, the authorship of those letters is unknown, and they constitute inadmissible hearsay as to the truth of the rumors and allegations contained therein. Socha does not dispute this, so the Court ignores the allegations made in the letters for purposes of summary judgment.

On August 21, 2018, Socha sued Joliet, Grizzle, and "John Does 1–20" in this Court.[8] On August 23, 2018, the Joliet PD requested that the Chicago Regional Crime laboratory investigate the presence of Socha's phone data on Joliet PD electronic devices. This investigation ultimately

---

[8] As noted above, Socha has not pursued her claims against "John Does 1–20."

indicated that Socha's data was data was located on only two Joliet PD devices – Grizzle's and German's computers, given their work in extracting and reviewing Socha's phone data.

On July 31, 2019, Socha filed her operative first amended complaint (ECF No. 60). Following discovery, Joliet and Grizzle filed separate motions for summary judgment, which have been fully briefed.

## Legal Standard

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (internal quotation marks omitted). "To defeat a motion for summary judgment, the party opposing it must make a 'showing sufficient to establish the existence of [any challenged] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893–94 (7th Cir. 2018) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). The court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The court will enter summary judgment against a party who does not "come forward with evidence that would

reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).

In assessing the evidence at summary judgment, the court must consider the facts in the light most favorable to the non-moving party, giving that party "the benefit of all conflicts in the evidence and reasonable inferences that may be drawn from the evidence," regardless of whether it can "vouch for the objective accuracy of all" the evidence the non-moving party puts forward. *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 674 (7th Cir. 2014). Even though district courts must view the non-moving party's evidence in this generous light, it does not follow that they are "required to draw every requested inference; they must only draw reasonable ones that are supported by the record." *Omnicare*, 629 F.3d at 704. "Inferences supported only by speculation or conjecture will not suffice." *Johnson*, 892 F.3d at 894.

## Discussion

The Court discusses Joliet's and Grizzle's motions for summary judgment in turn.

### I. Joliet's Motion for Summary Judgment

Joliet moves for summary judgment as to the two claims Socha asserts against it: (1) Count XII for intrusion upon seclusion, and (2) Count XVIII for invasion of privacy/publication of private facts. Socha does not oppose Joliet's motion as to Count XVIII, so the Court need only evaluate the merits of summary judgment as to Count XII.

To succeed on her Illinois intrusion-upon-seclusion claim, Socha must prove "(1) an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused the plaintiffs anguish and suffering." *Cooney v. Chicago Pub. Sch.*, 407 Ill.App.3d 358, 366, 943 N.E.2d 23 (2010) (citation omitted). "[T]he core of this tort is the offensive prying into the private domain

of another," and could include things like: "invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and persistent and unwanted telephone calls." *Lovgren v. Citizens First Nat. Bank of Princeton*, 126 Ill.2d 411, 417, 534 N.E.2d 987 (1989). To be actionable, a defendant's intrusion must be intentional. *Lawlor v. North Am. Corp. of Illinois*, 2012 IL 112530 ¶ 33, 983 N.E.2d 414 (2012).

Among other things, the parties dispute whether McKinney or any other Joliet PD employee intentionally viewed Socha's private images. The Court addresses each relevant person below. Because the Court finds that Socha has not presented a genuine dispute of material fact that any Joliet PD employee intentionally viewed her private images, the Court does not reach the parties' other merits arguments or the issue of whether Joliet is entitled to immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101–10/9-107.

### A. McKinney and McKeon

The parties agree that McKinney and McKeon saw at least one private image of Socha – the image of her nude breasts – but disagree on whether they did so intentionally. Joliet argues that McKinney's viewing of Socha's private image was inadvertent and that Socha's claim that McKinney intentionally viewed the image is mere speculation. Socha counters that there is enough evidence to present that issue to the jury because McKinney was not assigned to the Joliet PD's investigation of Socha and must have known where Socha's phone data was located in order to access it. Socha also argues that McKinney knew the nude picture was part of Socha's phone data before he saw the photograph of Socha's face, based on McKeon's deposition

10

testimony that McKinney indicated that the nude photograph might be from Socha's data upon seeing it.

Based on the record, the Court concludes that a reasonable jury could not find that McKinney intentionally pried into Socha's seclusion. At most, the material record indicates that McKinney was indiscriminately reviewing investigative files in the Cellebrite program, inadvertently saw a nude photograph and suspected that the photograph might be from Socha's data (and said so to McKeon), and then, upon seeing the separate photograph of Socha's face and thus confirming the photograph was Socha's, immediately stopped reviewing the data. These circumstances, even in the light most favorable to Socha, do not suggest that McKinney intentionally pried into Socha's private images.

To draw the inference of intentional prying that Socha seeks to avoid summary judgment, "there must be some evidence from which to draw the inference." *Gunville v. Walker*, 583 F.3d 979, 986 (7th Cir. 2009); *see also Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 148 (7th Cir. 1994) ("Summary judgment will not be defeated simply because motive or intent are involved."). Socha's contrary theory relies on uncorroborated "speculation and innuendo" that McKinney must have been looking for Socha's data because he would not have found it otherwise, and McKeon's testimony that McKinney told him that the nude picture he showed him might be from Socha's phone *before* McKinney saw the photograph of Socha's face. *Gunville*, 583 F.3d at 986. But Socha does not offer material evidence to genuinely rebut Joliet's story that McKinney was generally browsing through investigative files, inadvertently stumbled on Socha's phone data, and unknowingly opened a nude picture that he then realized might be Socha's – and upon realizing or confirming that it was, immediately closed the program. There also is no evidence that McKinney ever saw or sought out any more private images or data from Socha's phone.

11

Therefore, although summary judgment is improper when a case involves "weighing of conflicting indications of motive and intent," here Socha lacks supporting material evidence "to put on the scales for weighing," and summary judgment is appropriate. *Kephart v. Inst. Of Gas Tech.*, 630 F.2d 1217, 1218 (7th Cir. 1980). Based on the evidence, a reasonable jury could not conclude that McKinney was intentionally prying through Socha's private phone data when he saw a nude photograph of her on the Cellebrite system.

As to McKeon, there is no material evidence that he intentionally viewed the nude photograph of Socha either – he saw it only when McKinney alerted him to it, and saw nothing else. Socha does not dispute this, and the Court accordingly finds no evidentiary basis for a jury to find Joliet liable for Count XII based on McKeon's conduct.

### B. Gavin, Roechner, and Other Joliet PD Employees

Socha acknowledges that she lacks direct evidence that any other Joliet PD employee viewed any of her private images, but argues that circumstantial evidence provides enough for a jury to infer that it happened. The Court disagrees.

First, Socha claims that a jury could conclude that Gavin viewed an explicit video of her because he allegedly bragged about doing so. However, as discussed above, Gavin's alleged comment has not been traced back to him in the record and constitutes inadmissible hearsay within hearsay, which Socha has not rebutted. Accordingly, it must be disregarded, and Socha has not pointed to any other material, non-hearsay evidence that Gavin had viewed or pried into any of her private data. A jury thus could not find liability against Joliet based on Gavin's conduct in the admissible record. *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994) ("Even if [the speaker] was identified, that someone's out of court declaration . . . is pure

hearsay, admissible under none of the myriad exceptions to the hearsay rule and therefore incapable of creating a *genuine* issue of material fact[.]") (emphasis in original).

Similarly, Socha claims that Roechner saw her explicit images based primarily on hearsay testimony from Jackson and Stachelski, as explained above. But, as Joliet argues without rebuttal from Socha, those statements too are inadmissible hearsay, which the Court must disregard. After ignoring those statements, the Court is left only with Socha's speculation that Roechner viewed Socha's private data simply because Roechner, as Joliet PD's Deputy Chief of Investigations, kept a USB drive containing Socha's phone data in a locked cabinet in his office. This is not enough for a reasonable jury to conclude that Roechner pried into Socha's private data.

Lastly, Socha summarily claims that other Joliet PD employees may have seen her private data because data on the Cellebrite computer and USB drives with copies of Socha's data could have been accessed by others and because of rumors that one of her private videos had been circulated among or viewed by certain officers. Socha offers nothing beyond inadmissible hearsay and speculation on these points, and a jury could not conclude that anyone else, including Grizzle, intentionally viewed Socha's private data. Summary judgment for Joliet thus is appropriate.

## II.    Grizzle's Motion for Summary Judgment

Grizzle moves for summary judgment as to each of Socha's claims against him: Counts I, IV, X, and XVI. In her response, Socha has not contested summary judgment as to Counts IV or XVI, so the Court grants summary judgment in Grizzle's favor as to those claims and discusses the remaining Counts I and X below.

### A. Count I – Violation of Fourth Amendment Rights

Grizzle argues that no reasonable jury could find that he violated Socha's Fourth

Amendment rights when he sought and obtained a search warrant for Socha's phone data,

searched Socha's phone data, and shared copies of the extraction of Socha's phone data with

each of Roechner and Reid. Socha does not respond to this as to Grizzle's search and

dissemination of Socha's phone data, so the only contested point is whether there is a triable

issue that Grizzle violated Socha's Fourth Amendment rights in seeking and obtaining a search

warrant for Socha's phone data.

Grizzle argues that summary judgment is appropriate because he properly sought a

warrant for Socha's phone and further is entitled to qualified immunity because he did not violate

Socha's clearly established rights in doing so. Socha counters that Grizzle instead knowingly

sought an overbroad search warrant for all data on Socha's phone, rather than limiting the

warrant only to her text messages as potential evidence of witness intimidation, and that Grizzle

knowingly violated her Fourth Amendment rights in doing so and thus is not entitled to qualified

immunity.

"To defeat a defense of qualified immunity, the plaintiff must show two elements: first,

that the facts show a violation of a constitutional right, and second, that the constitutional right

was clearly established at the time of the alleged violation." *Leiser v. Kloth*, 933 F.3d 696, 701

(7th Cir. 2019) (internal quotation marks and citation omitted). Courts may "address the second

question first if it simplifies the analysis." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir.

2018) (citing *Person v. Callahan*, 555 U.S. 223, 232 (2009)). To be "clearly established, a right

must be sufficiently clear that every reasonable official would have understood that what he is

14

doing violates that right meaning that existing precedent must have placed the statutory or constitutional question beyond debate." *Leiser*, 933 F.3d at 701 (citation omitted).

The Court agrees with Grizzle that he is entitled to qualified immunity. Even assuming that the search warrant under which Socha's phone data was seized and extracted was overbroad, Socha has not presented legal authority clearly establishing that Grizzle's application for a search warrant for Socha's phone data was unconstitutional or otherwise overcome Grizzle's qualified immunity defense.

The three cases Socha cites are inapposite. First, in *Groh v. Ramirez*, the Supreme Court rejected an officer's qualified-immunity defense when "even a cursory reading of the warrant in this case—perhaps just a simple glance—would have revealed a glaring deficiency that any reasonable police office would have known was constitutionally fatal." 540 U.S. 551, 564 (2004). In that case, the search warrant for a residence "did not describe the items to be seized *at all*," and "was so obviously deficient that we must regard the search as 'warrantless.'" *Id.* at 558 (emphasis in original) (citations omitted). Importantly, the Court distinguished the warrant from the officer's application for the warrant, which did "adequately describe[] the 'things to be seized,'" including various firearms and other items. *Id.* at 557. Here, Grizzle's warrant request adequately described what was to be seized: Socha's phone, for potential evidence of witness intimidation. *Groh* thus does not undermine Grizzle's claim of qualified immunity.

Second, Socha cites *Rainsberger v. Benner* for its holding that "[a]n officer violates the Fourth Amendment if he intentionally or recklessly includes false statements in a warrant application and those false statements were material to a finding of probable cause," or "intentionally or recklessly withholds material information from a probable cause affidavit." 913 F.3d 640, 647 (7th Cir. 2019). Aside from the record's lack of material evidence that Grizzle

15

intentionally or recklessly lied or withheld material information from the court when he sought to obtain a search warrant, *Rainsberger* also was decided in 2019, *after* Grizzle submitted the warrant application in May 2018. That case thus does not clearly establish Socha's rights at the time of Grizzle's conduct. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.").

Finally, the lone analogous case Socha offers is from another district that found a Fourteenth Amendment privacy violation in a warrant application and warrant that sought to seize any and all files on a phone as evidence of the crime being investigated. *United States v. Winn*, 79 F. Supp. 3d 904 (S.D. Ill. 2015). Though that case on its own may offer some persuasive reasoning in evaluating Socha's constitutional claims on the merits, it is not controlling precedent and does not show "such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time" for purposes of qualified immunity. *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017). Nor is this the "rare case" of such "egregious and unreasonable" conduct "that the constitutional violation was patently obvious to any reasonable official" during Grizzle's actions in 2018. *Id.* at 354 (internal quotation marks and citations omitted).

Accordingly, Socha has not produced legal authority that Grizzle's particular conduct here in seeking a search warrant for Socha's phone data was a sufficiently clear Fourth Amendment violation at the time to overcome qualified immunity. Therefore, summary judgment in Grizzle's favor as to Count I is appropriate.

16

**B. Count X – Intrusion Upon Seclusion**

As the Court already explained above for Joliet's motion to dismiss, Socha has presented no material evidence that Grizzle saw any of Socha's private images or videos, much less that he intentionally did so. Instead, the admissible record shows that Grizzle reviewed only Socha's text messages to identify the text message she sent Gatlin, and did not view any of Socha's explicit images or videos. A jury therefore could not find that Grizzle intruded on Socha's seclusion, and summary judgment in Grizzle's favor for Count X is appropriate.

**Conclusion**

Accordingly, the Court grants Joliet's motion for summary judgment in its entirety (ECF No. 251), grants Grizzle's motion for summary judgment in its entirety (ECF No. 254), and dismisses Socha's claims. Case terminated.

**SO ORDERED.**                                             **ENTERED: August 18, 2023**

_____

**HON. JORGE ALONSO**
**United States District Judge**